JUDGE SCHEINDLIN

UNITED STATES DISTRICT COURT   **08 CV   5829**
SOUTHERN DISTRICT OF NEW YORK



| | |
|---|---|
| DCML LLC, | |
| Plaintiff, | Civil Action No. |
| -v.- | JURY TRIAL DEMANDED |
| DANKA BUSINESS SYSTEMS, PLC, A.D. FRAZIER, W. ANDREW MCKENNA, DR. KEVIN C. DALY, JAIME W. ELLERTSON, CHRISTOPHER B. HARNED, J. ERNEST RIDDLE, ERIK VONK, DAVID DOWNES, JOSEPH E. PARZICK AND CYPRESS MERCHANT BANKING PARTNERS II L.P. | |
| Defendants. | |

RECEIVE
JUN 27 2008
U.S.D.C. S.D.N.Y.
CASHIERS

## COMPLAINT

Plaintiff, by its undersigned attorneys, for its Complaint, alleges the following upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters, based upon the investigation made by Plaintiff's counsel, which included the review and analysis of information obtained from numerous public sources including, inter alia: Securities and Exchange Commission ("SEC") filings by Danka Business Services PLC ("Danka" or the "Company"), Company press releases, media reports about the Company, and other publicly available sources.

## NATURE OF THE CLAIMS

1.      Plaintiff is the holder of American Depositary Shares (ADSs) of defendant Danka. Danka is currently seeking approval of resolutions allowing it to sell its remaining operating

assets and subsequently to distribute the proceeds of the sale through a United Kingdom (UK) process of voluntary liquidation. This approval is being sought through the issuance of a materially false and misleading proxy statement and defendants' manipulation of the voting process. Defendants have repeatedly taken steps to thwart a fair and informed voting process. Defendants issued a supplemental proxy less than one week before the scheduled vote that did not provide any instructions regarding how to submit one's proxy except by mail. Not only was there insufficient time to digest the information contained in the supplement but there was no way for shareholders to submit a timely proxy.

2.      The proxy statement, as supplemented, left insufficient time for holders of ordinary shares to cast their votes with respect to the resolutions as amended on June 18, 2008. Defendants, by failing to provide adequate time for shareholders to vote, have manipulated the voting process and disenfranchised a significant number of shareholders, many of whom have been vocal with respect to the proposed sale and liquidation.

3.      Defendants' actions were motivated by a desire to frustrate the shareholder franchise for their own benefit. Defendant's tactics effectively deny the shareholders' basic right to exert control over the board's management, thereby altering the fundamental allocation of power between the shareholders and the defendants. The process was designed to allow defendants control over the vote and thereby the outcome.

4.      Plaintiff seeks to enjoin the vote as a result of the effective disenfranchisement of Danka's shareholders or, in the alternative, to set aside and nullify any vote premised upon the false and misleading proxy statement, which left inadequate time for shareholders to vote their proxies.

2

5.      Plaintiff and the other holders of ordinary shares of Danka have been told that they will receive $0.025 per ordinary share or $0.10 per ADS in the liquidation. The price to be paid to the holders of ordinary shares was determined through a process premised upon misinformation or lack of information regarding the Company's current financial condition and misinformation regarding the rights of the holders of Danka's Participating Shares under the circumstances presented.

6.      Further, as discussed below, the proxy statement issued in connection with the proposed transactions, as supplemented, contains material misstatements and fails to disclose material facts, including its failure to provide any financial information regarding Danka since the period ended December 31, 2007.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 79n(a), the rules and regulations promulgated thereunder by the Securities and Exchange Commission ("SEC"), including Rule 14a-9, 17 C.F.R. § 240.14a-9, and the laws of the State of New York.

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and the principles of pendent jurisdiction.

9.      Substantial acts in furtherance of the alleged violations of law have occurred in this Judicial District. The proxy statement at issue was disseminated in this Judicial District. The agreements underlying the transactions from which this litigation stems are each governed by the laws of the State of New York and defendants have submitted to jurisdiction in the

Southern District of New York in connection therewith. Further, the headquarters of defendant Cypress Merchant Banking Partners II L.P. are located in this Judicial District.

10.     In connection with the acts, transactions and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications and the facilities of a national securities exchange.

## THE PARTIES

### A.     Plaintiff

11.     Plaintiff DCML LLC, as successor in interest to Robert Andrade and Rostislav Raykov, held Danka ADSs at all times relevant to this action and suffered damages as a result of the violations of state and federal law alleged herein.

### B.     Defendants

12.     Defendant Danka is a UK public limited company formed in 1977. Defendant Danka's principal activities are supplying and servicing office equipment and providing related services. Danka conducts all of its remaining business operations through Danka Office Imaging Company ("DOIC"). DOIC is headquartered at 11101 Roosevelt Boulevard, St. Petersburg, Florida 33716.

13.     Defendant A.D. Frazier ("Frazier") has been Chairman of the Board and Chief Executive Officer of Danka since March 14, 2006. Frazier is a party to agreements with the Company that would provide change of control and severance payments and benefits under certain circumstances. Had the sale transaction at issue in this action occurred on March 31, 2008, and had Mr. Frazier terminated employment on that date, he would have received a total aggregate cash payment and benefits valued at $3.7 million.

4

14.     Defendant W. Andrew McKenna ("McKenna") has been a director of Company since February 2002

15.     Defendant Dr. Kevin C. Daly ("Daly") has been a non-executive director of the Company since January 2002.

16.     Defendant Jaime W. Ellertson ("Ellerston") has been a director of the Company since November 2002.

17.     Defendant Christopher B. Harned ("Harned") has been a director of the Company since March 2002. Mr. Harned has been a managing director of The Cypress Group L.L.C., a private equity fund, since November 2001. From 1985 to 2001, Mr. Harned was with Lehman Brothers, most recently as head of the Global Consumer Products Merger and Acquisitions division. Mr. Harned also served as a member of Lehman Brothers' Investment Banking Business Development Committee.

18.     Defendant J. Ernest Riddle ("Riddle") has been a director of the Company since in 1998.

19.     Defendant Erik Vonk ("Vonk") has been a director of the Company since 2004.

20.     Defendant David Downes ("Downes") has been a non-executive director of the Company since January 200

21.     Defendant Joseph E. Parzick ("Parzick") has been a non-executive director since May 19, 2006 and is a Managing Director of The Cypress Group. Mr. Parzick joined The Cypress Group in June 2003. He spent the previous four years as a Managing Director in Morgan Stanley's financial sponsor group.

22.     Defendant Cypress Merchant Banking Partners II L.P. and certain of its affiliates (collectively, the "Cypress Shareholders") hold approximately 92% of the Company's 6.50%

senior convertible participating shares. Defendants Harned and Parzick are principals of the Cypress Shareholders and are Cypress' designees on the Danka Board. Each has a material interest in maximizing the proceeds of the sale transaction, and any other assets of the Company to be distributed in the liquidation, for the benefit of the Cypress Shareholders.

## **FACTUAL ALLEGATIONS**

23.    On April 8, 2008, Danka announced that it had entered into a definitive agreement with Konica Minolta Business Solutions U.S.A. ("Konica") for the sale of the Company's wholly-owned U.S. subsidiary, DOIC, through which Danka conducts its entire remaining business operations, for a total purchase price of approximately $240 million, subject to adjustment.

24.    The press release announcing the proposed transaction stated:

Under the terms of the agreement, the total purchase price is expected to be approximately $240 million. The transaction is expected to close by June 30, 2008. It is subject to a number of regulatory and other closing conditions, in both the United States and the United Kingdom, including approval of the transaction by Danka's shareholders.

"In addition to continuing support for the entire Danka customer base with a complete range of products and service capabilities," said A.D. Frazier, Chairman and Chief Executive Officer of Danka, "I am pleased to say the new organization will also provide the added benefit of direct access to Konica Minolta's world-class technology, distinctive product offerings and financial strength. Customer relationships will grow ever stronger as a result."

Upon consummation of the transaction, DOIC will become a wholly-owned subsidiary of Konica Minolta, and will maintain its current offices in St. Petersburg, Florida and elsewhere. Konica Minolta will supplement the product mix including network-ready multifunctional products (print, copy, fax and scan all in one system) and network printers in DOIC markets beginning in mid-2008. DOIC will continue servicing its customers with its highly trained sales and service teams.

.....

6

The transaction contemplates that Danka Business Systems PLC, the holding company, will sell to Konica Minolta the stock in its U.S. operations, Danka Office Imaging Company. Once completed, the holding company will distribute proceeds from the sale to debt and shareholders through a British process of voluntary liquidation, which will also need to be approved by Danka shareholders.

Under the terms of Danka's existing Articles of Association, the holders of Danka's ordinary shares (and ADSs) would not be entitled to receive any portion of the amount which is expected to be available for distribution to the holding company's shareholders. However, the Board is seeking to implement arrangements which would result in the holders of Danka's ADSs receiving the cash sum of $0.10 per ADS. Further details of these proposed arrangements will be provided to the company's shareholders as soon as possible.

Cypress Merchant Banking Partners II L.P. and certain of its affiliates, which collectively hold approximately 338,569 Participating Shares which confer the right to exercise approximately 29.0% of the voting rights exercisable at general meetings of the company, have agreed to vote in favor of the transaction, the liquidation and related proposals.
Use of Proceeds

If shareholders approve the sale transaction and liquidation the net cash proceeds from the disposal will be used to discharge Danka's approximately $152 million of indebtedness under the existing credit facilities provided by GE Corporate Capital. After depositing $25 million of the sale proceeds in escrow to satisfy potential claims by Konica Minolta under the definitive agreement, the remaining sum, together with the company's other cash resources, will be used to discharge other actual and contingent liabilities and the costs and expenses of the liquidation. The resulting cash balance, together with any remaining escrow proceeds, will be returned to shareholders. Net funds returning to owners of the company's Participating Shares are expected to total less than the 20% of the $372 million in accrued payments currently owed to them.

25.     On May 30, 2006, Danka filed its Form DEFM 14A with its accompanying proxy statement soliciting the vote of Danka's shareholders with respect to the sale transaction and associated liquidation. The proxy statement confirmed the terms of the sale transaction as previously announced and confirmed that proceeds from the sale would be distributed through a UK process of liquidation upon receiving shareholder approval.

26.    According to the Proxy Statement, the holders of Danka's ordinary shares, including ADSs, would not have been entitled, under the terms of Danka's Articles of Incorporation, to receive any portion of the amount that the Company expected to be available for distribution after the sale transaction. All of the proceeds purportedly would have been distributed to holders of the Company's $6.5% senior convertible participating shares (the "Participating Shares"). Ninety-two percent of those Participating Shares are held by defendant Cypress and its affiliates. However, also according the Proxy Statement, an "independent committee" of the Company's Board of Directors reached an agreement with Cypress allowing each common shareholder to received $.025 per ordinary share, or $0.10 per ADR, in the liquidation. The independent committee consisted of the members of the Company's Audit Committee, David J. Downes, Kevin C. Daly and J. Ernest Riddle, as well as the Company's lead director, W. Andrew McKenna. The Committee did not have its own Financial Advisor.

27.    Houlihan Lokey rendered an opinion on April 7, 2008 that the consideration to be received for the selling subsidiary was fair to the selling subsidiary from a financial point of view. Houlihan Lokey did not opine as to the allocation of the sale proceeds as between the holders of the Participating Shares and the holders of Common Shares and ADRs. According to the Proxy Statement, the Danka Board "considered the utility of obtaining a fairness opinion as it related to the consideration to be received by the ordinary shareholders of Danka in the Liquidation, but decided not to request such an opinion because, under the terms of Danka's Articles of Association, the holders of Danka's ordinary shares (including holders of American Depositary Shares) would not be entitled to receive any portion of the amount which is expected to be available for distribution to Danka's shareholders in the Liquidation."

28.    The Proxy Statement conditioned the sale transaction on the liquidation such that

the sale transaction could not be consummated unless the subsequent liquidation was approved

by Danka's shareholders.

29.    On June 16, 2008, plaintiff DCML LLC issued a press release in letter format to

fellow Danka shareholders.  The press release stated:

> Fellow Danka Shareholders:
>
> We were disappointed to learn that the Board of Directors (the "Board") of Danka Business Services PLC (the "Company") has taken questionable actions to influence the outcome of the upcoming shareholder vote.
>
> First, the Voting Instructions of the Proxy have specified that the Company's designee is permitted to vote the American Depositary Shares ("ADS") of any holder that does not submit a vote by June 20 (1). We believe it is inappropriate to hijack the voting power of such shares, particularly when the interests of the Company's designee may not be aligned with ordinary shareholders. Excluding Cypress shareholders, the Board collectively holds less than 0.45% of total ordinary shares outstanding (2). In view of that fact, one might question whether the interests of any Company are aligned with the interests of ordinary shareholders in these contested circumstances? Therefore, it is our opinion, that the Company should abstain from voting any otherwise unvoted ADS. Shareholders should be able to decide for themselves whether this transaction is or is not fair to them.
>
> Second, and much more troubling, it appears that the Company has taken steps to prevent the holders of ADS from exercising their voting rights. The final proxy designated an ADS record date of May 30, thus only ADS purchased before that date could be voted at the Extraordinary General Meeting. However, ADS's are typically convertible to ordinary shares in a commonly understood and often utilized administrative process. Further, ordinary shares under the proxy can be acquired and voted up to the meeting date. Thus, under normal circumstances, a shareholder could buy ADS after the record date, convert those shares to ordinary share certificates, and then properly vote them under the terms of the final proxy.
>
> We believe, that to undermine this procedure and prevent shareholders opposed to liquidation from accumulating additional voting shares, the Company has instructed its Transfer Agent, Computershare Services UK, as of June 3, to freeze the issuance of ordinary share certificates until after the Extraordinary General Meeting. We have difficulty understanding why the Company would choose to freeze the issuance of ordinary share certificates. Certainly the timing of this

decision makes us believe that either Company management or the Board is inappropriately using their authority to influence the shareholders vote.

We believe that the Board owes its ordinary shareholders a prompt and thorough justification for these recent actions.

As a shareholder representing over 5,300,000 ADS or more than 8.0% of ordinary shares outstanding, DCML will be voting against the proposed voluntary liquidation.

We urge you to conduct your own review and cast your own vote.

Respectfully,

Robert Andrade     Rosty Raykov

30.    Two days after plaintiff issued this press release, on June 18, 2008, Danka announced that it was proposing an amendment to the resolution to approve the sale of DOIC to Konica at the Extraordinary General Meeting scheduled to be held on June 27, 2008. The amendment will enable shareholders to approve the proposed sale regardless of the voting outcome on the separate proposal to conduct a members voluntary liquidation ("MVL") of the parent company. The press release stated:

> The change was made in response to recent statements by a number of holders of Danka's American Depositary Shares ("ADSs") that they support the sale of DOIC to Konica Minolta, but do not support the MVL as currently proposed. Danka's Board of Directors determined that it is in the best interests of Danka and its shareholders to no longer condition completion of the sale upon shareholder approval of the MVL.

> The Board said that given Danka's liquidity position and existing debt obligations as described in the Company's definitive proxy statement filed with the Securities and Exchange Commission ("SEC") on May 30, 2008, it had concluded that completing the sale of DOIC to Konica Minolta in a timely manner is of paramount importance.

> On April 8, 2008, Danka, a leading supplier of office imaging equipment and support services in the United States, announced a definitive agreement to sell DOIC, Danka's sole operating subsidiary, to Konica Minolta, a leading provider of advanced imaging and networking technologies, for approximately $240 million in cash. At that time the Company also announced plans to conduct an

10

MVL, using the sale proceeds to repay all of the Company's outstanding indebtedness, and then distribute the remaining proceeds to Danka shareholders.

"Although we continue to recommend that shareholders vote in favor of the sale transaction, MVL and related proposals, our primary mission is to close the transaction with Konica Minolta as quickly as possible," stated Danka Chairman and Chief Executive Officer A.D. Frazier.

The full text of the proposal to amend the resolution separating approval of the sale transaction from the MVL is set forth in a supplement to the proxy statement filed with the SEC on June 18, 2008 and mailed to holders of ADSs on or about that date. A revised voting instructional form for ADS holders to vote on the proposed amendment, as well as the sale itself, the MVL and related proposals, is enclosed with the supplement.

ADS holders are encouraged to read the supplement in its entirety.

The Bank of New York Mellon has agreed to extend the deadline by which voting instructional forms must be returned to the depositary by holders of American Depositary Shares to 5:00 p.m. (New York time) on June 25, 2008.

31.    Defendants filed a supplement to the Proxy Statement on June 18, 2008 (the "Supplemental Proxy'). As explained therein, the Danka Board has proposed an amendment to the resolution to approve the sale of DOIC to Konica such that if the resolution relating to the sale transaction is amended and the sale transaction is then approved by the requisite vote, than the sale transaction will be completed, regardless of the outcome of the resolution to approve the MVL. In addition, upon information and belief it it appears that defendants have has taken steps to prevent the holders of ADS from exercising their voting rights. The final proxy designated an ADS record date of May 30, thus only ADS purchased before that date could be voted at the Extraordinary General Meeting. However, ADS's are typically convertible to ordinary shares, which had a record date of June 25, 2008. Therefore, anyone who purchased ADSs after May 30, 2008 was prevented from converting those shares to ordinary shares and therefore was not allowed to submit a proxy. . Further, ordinary shares under the proxy can be acquired and voted up to the meeting date. Thus, under normal circumstances, a shareholder could buy ADS after

11

the record date, convert those shares to ordinary share certificates, and then properly vote them under the terms of the final proxy.

32.     The shareholder meeting is still scheduled to take place on June 27, 2008 and votes pursuant to the Supplemental Proxy dated June 18, 2008, and disseminated by mail "on or about" June 18, are due to be submitted by ADS holders to the Depositary by June 25, 2008 by 5:00 pm (EST).  The Supplemental Proxy does not provide any instructions regarding how to submit one's proxy other than by mail.  No instructions regarding voting via the Internet have been provided.

33.     Upon information and belief, a significant number of the Supplemental Proxy statements were not postmarked until Monday, June 23, 2008.  Some shareholders have contacted plaintiffs representing that as of June 26, 2008 they had still not received the Supplemental Proxy.

34.     Defendants failed to give adequate notice to shareholders concerning the amended resolution.  As noted, the purported reason for the amendment as disclosed in the Supplemental Proxy is that the sale of DOIC should not be conditioned on shareholder approval of the voluntary liquidation because the sale purportedly is paramount to the liquidity situation of the Company.

35.     The Supplemental Proxy instructs recipients, except for defendant Cypress Shareholders, to "promptly sign, date and return the enclosed voting instructional form in accordance with the terms provided thereon, no later than **5:00 pm (New York time) on June 25, 2008."** (Emphasis in the original).   The instructions also notes the ramifications of failing to timely file the voting forms:

> Note that our depositary agreement with the depositary gives us the right to
> instruct the depositary to give a discretionary proxy to a person designated by us

12

to vote all ordinary shares represented by holders of American Depositary Shares that have failed to timely file their voting instructional form with the depositary.

36.     Assuming same-day mail delivery on June 18, shareholders had, at most, **5 business days** to analyze the supplemental proxy, mail the voting form, and have it reach the Depositary by 5:00 pm or risk giving a discretionary proxy to a person designated by the Company and likely to vote in favor for the resolution

37.     On June 19, 2008, DCML LLC issued the following letter to Danka shareholders:

Fellow Danka Shareholders:

Recent communications from Danka Business Services PLC (the "Company") compel us to respond, highlight inaccuracies and half-truths, and expose in our opinion the utter disregard of the Company's Board of Directors ("Board") and management for the interests of ordinary shareholders.

1.  At the start, it is worth noting that the Company has still failed to produce updated financials for its shareholders. Such financials are critical to our understanding of the transactions that management has proposed, and the evaluation of their fairness. Company shareholders were last given financials at the end of December. We can only wonder why the management and the Board refuse to make available updated numbers. Any diligent fiduciary would arguably make the preparation of such financials an urgent priority in light of the Board's stated belief that the Company's financial condition is in such peril that the Company "would be placed into solvency proceedings and it is unlikely that holders of ordinary shares (including American Depositary Shares) would receive any distribution."(1) As stated in prior letters to the Board, as shareholders we do not accept -- and we should not be asked to accept -- the Board's contentions and innuendo regarding Company finances until and unless we are presented with up-to-date financials. As such, we remain steadfast in our belief that if the proceeds of the sale were to be distributed there would be $112 million to $122 million to be distributed to ordinary shareholders and participating shareholders, of which we remain confident an equitable distribution of $1.18 to $1.28 would be distributable to American Depositary Shareholders ("ADS").

2.  In Mr. Frazier's recent communication to shareholders, he has attempted to impugn our integrity and motives by suggesting that we have become shareholders of Danka "only after the announcement of the sale of DOIC to Konica Minolta". This assertion is simply false. Members of DCML were shareholders prior to the announcement of the sale -- and in fact owned 1.5x the amount of shares owned by the Board. Moreover, certain members of

13

DCML, through other entities, have owned shares in the Company since the arrival of Mr. Frazier at Danka years ago and have had numerous conversations and meetings with Mr. Frazier and senior management. Over the course of this longstanding relationship, we have witnessed the Board and senior management steward the decline of ordinary shareholders value by more than 90%.

3. We note that neither Company management nor the Board has responded to our recent letter in which we highlighted how we believe the Company is attempting to rig the forthcoming vote, by granting the right of the Depositary to give discretionary proxy for shares not voted to a person designated by Danka.(2) While similar behavior might be common in countries with a history of political repression and less developed democratic cultures, shareholders expect and deserve more from the fiduciaries of a listed public company in the UK and US. If the Board's vote-rigging behavior is not unlawful, it should be.

4. Finally, while we have come to expect the Board to act in a manner that ignores the interests of ordinary shareholders, we were taken aback by the brazen nature of the Company's Schedule 14A filing dated June 18, 2008. In this filing, the Board has made a very plain threat: if shareholders do not approve the sale of DOIC to Konica Minolta, it will seek to delist from the London Stock Exchange -- and "upon delisting from the London Stock Exchange, a sale of DOIC to Konica Minolta or other alternative transaction would not require shareholder approval."(3) In other words, we believe the Board is telling us if we as shareholders do not vote for the sale, the Board will take steps to render our approval unnecessary.

When we first read this statement, we were shocked by its audacity. It is hard to imagine a threatened course of action that is less consistent with the exercise of fiduciary duty. It is hard to imagine a course of action that would invite litigation more than this threatened sequence of events. Simply put, the Board is telling us -- all of us shareholders -- that we do not own the company, and that our will, our votes do not matter, and that the Board knows what is best. (In the Board's view, of course, what is best begins with a greater than $9 million payout to management, substantially in excess of what ordinary shareholders were slated to receive under the Board's original proposal.)

That said, we were recently heartened to see that the Board had decided to make a very modest course correction and decouple the sale of DOIC from its unwise voluntary liquidation proposal. We had hoped that this decoupling would soon be followed by a proposal to split more equitably the proceeds of the sale of DOIC. A win-win resolution, we believed, was potentially within reach. Instead, the Board has resorted to threats and to trashing the fundamentals of shareholder democracy. This is truly an unfortunate turn of events.

As a shareholder representing over 5,237,700 ADS or 8.1% of ordinary shares outstanding, DCML intends to propose a slate of directors to replace the Company's nominees at the Company's upcoming Annual Meeting. We are currently contemplating all options that will cause shareholder interests as a whole to again be taken seriously within Danka.

Respectfully,

Robert Andrade      Rosty Raykov

38.      On June 20, 2008, another significant holder of Danka ADSs issued a statement

expressing deep concerns about the terms of the sale and the liquidation, as well as about the

process through which Danka was soliciting votes. The letter from Warren J. Isabelle of

Ironwood Investment Management, LLC to shareholders of Danka reads as follows:

Fellow Danka Shareholders:

Danka Business Services PLC ("Danka") has recently submitted an amendment to its proxy statement for the upcoming meeting of shareholders to be held June 27, 2008, with two new proposals (Proposals 1A and 1B) that together would decouple the sale of its U.S. operating subsidiary, Danka Office Imaging Corporation (DOIC), to Konica-Minolta Business Solutions U.S.A., Inc. (Proposal 1) from the voluntary liquidation process (Proposal 2). In their preamble, management suggests that certain ADS (American Depositary Share) holders have expressed support for the sale as partial rationale for the change. As the largest Danka ADS holder, Ironwood cannot accept that statement without qualification. While the gross proceeds, anticipated between $240 million and $250 million, would not appear, on its face, to be an unreasonable price for DOIC, the proposed distribution of the proceeds, we believe, is unreasonable and therefore not in the best interests of shareholders. Furthermore, since the most recent financial statements available date back to December 31, 2007, we have no idea as to whether or how much excess cash flow is being generated that could be applied to existing liabilities, thereby reducing them and thus increasing, perhaps significantly, the proceeds available for distribution.

Finally, we remain deeply concerned that shareholders may not have enough time to develop a sufficient understanding of the proposed transactions or the new proposal amendments and to cast their vote in a timely fashion. The voting deadline has been extended until June 25th, but Danka still intends to hold the special meeting of shareholders on June 27, 2008 as originally planned, with no additional financial disclosure from the Company. The only benefit we perceive

from these proposal amendments is the additional time provided to ADS shareholders to vote their proxies.

Given these development and our concerns, we again urge all Danka shareholders of record, and specifically Danka ADS shareholders, to read carefully the proposal amendments and exercise your right to vote on them. We must reiterate that Ironwood will be voting against the voluntary liquidation. Quite simply we remain unconvinced: We continue to believe that management has not acted in the ordinary shareholders' best interests and that the liquidation process will not result in maximizing the value of those shares.

39.    Finally, on June 24,2008, plaintiff send another letter to Danka's shareholders:

Fellow Danka Shareholders:

DCML has concluded that we will not support the decoupling of the sale of DOIC from Konica Minolta or the voluntary liquidation proposal. And we plan to call for an extraordinary shareholder meeting to replace the Board and defend shareholder's interests.

As mentioned in prior releases, Danka's management and Board are concerned that shareholders may not vote in favor of this distribution outcome, so they are improperly attempting to control the vote by voting the shares of all holders who do not otherwise vote themselves. These efforts are highly questionable and in our opinion unethical, in the context that the Board excluding Cypress Investment Group controls less than 0.45% of the shares.

Nevertheless, DCML remains steadfast in our belief of substantially excess value to the paltry $0.10 offered and will continue to move forward with all options necessary to cause shareholder interests to be again taken seriously within Danka.

We urge shareholders to review their amended proxy voting instructions and cast your OWN vote.

40.    Despite the express dissatisfaction of two of the largest holders of Danka ADSs, defendants have taken no steps to ensure that all shareholders have a right to vote with respect to the recently decoupled transaction. The Supplemental Proxy was first mailed on June 18, 2008, making the submission of proxies by mail by June 25, 2008 virtually impossible. Defendants have effectively disenfranchised all holders of Danka ordinary shares who are the parties most in

need of protection in this transaction where they stand to receive the least of any party in the proposed liquidation transaction.

41.    The process described in the Proxy Statement, whereby defendant purportedly negotiated with Cypress with respect to the allocation of proceeds to plaintiff and the other shareholders of Danka, was not designed to elicit a fair price for the holders of Danka's ordinary shares.  The process appears to have been slanted towards defendants who, in the case of Cypress, will receive the bulk of the proceeds from the sale, and, in the case of the Danka defendants, will receive substantial change in control and other payments in connection with the proposed sale transaction.

42.    The Danka Defendants are also in a position of power and control over Danka's shareholders, and have access to internal financial information about Danka and its true value to which plaintiff and the other holders of ordinary shares are not privy.  As discussed below, neither the Proxy Statement nor the Supplemental Proxy provide updated financial statements to shareholders to allow them to assess the fairness of the sale transaction.  The Danka Defendants have failed to provide updated financial information and rely on figures from the period ended December 31, 2007.  Defendants are using their positions of power and control to benefit themselves in the proposed sale transaction and subsequent liquidation, to the detriment of the holders of ordinary shares.

43.    These failures are exacerbated by the failure of defendants to provide an adequate period of time for shareholders to vote their proxies and the inadequate and misleading disclosures in the Proxy Statement and the Supplemental Proxy.  Shareholders have been precluded from making informed decisions regarding how to vote their shares.

## COUNT I

### Violation Of Section 14(a) Of The Exchange Act and
### Rule 14a-9 Promulgated Thereunder Against Danka

44.     Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein, except to the extent any allegations above contain any facts which are unnecessary or irrelevant for purposes of stating a claim under this Section, including allegations that may be interpreted to sound in fraud or relating to any state of mind of defendants other than negligence.

45.     The Count is brought by Plaintiff pursuant to Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9 promulgated thereunder, 17 C.F.R. § 240.14a-9, against defendant Danka and the Danka Board of Directors.

46.     The Proxy Statement and the Supplemental Proxy, filed on May 30, 2008 and June 18, 2008 respectively, were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and concealed and failed to disclose material facts.  The Proxy Statement and the Supplemental Proxy were used by Danka to solicit votes in favor of the sale transaction and the MVL.

47.     Defendants' repeated suggestion that Danka is in financial peril renders the Company's proxy statements issued in connection with the sale of DOIC and the MVL materially false and misleading.  Beyond failing to provide updated financials, the Proxy Statement falsely states that due to Danka's liquidity position and legacy obligations, the sale of DOIC and the MVL represent "the best financial outcome for all stakeholders of the Company" and that the liquidation "will enable the net cash in the Company...to be returned to Danka shareholders in the most cost effective manner."

48.     In its June 11, 2008 letter to plaintiff, the Company stated, "Given the Company's liquidity position and the situation surrounding the Company's existing debt obligations, and the

fact that the sale of DOIC to Konica Minolta constitutes the sale of Danka's remaining operations, the Board determined that the [voluntary liquidation] is the only practical alternative to enable net cash in the Company, following closing of the sale transaction, to be returned to Danka shareholders in a cost effective and timely manner, and which provides a return to the holders of the Ordinary Shares and ADS."

49.     The Supplemental Proxy echoes the claims of financial peril and liquidity concerns.    However, Defendants have failed to disclose that the Company could meet its obligations through traditional financial management strategies without an MVL. Furthermore, Defendants failed to disclose that the terms of the sale of DOIC and the voluntary liquidation were designed to circumvent terms attached to defendant Cypress Shareholders' Participating shares under the relevant documents and UK law so that defendant Cypress Shareholders would receive a disproportionate distribution from the sale of DOIC. Under UK law, Cypress is an equity holder, is not a creditor and is not entitled to any preference over holders of ordinary shares. The sale of DOIC does not constitute a change of control. Under the circumstances, any liquidation is improper.

50.     Further, the Proxy Statement repeatedly references liquidity concerns and its level of indebtedness as justifications for the sale transaction and the MVL, yet General Electric Capital, the provider of the Company's credit facilities, has made additional capital available to Danka in order for the Company to become current on the amounts owed to its largest supplier. Thus, while the Company may have incurred additional debt, that debt was used to satisfy a significant payable and therefore would have no effect on the Company's balance sheet. Without any financial information regarding the period between January 1, 2008 and June 30,

19

2008, investors cannot gauge the financial condition of the Company or assess defendants' claims regarding the necessity of the related transactions.

51.    The Proxy Statement as supplemented was approved by the Danka Board, and signed by defendant Frazier on behalf of the Board of Directors, including defendants McKenna, Daly, Ellerston, Harned, Riddle, Vonk, Downes, and Parzick.

52.    Plaintiff is a holder of Danka ADSs and was solicited to vote on the proposed sale transaction and liquidation pursuant to the defective Proxy Statement and Supplemental Proxy.

53.    At the time plaintiff acquired Danka ADSs, it was without knowledge of the facts concerning the wrongful conduct alleged herein and could not have reasonably discovered those facts.    The facts regarding the virtual impossibility of casting a timely vote after the dissemination of the Supplemental Proxy could not have been known until June 18 at the earliest.

54.    As a result of the foregoing, plaintiff has sustained damages.

### COUNT II

### Breach of Fiduciary Duty Against All Defendants

55.    Plaintiff repeats and realleges each of the foregoing paragraphs as if fully set forth herein

56.    The Danka Defendants, aided and abetted by Cypress, have violated the fiduciary duties of care, loyalty, candor and independence to the holders of ordinary shares of Danka.

57.    Defendants have breached their fiduciary duties by recommending the sale transaction and MVL without regard to the fairness of the transactions to Danka's shareholders. Defendants directly breached or aided and abetted the other defendants' breaches of fiduciary duties owed to plaintiff and other holders of the Company's ordinary shares.

58.    Defendants failed to exercise the care required and breached their duties of loyalty, good faith, disclosure and independence owed to plaintiff and the other shareholders of Danka. Defendants dominate and control the corporate affairs of Danka and are in possession of information concerning Danka's assets, businesses, and prospects. There exists an imbalance and disparity of knowledge and economic powers between them and plaintiff that makes it inherently unfair for them to pursue the proposed transactions.

59.    Plaintiff will suffer irreparable injury because of the actions of defendants, including defendants' manipulation of the shareholder vote, Unless enjoined by this Court, defendants will continue to breach their fiduciary duties and may effectuate the proposed transactions which will exclude plaintiff from its fair share of the proceeds from the proposed sale transaction and will benefit defendants in the unfair manner complained of herein.

60.    Unless the vote is enjoined or set aside, defendants will not provide Danka shareholders with the requisite time and information to enable them to cast informed votes on the proposed  transactions and may consummate the transactions, all to the irreparable harm of plaintiff

61.    Plaintiff had no adequate remedy at law.

## DEMAND FOR JURY TRIAL

62.    Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment, as follows:

A.    Declaring that defendants have violated state and federal law in the manner described herein;

21

B.      Ordering defendants to act independently so that the interests of Danka's

shareholders will be protected and to disclose all material facts regarding

the proposed transactions such that shareholders can cast informed and

timely votes;

C.      awarding compensatory damages in favor of plaintiff and against all

defendants, jointly and severally, for all damages sustained as a result of

defendants' wrongdoing, in an amount to be proven at trial, including

interest thereon;

D.      awarding rescission in favor of plaintiff and all holders of Danka ordinary

shares against all defendants, jointly and severally, for the damages

sustained as a result of the wrongdoings of defendants, together with

interest thereon;

E.      awarding plaintiff its reasonable costs and expenses incurred in this action,

including counsel fees and expert fees; and

F.      such other and further relief as is just and proper.

Dated:  June 27, 2008                    **ABBEY SPANIER RODD & ABRAMS, LLP**

By: _____
Arthur N. Abbey (AA - 8079)
Karin E. Fisch  (KF-1082)
Nancy Kaboolian  (NK-6346)
James Burrell, Jr. (JB-7399)
212 East 39th Street
New York, NY  10016
Tel.:    212-889-3700
Fax:     212-684-5191

*Counsel for Plaintiff*