**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DCML LLC,

                           :

                Plaintiff,                        08 cv 5829 (SAS)

                           :

         v.

                           :

DANKA BUSINESS SYSTEMS PLC, A.D.        **ECF Case**
FRAZIER, W. ANDREW MCKENNA, DR. KEVIN :
C. DALY, JAIME W. ELLERTSON,            **Electronically Filed**
CHRISTOPHER B. HARNED, J. ERNEST   :
RIDDLE, ERIK VONK, DAVID DOWNES,
JOSEPH E. PARZICK, and CYPRESS MERCHANT :
BANKING PARTNERS II LP,

                           :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DANKA BUSINESS
SYSTEMS PLC, A.D. FRAZIER, W. ANDREW MCKENNA, DR. KEVIN C. DALY,
JAIME W. ELLERTSON, CHRISTOPHER B. HARNED, J. ERNEST RIDDLE, ERIK
VONK, DAVID DOWNES, AND JOSEPH E. PARZICK TO DISMISS DCML LLC'S
FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

                                SKADDEN, ARPS, SLATE,
                                 MEAGHER & FLOM LLP
                               Scott D. Musoff
                               Beverly A. Farrell
                               Four Times Square
                               New York, New York 10036
                               Telephone: (212) 735-3000
                               Fax: (212) 735-2000

                               Attorneys for Defendants Danka Business
                               Systems PLC, A.D. Frazier, W. Andrew
                               McKenna, Dr. Kevin C. Daly, Jaime W.
                               Ellertson, Christopher B. Harned, J.
                               Ernest Riddle, Erik Vonk, David Downes,
                               and Joseph E. Parzick

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND ...................................................................................................................2

ARGUMENT .........................................................................................................................7

I.      DCML'S CLAIMS DO NOT SATISFY FED. R. CIV. P. 12(b)(6). .................7

II.     DCML'S CLAIM UNDER SECTION 14(a) OF THE SECURITIES
        EXCHANGE ACT OF 1934 AND SEC RULE 14a-9 IS FRIVOLOUS. ..........8

        A.      DCML Does Not Have Standing Under Section 14(a)...........................9

        B.      DCML Cannot State a Section 14(a) Claim Concerning the Liquidation
                Transaction Because That Transaction Was Voted Down. ...................12

        C.      DCML Cannot State a Section 14(a) Claim Concerning the Sale
                Transaction Because DCML Was Not Harmed by That Transaction....14

        D.      The Danka Defendants Are Entitled to a Mandatory Sanctions Award
                Under the Private Securities Litigation Reform Act of 1995. ..............17

III.    WITHOUT THE SECTION 14(a) CLAIM, THIS COURT SHOULD NOT
        EXERCISE SUBJECT-MATTER JURISDICTION OVER THIS ACTION..................19

IV.     DCML'S FIDUCIARY DUTY CLAIM FAILS AS A  MATTER OF LAW..................21

        A.      DCML Lacks Standing to Assert a Breach of Fiduciary Duty Claim. .................21

        B.      DCML Has Not Alleged Any Cognizable Harm...................................23

CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*7547 Corp. v. Parker & Parsley Development Partners, L.P.*,
    38 F.3d 211 (5th Cir. 1994) ......................................................................10

*380544 Canada, Inc. v. Aspen Technology, Inc.*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ........................................................16

*Allen v. Wright*,
    468 U.S. 737 (1984)....................................................................................24

*In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)...........................................7, 11, 17

*Arar v. Ashcroft*,
    532 F.3d 157 (2d Cir. 2008).........................................................................7

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)........................................................................16

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)................................................................................8

*Brunson v. Clark*,
    No. 94 Civ. 9256 (JFK), 1996 WL 559965 (S.D.N.Y. Oct. 1, 1996) ........25

*Carnegie-Mellon University v. Cohill*,
    484 U.S. 343 (1988)....................................................................................20

*City of Sterling Heights Police & Fire Retirement System v. Abbey National, PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006).................................................21–23

*City Partnership Co. v. Jones Intercable, Inc.*,
    213 F.R.D. 576 (D. Colo. 2002) ...............................................................10

*Cole v. Schenley Industries, Inc.*,
    563 F.2d 35 (2d Cir. 1977).........................................................................12

*Edgar v. MITE Corp.*,
    457 U.S. 624 (1982)....................................................................................21

*Fisher v. Kanas*,
    467 F. Supp. 2d 275 (E.D.N.Y. 2006) ......................................................17

*In re Global Crossing, Ltd. Securities Litigation*,
    471 F. Supp. 2d 338 (S.D.N.Y. 2006)........................................................16

*Goldstein v. Pataki*,
    516 F.3d 50 (2d Cir. 2008), *cert. denied*, 128 S. Ct. 2964 (2008) ................................ 8

*Gurary v. Nu-Tech Bio-Med, Inc.*,
    303 F.3d 212 (2d Cir. 2002) ........................................................................ 18

*Hausman v. Buckley*,
    299 F.2d 696 (2d Cir. 1962) ........................................................................ 21

*Heil v. Lebow*,
    No. 91 Civ. 8656 (JFK), 1993 WL 15032 (S.D.N.Y. Jan. 13, 1993) ......................... 13

*In re Initial Public Offering Securities Litigation*,
    544 F. Supp. 2d 277 (S.D.N.Y. 2008) ............................................................ 16

*Itar-Tass Russian News Agency v. Russian Kurier, Inc.*,
    140 F.3d 442 (2d Cir. 1998) ........................................................................ 20

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964) .............................................................................. 9–10

*In re J.P. Morgan Chase Securities Litigation*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................ 14

*Kolari v. New York Presbyterian Hospital*,
    455 F.3d 118 (2d Cir. 2006) ..................................................................... 19–20

*Krauth v. Executive Telecard, Ltd.*,
    890 F. Supp. 269 (S.D.N.Y. 1995) ................................................................ 11

*Lichtenberg v. Besicorp Group Inc.*,
    43 F. Supp. 2d 376 (S.D.N.Y. 1999) .............................................................. 15

*In re Marsh & McLennan Cos. Securities Litigation*,
    536 F. Supp. 2d 313 (S.D.N.Y. 2007) ............................................................ 14

*Mills v. Electric Auto-Lite Co.*,
    396 U.S. 375 (1970) ....................................................................... 10, 12–13

*In re Morgan Stanley Derivative Litigation*,
    542 F. Supp. 2d 317 (S.D.N.Y. 2008) ............................................................ 13

*Murray v. Hospital Corp. of America*,
    682 F. Supp. 343 (M.D. Tenn. 1988), *aff'd*, 873 F.2d 972 (6th Cir. 1989) ............... 10

*North Atlantic Instruments, Inc. v. Haber*,
    188 F.3d 38 (2d Cir. 1999) ........................................................................ 21

*Pierre J. LeLandais & Co. v. MDS-Atron, Inc.*,
    543 F.2d 421 (2d Cir. 1976)............................................................................15

*Polar International Brokerage Corp. v. Reeve*,
    187 F.R.D. 108 (S.D.N.Y. 1999) ...................................................................22

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*,
    No. 99 Civ. 3794 (BSJ), 2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003)..................21

*Rediker v. Geon Industries, Inc.*,
    464 F. Supp. 73 (S.D.N.Y. 1978)...................................................................13

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)..........................................................................17

*Ruotolo v. City of New York*,
    514 F.3d 184 (2d Cir. 2007)............................................................................8

*Scottish Air International, Inc. v. British Caledonian Group, PLC*,
    81 F.3d 1224 (2d Cir. 1996)..........................................................................21

*Shafran v. Harley-Davidson, Inc.*,
    No. 07 Civ. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .................24

*Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*,
    186 F.3d 157 (2d Cir. 1999)..........................................................................18

*Smillie v. Park Chemical Co.*,
    466 F. Supp. 572 (E.D. Mich. 1979)..............................................................10

*Summit Investors II, L.P. v. Sechrist Industries, Inc.*,
    No. Civ. A. 19400, 2002 WL 31260989 (Del. Ch. Sept. 20, 2002) .........................25

*TSC Industries, Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976).................................................................................9–10

*United Mine Workers of America v. Gibbs*,
    383 U.S. 715 (1966)...............................................................................19–20

*United Paperworkers International Union v. International Paper Co.*,
    985 F.2d 1190 (2d Cir. 1993)................................................................10–11, 14

*Valencia ex rel. Franco v. Lee*,
    316 F.3d 299 (2d Cir. 2003)..........................................................................20

*Virginia Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991)...................................................................................17

*Werfel v. Kramarsky*,
    61 F.R.D. 674 (S.D.N.Y. 1974) ...................................................................................11

*Wojchowski v. Daines*,
    498 F.3d 99 (2d Cir. 2007) .......................................................................................7

*Woodling v. Garrett Corp.*,
    813 F.2d 543 (2d Cir. 1987) ...................................................................................21

*Wulc v. Gulf & Western Industries, Inc.*,
    400 F. Supp. 99 (E.D. Pa. 1975) ............................................................................10

## Statutes, Rules, and Regulations

15 U.S.C. § 78n ...............................................................................7–15, 17, 19–21

15 U.S.C. § 78u-4 ....................................................................................7, 17–19

28 U.S.C. § 1367 .........................................................................................2, 19

Fed. R. Civ. P. 11 ...................................................................................1, 17–19

Fed. R. Civ. P. 12 .................................................1, 7, 14, 16–17, 23, 25

Fed. R. Civ. P. 23.1 .......................................................................................22–23

Fed. R. Evid. 201 ............................................................................................16

17 C.F.R. § 240.14a-9 ...................................................................................7–10

Danka Business Systems PLC ("Danka"), A.D. Frazier, W. Andrew McKenna, Dr. Kevin C. Daly, Jaime W. Ellertson, Christopher B. Harned, J. Ernest Riddle, Erik Vonk, David Downes, and Joseph E. Parzick (collectively, the "Moving Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint ("FAC") of DCML LLC ("DCML") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

This action arises from a series of transactions for which Danka sought shareholder approval in June 2008. The series involved a sale of Danka's operating subsidiary for approximately $240 million, followed by a voluntary liquidation under which a portion of the sale proceeds would be distributed to the various classes of Danka shareholders. DCML, a recently formed entity holding a substantial number of shares of one class, opposed the liquidation, but not sale, transaction because it believed it would provide too little to the shareholders in its class. After an anti-liquidation campaign led by DCML, Danka shareholders approved the sale but rejected the liquidation transaction in a vote held on June 27, 2008. That same day, DCML filed this action against Danka and its board, asserting proxy violations under the federal securities laws and breaches of fiduciary duty under English law.[1] The claims are meritless. DCML's action is an improper attempt to manipulate Danka and its directors as they consider how to apportion the sale proceeds.[2]

DCML's securities claim has no legal basis. First, DCML did not even exist on the applicable date for determining the shareholders eligible to vote.  Therefore, it did not have

---

[1]  DCML also sued Cypress Merchant Banking Partners II LP (the "Cypress"), the largest holder of a senior class of Danka shares.

[2]  DCML's improper conduct in filing this action is explained further in the papers supporting Danka's separate motion for sanctions against DCML under Fed. R. Civ. P. 11.

voting rights with respect to the proposed transactions. This defeats DCML's claim. It is well-settled that only shareholders with voting rights have standing to challenge proxy materials under the facts presented here. Also, proxy materials are not actionable unless they form an essential link in the accomplishment of a transaction. DCML cannot establish that link for the liquidation transaction which was voted down and never consummated. For the sale transaction, DCML does not allege that it suffered any injury as a result of the sale or that the sale price was inadequate. In fact, DCML publicly supported the sale transaction before the shareholder vote. In light of these obvious defects, DCML's securities claim is frivolous and should be dismissed.

With the securities claim eliminated from this action, no basis for original jurisdiction exists because the remaining fiduciary duty claim is governed by English law and complete diversity among the parties is lacking. Thus, it is well within this Court's discretion to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). In any event, DCML's fiduciary duty claim is baseless. Companies and directors owe no fiduciary duty to shareholders under English law. Nor has DCML attempted to satisfy the requirements for bringing a derivative action on Danka's behalf. And, given the outcome of the shareholder vote on the liquidation transaction, DCML cannot show that the alleged conduct of Danka and its directors resulted in any cognizable injury to DCML. Thus, even if this Court chooses to exercise supplemental jurisdiction over DCML's fiduciary duty claim, the claim should be dismissed because DCML cannot allege these essential facts.

## BACKGROUND

### Danka's Business Activities and Equity Structure

Danka is a public limited company organized under the laws of England and Wales. (*See* FAC ¶ 12.) Until June 2008, Danka was one of the leading independent providers of comprehensive document solutions, including office imaging equipment, software, support, and

2

related services and supplies in the United States. (Hogan Decl. Ex. A 22.) Danka conducted its operations through a wholly owned operating subsidiary, Danka Office Imaging Company ("DOIC"), a Delaware corporation headquartered in Florida. (FAC ¶¶ 12, 24; Hogan Decl. Ex. A 3, 101.)

Danka's equity structure includes senior convertible participating shares, ordinary shares, and American Depositary Shares ("ADSs"). The largest holder of senior convertible participating shares is Cypress, which together with its affiliates owns approximately 92 percent of those shares. (FAC ¶¶ 22, 26.) ADSs are traded over the counter in the United States, and, under certain circumstances, each ADS is convertible into four ordinary shares.

### Danka's Announcement of the Sale Transaction and the Liquidation Transaction, and Robert Andrade's and Rostislav Raykov's Acquisition of Danka ADSs

On April 8, 2008, Danka issued a press release announcing that it had entered into a definitive agreement to sell DOIC to Konica Minolta Business Solutions U.S.A. Inc. ("Konica Minolta") for approximately $240 million. (*Id.* ¶¶ 23–24.) Danka also announced its plan for distributing a portion of the sale proceeds to its shareholders pursuant to a voluntary liquidation. Danka's press release noted that, under Danka's Articles of Association, ordinary shareholders and ADS holders would not be entitled to receive any portion of the sale proceeds. (*Id.* ¶ 24.) Under the proposed liquidation plan, however, ordinary shareholders would receive $0.025 per share, ADS holders would receive $0.10 per share, and the remaining proceeds would be distributed to senior convertible participating shareholders. (*Id.*; Hogan Decl. Ex. B 2.) Both the sale transaction and the liquidation transaction were subject to approval by Danka shareholders. (FAC ¶ 24.)

After Danka announced the sale transaction and the liquidation transaction, Robert Andrade and Rostislav Raykov purchased substantial quantities of Danka ADSs. (Hogan Decl.

Ex. C 2, 9–13; *see* FAC ¶ 11.) From April 9, 2008, through June 4, 2008, Messrs. Andrade and

Raykov bought nearly 4.1 million ADSs at prices ranging from $0.079 to $0.115 per ADS.

(Hogan Decl. Ex. C 2, 9–13.) An overwhelming majority of their purchases were at prices less

than $0.10 per ADS (*id.*)—in other words, less than the value of each ADS under the proposed

liquidation transaction.

**Danka's Proxy Statement**

On May 30, 2008, Danka issued a proxy statement (the "Proxy Statement") soliciting the

vote of Danka shareholders with respect to the sale transaction and the liquidation transaction.

(FAC ¶ 25.) The Proxy Statement explained that Danka's board of directors "believes that the

sale transaction represents the best financial outcome for all stakeholders of the company."

(Hogan Decl. Ex. A 13–14.) The Proxy Statement also explained that an independent committee

of Danka's board of directors had reached an arrangement with Cypress pursuant to which ADS

holders, who under ordinary circumstances would not receive any distribution under the

liquidation, would receive $0.10 per ADS if the transactions were approved. (FAC ¶ 26.) Danka

explained in the Proxy Statement that the sale transaction was conditioned on shareholder

approval of the liquidation transaction. (*Id.* ¶ 28.)

The Proxy Statement announced that the shareholder vote would be conducted at an

extraordinary general meeting of Danka shareholders scheduled for June 27, 2008. (Hogan Decl.

Ex. A 17, 28.) The Proxy Statement and ADS voting-instruction forms included in the Proxy

Statement made clear that only ADS holders of record as of the close of business on May 30,

2008, were eligible to vote on the transactions. (*Id.* at 8, 17–18, 28, 40, 250.)

**DCML's Formation and Shareholder Campaign**

On June 5, 2008, DCML was formed. (FAC ¶ 11.) According to the First Amended

4

Complaint, DCML "is a limited liability corporation formed . . . by Mr. Andrade and Mr. Raykov to jointly hold and vote their previously purchased shares of Danka." (*Id.*) DCML and/or Messrs. Andrade and Raykov purchased additional Danka ADSs after DCML's formation. (Hogan Decl. Ex. C 13.)

Around the same time, DCML initiated a public campaign contending that the proposed liquidation transaction would not provide enough value to holders of ordinary shares and ADSs. On June 9, 2008, DCML filed with the United States Securities and Exchange Commission ("SEC") a letter to the members of the independent committee of Danka's board of directors. (*Id.* at 5–8.) DCML noted in the letter that it supported the sale transaction and stated, "We support the Board's decision to recommend shareholder approval of the sale of [DOIC] to Konica Minolta." (*Id.* at 5.) DCML also stated that it was "not opposed to the sale of DOIC to KOM at the proposed price." (*Id.* at 8.) As for the liquidation transaction, however, DCML stated its belief that "the Independent Committee . . . has seriously erred in (1) recommending that the Company enter liquidation subsequent to such sale; (2) conditioning sale of DOIC upon shareholder approval of liquidation, and (3) negotiating a distribution of sale proceeds in liquidation that would leave ordinary shareholders [including ADS shareholders] with a pittance." (*Id.* at 5.) DCML also asserted that ADS holders should receive between $1.18 and $1.28 per ADS in the liquidation transaction. (*Id.* at 6.)

On June 16, 2008, DCML sent another letter to Danka and its shareholders reiterating its criticisms of the liquidation transaction. (FAC ¶ 29.) At this time, other Danka shareholders expressed concern to Danka that completion of the sale transaction was conditioned upon shareholder approval of the liquidation transaction. (*Id.* ¶ 30.)

**Danka Modifies Its Proposals**

Consequently, on June 18, 2008, Danka issued a press release stating that, in response to certain of these concerns, it was amending the terms of the proposed transactions such that completion of the sale transaction was no longer conditioned on shareholder approval of the liquidation transaction. (*Id.*) Danka explained, however, that the economic terms of the liquidation transaction remained the same and that ADS holders would still receive approximately $0.10 per share if the sale transaction and the liquidation transaction were approved. (*See* Hogan Decl. Ex. D 7–8.) Danka filed that same day a supplement to the Proxy Statement (the "Proxy Statement Supplement") that detailed the "de-linking" amendments and advised that the shareholder vote on both the sale and the liquidation transactions was still scheduled for June 27, 2008. (FAC ¶¶ 31–32.)

**Danka Shareholders Approve Sale Transaction and Reject Liquidation Transaction**

Danka conducted its extraordinary general meeting on June 27, 2008. (*Id.* ¶ 40.) At that meeting, Danka shareholders approved the sale of DOIC to Konica Minolta, and the sale was consummated later that day. (*Id.*) The liquidation transaction, however, did not receive shareholder approval. (*Id.* ¶¶ 2, 6, 40, 42, 46, 50.) As a result, the liquidation transaction is no longer pending.

**DCML's Litigation**

On the day of the extraordinary general meeting, DCML filed its Complaint in this action. At the same time, DCML issued a press release announcing that it had filed the action and stating that it "remained steadfast in [its] belief that ordinary shareholders are entitled to an equitable share of the proceeds from the sale of DOIC, and that such distribution substantially exceeds the $0.10/ADS previously offered to shareholders" in the liquidation transaction. (Hogan Decl. Ex. E 1.)

On July 10, 2008, DCML filed its First Amended Complaint, which asserts a claim against Danka and its directors for alleged proxy violations under Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), and SEC Rule 14a-9(a), 17 C.F.R. § 240.14a-9(a), as well as a claim against Danka, its directors, and Cypress arising from alleged breaches of fiduciary duty. As of the date of this filing, DCML has not served process on any of the defendants, has not requested waivers of service, and in fact has not contacted the defendants' counsel regarding service.

## ARGUMENT

I.    **DCML'S CLAIMS DO NOT SATISFY FED. R. CIV. P. 12(b)(6).**

In deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts accept as true the material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.[3] *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008); *Wojchowski v. Daines*, 498 F.3d 99, 104 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "'enough facts to state a claim to relief that is plausible on its face.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). The factual allegations in the complaint must be "'enough to raise a right to relief above the speculative level.'" *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965), *cert. denied*, 128 S. Ct. 2964 (2008). Neither of the claims asserted in the First Amended Complaint satisfies this standard.

---

[3]  DCML's Section 14(a) claim is subject to the heightened pleading standards established in the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *In re Marsh & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d 313, 320 (S.D.N.Y. 2007). Under those standards, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b).

## II.    DCML'S CLAIM UNDER SECTION 14(a) OF THE SECURITIES EXCHANGE ACT OF 1934 AND SEC RULE 14a-9 IS FRIVOLOUS.

DCML's first claim is that the Proxy Statement issued on May 30, 2008, and the Proxy Statement Supplement issued on June 18, 2008, violate Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a),[4] and SEC Rule 14a-9(a), 17 C.F.R. § 240.14a-9(a).[5] (FAC ¶¶ 48–60.) This claim is frivolous because it fails to comply with three well-established principles governing Section 14(a) claims. First, as a threshold matter, DCML does not have standing under Section 14(a) because it did not own any ADSs as of the record date and therefore was not entitled to vote on the transactions covered by Danka's proxy materials. Second, to the extent that DCML's Section 14(a) claim relates to the liquidation transaction, its claim is without merit because that transaction was not approved by Danka shareholders, making it impossible for DCML to establish the essential link between Danka's proxy solicitation and the accomplishment of the transaction, as required under Section 14(a). Third, as it relates to the sale transaction, DCML's Section 14(a) claim fails because, although DCML alleges that it would

---

[4]  Section 14(a) provides:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

[5]  Under Rule 14a-9(a):

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

have been harmed as a result of the unconsummated liquidation transaction, it has not pleaded any harm in connection with the separate sale transaction (almost certainly because such an allegation would be patently false given its support for the sale transaction).

### A.    DCML Does Not Have Standing Under Section 14(a).

When the U.S. Supreme Court first recognized an implied private right of action under Section 14(a) in *J. I. Case Co. v. Borak*, 377 U.S. 426 (1964), it stressed that Section 14(a) is concerned with protecting shareholders' voting rights. *Id.* at 431. The Court explained:

> The purpose of § 14(a) is to prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation. The section stemmed from the congressional belief that [f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange. It was intended to control the conditions under which proxies may be solicited with a view to preventing the recurrence of abuses which . . . [had] frustrated the free exercise of the voting rights of stockholders. Too often proxies are solicited without explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought.

*Id.* (quotations and citations omitted here and throughout). The Court has returned to this voting-rights theme in its subsequent decisions interpreting Section 14(a) and Rule 14a-9. In *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438 (1976), for example, the Court observed that the purpose of Rule 14a-9 "is not merely to ensure by judicial means that the transaction, when judged by its real terms, is fair and otherwise adequate, but to ensure disclosures by corporate management in order to enable the shareholders to make an informed choice." *Id.* at 448; *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381 (1970) (quoting *Borak*'s explanation of the purpose and intent of Section 14(a)).

Courts have developed a rule of standing that helps to prevent the expansion of Section 14(a) claims beyond their voting-rights underpinnings. Under this rule, when a company issues proxy materials seeking shareholder approval of a transaction, a person may not challenge the

materials under Section 14(a) unless the person is a shareholder entitled to vote on the

transaction. *See 7547 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211, 229 (5th Cir.

1994) ("We view section 14(a) as protecting only interest-holders with voting rights."); *City

P'ship Co. v. Jones Intercable, Inc.*, 213 F.R.D. 576, 587 (D. Colo. 2002) (explaining that "any

party who was eligible to vote has standing to maintain a § 14(a) action, while the rest of the

world, which had no right to vote, has no such standing"); *Murray v. Hosp. Corp. of Am.*, 682 F.

Supp. 343, 348 (M.D. Tenn. 1988) (explaining that "plaintiffs who are not shareholders with

voting rights at the time of the alleged proxy violation lack standing to pursue claims under

section 14(a) and Rule 14a-9"), *aff'd*, 873 F.2d 972 (6th Cir. 1989); *Smillie v. Park Chem. Co.*,

466 F. Supp. 572, 575 (E.D. Mich. 1979) ("[I]t is undisputed that plaintiff . . . did not even own

voting stock in 1973, 1974, or 1975. Clearly, she lacks standing to sue for alleged proxy

violations occurring during those years."); *Wulc v. Gulf & W. Indus., Inc.*, 400 F. Supp. 99, 103

(E.D. Pa. 1975) ("[T]o have standing under § 14(a), the plaintiff is required to be a shareholder

with voting rights in order to establish a nexus with the statute.").

Courts in the Second Circuit have consistently applied this rule limiting the right of

action recognized in *Borak* to "shareholders who are entitled to vote." *See, e.g.*, *United

Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1197–98 (2d Cir. 1993); *Krauth v.

Executive Telecard, Ltd.*, 890 F. Supp. 269, 286 (S.D.N.Y. 1995). Thus, in *Werfel v. Kramarsky*,

61 F.R.D. 674 (S.D.N.Y. 1974), the court dismissed a Section 14(a) claim brought by a

warrantholder without voting rights. *Id.* at 677–78. The court reasoned as follows:

> Plaintiff here . . . never had any voting rights in [the issuer] and is not a member
> of the class of stockholders congress sought to protect when it enacted § 14(a).
> Since plaintiff has no corporate voting rights, a violation of § 14(a) cannot
> interfere with his free exercise of those rights. Thus, the rationale supporting the
> private right of action does not extend to plaintiff.

61 F.R.D. at 678. The court reached the same conclusion in *In re AOL Time Warner, Inc. Securities & "ERISA" Litigation*, 381 F. Supp. 2d 192 (S.D.N.Y. 2004), where it explained that "Section 14(a)'s emphasis on the proxy solicitation process indicates that the statute was designed to protect only those shareholders with voting rights." *Id.* at 241. For this reason, the court held that "only shareholders who owned [the issuer's] common stock on the record date of the [transaction] are permitted to bring Section 14(a) claims; *i.e.*, no class member who lacked voting rights has standing to assert a 14(a) claim." *Id.* at 240.

In this case, the allegations in the First Amended Complaint demonstrate that DCML was not entitled to vote on the transactions addressed in the Proxy Statement and the Proxy Statement Supplement. DCML alleged in the First Amended Complaint that it owned Danka ADSs. (FAC ¶¶ 5, 11, 58.) It did not allege that it owned any other Danka securities, such as senior convertible participating shares or ordinary shares, that would provide it with a right to vote on the transactions. Under the applicable voting procedures, the record date with respect to ADSs was the close of business on May 30, 2008. Only record holders of ADSs—i.e., persons who held ADSs as of the record date—were eligible to vote on the transactions.

The record date for ADSs was made clear in several places in the Proxy Statement. (Hogan Decl. Ex. A 8, 17–18, 28, 40.) The ADS voting-instruction forms included in the Proxy Statement and the Proxy Statement Supplement also set forth the ADS record date of May 30, 2008. (*Id.* at 250; Hogan Decl. Ex. D 12.) Furthermore, DCML itself referred to the ADS record date and its effect on voting in a public letter to Danka shareholders. The letter, dated June 16, 2008, stated that "[t]he final proxy designated an ADS record date of May 30, thus only ADS purchased before that date could be voted at the Extraordinary General Meeting." (FAC ¶ 29.)

DCML did not own any ADSs as of the close of business on May 30, 2008. The allegations in the First Amended Complaint show that DCML was not formed until June 5, 2008, nearly one week after the record date. (*Id.* ¶ 11.) Although it is fair to infer from the First Amended Complaint that DCML's members, Messrs. Andrade and Raykov, may have owned ADSs as of the record date (*id.*), their ownership of ADSs cannot be imputed to a separate legal person that did not exist at that time. To the extent that Messrs. Andrade and Raykov did own ADSs as of the record date, the voting rights arising from those ADSs belonged to Messrs. Andrade and Raykov. As for DCML, it did not exist as of the record date and did not own any ADSs as of that date. Accordingly, DCML was not entitled to vote on the transactions at issue, and its Section 14(a) claim should be dismissed in its entirety for lack of standing.

**B.      DCML Cannot State a Section 14(a) Claim Concerning the Liquidation Transaction Because That Transaction Was Voted Down.**

Even if DCML had standing under Section 14(a), its claim is deficient insofar as it relates to the liquidation transaction because DCML cannot establish the required causal connection between Danka's proxy solicitation and DCML's alleged injury. Under *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375 (1970), and its progeny, this requirement is satisfied when a proxy solicitation was an "essential link in *the accomplishment of the transaction*." *Id.* at 385 (emphasis added); *accord Cole v. Schenley Indus., Inc.*, 563 F.2d 35, 39 (2d Cir. 1977) ("The threshold question is whether the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction."); *In re Morgan Stanley Derivative Litig.*, 542 F. Supp. 2d 317, 324 (S.D.N.Y. 2008) ("To succeed on a Section 14(a) claim, a plaintiff must make a sufficient showing of [a] causal relationship between the violation and the injury for which he seeks redress . . . [by proving] that the proxy solicitation itself . . . was an essential link in the accomplishment of the transaction.").

It is impossible to establish this "essential link" when the transaction at issue is not approved or is otherwise not consummated. For instance, in *Rediker v. Geon Industries, Inc.*, 464 F. Supp. 73 (S.D.N.Y. 1978), the court dismissed a Section 14(a) claim when the transaction proposed in the defendant's proxy statement was approved by the defendant's shareholders but was never consummated. *Id.* at 81–82. The court stated:

> [A] damage claim under Section 14(a) must arise out of corporate action taken pursuant to a proxy statement. No such corporate action is here alleged. The [proposed merger described in the proxy statement] was never consummated. Thus any alleged misstatements or omissions in the proxy statement could not have injured plaintiff in her rights of corporate suffrage. The requisite "loss causation" component of a Section 14(a) claim is, therefore, absent.

*Id.* Similarly, in *Heil v. Lebow*, No. 91 Civ. 8656 (JFK), 1993 WL 15032 (S.D.N.Y. Jan. 13, 1993), the court dismissed a Section 14(a) claim when the defendant's proposed restructuring transaction was not consummated "because the necessary approval was not obtained." *Id.* at *3. The court explained that, under these circumstances, a plaintiff "cannot show the fundamental requirement that the proxy solicitation caused him injury." *Id.*

The principle of causation enunciated in *Mills* and applied in cases such as *Rediker* and *Heil* requires the dismissal of DCML's Section 14(a) claim insofar as it relates to the unconsummated liquidation transaction. Danka did not obtain the shareholder votes necessary to approve the liquidation transaction—a fact that DCML alleged no less than six times in its First Amended Complaint. (FAC ¶¶ 2, 6, 40, 42, 46, 50.).  Thus DCML's allegations of alleged false information or omissions concerning the liquidation transaction, Danka's financial condition, or Danka's "alternatives" with respect to the liquidation are all beside the point, because the liquidation transaction was not approved.[6]  As such, DCML cannot show that Danka's proxy

---

[6]  Even if the liquidation transaction had not been voted down, it is also the case that DCML, through its public campaign, provided its own assessment of the flaws in the liquidation proposal,

*(cont'd)*

solicitation was an essential link in the accomplishment of the liquidation transaction, and this portion of its claim should therefore be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### C.    DCML Cannot State a Section 14(a) Claim Concerning the Sale Transaction Because DCML Was Not Harmed by That Transaction.

The remaining portion of DCML's Section 14(a) claim relates to the sale transaction under which Danka sold DOIC to Konica Minolta Business Solutions U.S.A., Inc. for $240 million in cash.[7] Unlike the liquidation transaction, the sale transaction was approved by Danka shareholders at the extraordinary general meeting on June 27, 2008 (FAC ¶ 40), and Danka consummated the sale transaction shortly thereafter (*id.* ¶¶ 3, 41–42.) To sustain a Section 14(a) claim in connection with the sale transaction, DCML must show that the allegedly false and misleading statements and omissions in Danka's proxy materials "caused [its alleged] injury." *In re Marsh & McLennan Cos. Sec. Litig.*, 536 F. Supp. 2d 313, 320–21 (S.D.N.Y. 2007); *In re J.P. Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 636 (S.D.N.Y. 2005).

In the typical Section 14(a) case, the plaintiff attempts to establish this causal chain by showing that the proxy solicitation enabled the defendant to enter into a transaction and that that transaction, in turn, resulted in economic harm to the plaintiff. *See, e.g.*, *Pierre J. LeLandais & Co. v. MDS-Atron, Inc.*, 543 F.2d 421, 424–25 (2d Cir. 1976) (holding that plaintiff failed to

---

*(cont'd from previous page)*

its view of a purported "alternative" to the liquidation transaction, and its assessment of Danka's financial condition. DCML's public commentary was itself part of the "total mix of information" that was available to shareholders, and would preclude a claim that Danka's proxy materials were deficient. *See United Paperworkers Int'l Union*, 985 F.2d at 1199 (explaining that the "total mix" of information includes "information already in the public domain and facts known or reasonably available to the shareholders").

[7]  The base purchase price of $240 million is subject to an upward or downward adjustment of up to $10 million. (Hogan Decl. Ex. A 101–02, 144.)

show loss causation when merger approved through proxy solicitation resulted in no damages to plaintiff); *Lichtenberg v. Besicorp Group Inc.*, 43 F. Supp. 2d 376, 389–90 (S.D.N.Y. 1999) ("[L]oss causation is established when a proxy solicitation would result or has resulted in a merger on terms that are unfair to the shareholders.").

DCML does not allege any loss related to the consummated sale transaction. Rather, the only harm alleged relates to the aborted liquidation transaction, which never happened. Under the liquidation transaction, holders of ADSs, including DCML, would have received $0.10 in cash per share, holders of Danka ordinary shares would have received $0.025 in cash per share, and any sale-transaction proceeds that remained after these payments and Danka's satisfaction of certain other obligations would have been distributed to holders of Danka senior convertible participating shares. (Hogan Decl. Ex. A 4, 13–15, 26, 35, 42, 50–51, 53, 88, 89, 171, 177, 180, 192, 194, 235.)

According to the First Amended Complaint, this distribution scheme—which, again, was not implemented in light of the outcome of the shareholder vote—would have harmed DCML because it would have provided too much value to senior convertible participating shareholders and not enough to the other shareholder classes. (*See* FAC ¶¶ 4, 36–38, 42.)

None of the allegations in the First Amended Complaint could be read to suggest that DCML suffered harm as a result of the separate sale transaction. Indeed, during its campaign to derail the liquidation transaction, DCML issued a public letter urging Danka shareholders to vote in favor of the sale transaction.[8] (Hogan Decl. Ex. C 5, 8.) In that letter, dated June 9, 2008,

---

[8] This Court may consider the letter in deciding this Rule 12(b)(6) motion because DCML included it in a Schedule 13D filed with the SEC on June 9, 2008. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (courts considering motions to dismiss under Rule 12(b)(6) may consider "legally required public disclosure documents filed with the SEC"); *In re Initial Pub. Offering Sec. Litig.*, 544 F. Supp. 2d 277, 284 (S.D.N.Y. 2008) (same). In

*(cont'd)*

DCML drew a clear distinction between the liquidation transaction (which it criticized) and the sale transaction (which it praised). With respect to the liquidation transaction, DCML expressed its view that the liquidation "disproportionately benefits the [senior convertible participating] shareholders" (*id.* at 5), and it provided a detailed "Equitable Distribution Analysis" concluding that holders of ADSs should receive between $1.18 and $1.28 in cash for each ADS (*id.* at 6–7). As for the sale transaction, DCML stated that it "support[ed] the [Danka] Board's decision to recommend shareholder approval of the sale of Danka Official Imaging Company ('DOIC') to Konica Minolta ('KOM')" (*id.* at 5), and that it was "not opposed to the sale of DOIC to KOM at the proposed price" (*id.* at 8).[9]

The pro-sale, anti-liquidation position taken by DCML in its communications to Danka shareholders is consistent with the allegations of harm set forth in the First Amended Complaint, all of which are tied to the allegedly unfair distribution scheme contemplated by the failed liquidation transaction. Because there is no causal connection between the sale transaction and

_____

*(cont'd from previous page)*

addition, under Fed. R. Evid. 201, this Court may take judicial notice of documents filed with the SEC. *See 380544 Canada, Inc. v. Aspen Tech., Inc.*, 544 F. Supp. 2d 199, 214 (S.D.N.Y. 2008) (taking judicial notice of documents filed with the SEC); *In re Global Crossing Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 343 (S.D.N.Y. 2006) ("The Court may also take judicial notice of matters of public record, including the contents of documents required to be filed with the SEC.").

[9]  Until the late stages of DCML's campaign, one of its complaints was that the sale transaction should not be conditioned on shareholder approval of the liquidation transaction. (*See* FAC ¶ 36.) Danka proposed that this condition be eliminated in the Proxy Statement Supplement on June 18, 2008, in part to alleviate DCML's concerns. (*Id.* ¶¶ 30–31.) In the final days before the shareholder vote, however, DCML reversed course on this issue. It ultimately declared that it was opposed to the liquidation transaction *and* the decoupling of the sale transaction and the liquidation transaction, and it threatened to replace Danka's board of directors (*id.* ¶ 38), all in an effort to prevent the allegedly unfair distributions contemplated under the liquidation transaction.

the alleged harm to DCML, this portion of DCML's Section 14(a) claim fails as a matter of law

and should be dismissed under Rule 12(b)(6).[10]

### D.    The Danka Defendants Are Entitled to a Mandatory Sanctions Award Under the Private Securities Litigation Reform Act of 1995.

The sanctions provisions of the PSLRA state that, "upon final adjudication of [a

securities] action, the court shall include in the record specific findings regarding compliance by

each party and each attorney representing any party with each requirement of Rule 11(b) of the

Federal Rules of Civil Procedure as to any complaint." 15 U.S.C. § 78u-4(c)(1); *accord*

*Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004) (remanding securities action for specific

findings under Rule 11(b)). If the court finds that a party or attorney violated Rule 11(b) as to a

complaint, "the court *shall* impose sanctions on such party or attorney in accordance with Rule

11." 15 U.S.C. § 78u-4(c)(2) (emphasis added); *accord Gurary v. Nu-Tech Bio-Med, Inc.*, 303

---

[10]  DCML alleges that the following statement from Danka's Proxy Statement was false and misleading: "Our board of directors believes that the sale transaction represents the best financial outcome for all stakeholders of [Danka]." (Hogan Decl. Ex. A 3; FAC ¶ 51.) DCML's attack on this statement is deficient from a causation perspective in that DCML has not alleged that it was injured by the sale transaction. Moreover, under *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), a statement of opinion or belief is actionable under Section 14(a) "only if the opinion is both (1) not believed by the speaker, and (2) objectively untrue." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 243 (S.D.N.Y. 2004); *accord Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006) (opinion not actionable under Section 14(a) unless "the statement of opinion is both objectively and subjectively false"). To satisfy this requirement, a plaintiff must allege, among other things, "provable particularized facts [showing] that [the defendant] did not believe its stated opinion." *AOL Time Warner*, 381 F. Supp. 2d at 243; *accord Fisher*, 467 F. Supp. 2d at 282 (plaintiff must allege "with particularity provable facts" showing that defendant "did not actually hold the belief or opinion stated"). DCML has not alleged, with particularity or otherwise, that Danka's directors did not believe that the sale transaction provided the best financial outcome for Danka's stakeholders; in fact, the First Amended Complaint disclaims any reliance on "allegations that may be interpreted to sound in fraud or relating to any state of mind of defendants other than negligence." (FAC ¶ 48.) Thus, DCML's allegations concerning the directors' beliefs fail to state a claim under *Virginia Bankshares*.

F.3d 212, 215 (2d Cir. 2002) ("If the court determines that a violation has occurred, the imposition of sanctions is mandatory.").

When there is a "substantial failure" to comply with Rule 11(b) as to a complaint, "the court shall adopt a presumption that the appropriate sanction . . . is an award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A)(ii). The presumption "may be rebutted only upon proof" by the Rule 11(b) violator that "the award of attorneys' fees and other expenses will impose an unreasonable burden on that party or attorney and would be unjust, and the failure to make such an award would not impose a greater burden on the party in whose favor sanctions are to be imposed" or that "the violation of Rule 11(b) . . . was de minimis." *Id.* § 78u-4(c)(3)(B)(i)–(ii). Even when the violator meets its burden of rebutting the presumption, the PSLRA still requires that "the court shall award the sanctions that the court deems appropriate pursuant to Rule 11." *Id.* § 78u-4(c)(3)(C).

The Second Circuit has explained that "[t]he PSLRA's sanction regime was one of several provisions designed to reduce the economic incentives for bringing [meritless and abusive securities] actions." *Gurary*, 303 F.3d at 219–20. When the PSLRA was enacted,

> Congress was concerned about the failure of courts to impose sanctions pursuant to Rule 11, even in cases in which penalties were warranted. . . . Congress was also troubled by the fact that under existing Rule 11 practice, when a court did award Rule 11 sanctions, the award was generally insufficient to make whole the victim of a Rule 11 violation; the amount of the sanction [was] limited to an amount that the court deem[ed] sufficient to deter repetition of the sanctioned conduct, rather than imposing a sanction that equals the cost imposed on the victim of the violation.

*Gurary*, 303 F.3d at 220; *see also Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166–67 (2d Cir. 1999) ("Rule 11 has not deterred abusive securities litigation," and PSLRA sanctions provisions were "intended to put 'teeth' in Rule 11").

For the reasons explained above and in Danka's separate Rule 11 motion, DCML's frivolous Section 14(a) claim is precisely the kind of litigation that the mandatory sanctions provisions of the PSLRA were designed to address. DCML has insisted on prosecuting this claim despite the fact that it lacks standing under Section 14(a), and it has done so even though the sole source of its alleged harm—the liquidation transaction—was voted down by Danka shareholders and cannot be implemented. In light of these obvious legal and factual defects, DCML had no legitimate basis for bringing the Section 14(a) claim. Under the PSLRA, 15 U.S.C. § 78u-4(c)(3)(A)(ii), and Rule 11, the Moving Defendants are entitled to recover from DCML a sanctions award in the amount of the reasonable attorneys' fees and other expenses they have incurred in this action.

## III. WITHOUT THE SECTION 14(a) CLAIM, THIS COURT SHOULD NOT EXERCISE SUBJECT-MATTER JURISDICTION OVER THIS ACTION.

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As the Supreme Court stated in discussing pendent jurisdiction (the judicial predecessor to Section 1367), however, this is traditionally "a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). Of particular relevance here, a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Once a district court's discretion is triggered under Section 1367(c)(3), it should balance the traditional "'values of judicial economy, convenience, fairness, and comity,'" *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)), in deciding whether to exercise jurisdiction. *See Itar-Tass Russian*

*News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 446-47 (2d Cir. 1998). In weighing these factors, courts consider additional guidance from the Supreme Court in *Cohill* that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." 484 U.S. at 350 n.7; *see also Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Courts of appeals have disapproved the exercise of supplemental jurisdiction where all federal-law claims have been dismissed. *See, e.g.*, *Kolari*, 455 F.3d at 123–24; *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305–06 (2d Cir. 2003) (collecting cases).

In the instant case, once DCML's frivolous Section 14(a) claim is dismissed, notions of judicial economy, convenience, fairness, and comity all weigh against this Court exercising supplemental jurisdiction over DCML's claim for breach of fiduciary duty, which is governed by English law. To continue to retain jurisdiction over this claim where, as here, the only federal-law claim in the action is dismissed at an early stage in the litigation would be a waste of judicial resources. Principles of comity dictate that DCML's foreign-law claim be heard in England, as it is the forum with the strongest interest in matters arising from the internal affairs of an English company. There is nothing fair or convenient about requiring a foreign company to defend itself in a U.S. court against a claim under foreign law which ought to be heard in its country of incorporation. In short, there is no federal interest whatsoever at stake here. Accordingly, once this Court dismisses DCML's Section 14(a) claim, it should decline to exercise jurisdiction over the remaining foreign-law claim for breach of fiduciary duty.

IV.    **DCML'S FIDUCIARY DUTY CLAIM FAILS AS A MATTER OF LAW.**

A.    **DCML Lacks Standing to Assert a Breach of Fiduciary Duty Claim.**

Should this Court decide to exercise supplemental jurisdiction over DCML's breach of fiduciary duty claim following the dismissal of the Section 14(a) claim, it should dismiss the fiduciary duty claim nonetheless because DCML lacks standing under both English law and the Federal Rules of Civil Procedure.

A federal court adjudicating a claim over which it has supplemental jurisdiction applies the choice-of-law rules of the forum state. *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999). "Under New York law, 'questions relating to the internal affairs of corporations are decided in accordance with the law of the place of incorporation.'" *City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y. 2006) (quoting *Scottish Air Int'l, Inc. v. British Caledonian Group, PLC*, 81 F.3d 1224, 1234 (2d Cir. 1996)). The "internal affairs" doctrine recognizes that "only one State [the state of incorporation] should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). The doctrine applies to a shareholder's claim of breach of fiduciary duty. *Hausman v. Buckley*, 299 F.2d. 696, 703 (2d Cir. 1962); *PPI Enters. (U.S.), Inc. v. Del Monte Foods Co.*, No. 99 Civ. 3794 (BSJ), 2003 WL 22118977, at *18 (S.D.N.Y. Sept. 11, 2003). Questions of procedure, however, are governed by federal law. *See Woodling v. Garrett Corp.*, 813 F.2d 543, 552 (2d Cir. 1987) (holding that the law of the forum state applies to questions of procedure).

Under English law, directors generally owe no fiduciary duties to individual shareholders. *See, e.g.*, *Multinat'l Gas & Petrochem. Co. v. Multinat'l Gas & Petrochem. Servs. Ltd.*, [1983]

21

ch. 258 (holding that fiduciary duties are owed to the company, not shareholders); CA; *Re a Company (No 004415 of 1996),* [1997] 1 BCLC 479 (same); Palmer's Company Law ¶ 8.2402 ("[D]irectors do not owe duties to the members of the company, to creditors or to other directors."); *see also Sterling Heights*, 423 F. Supp. 2d at 364 ("Under English law, neither companies nor directors owe fiduciary duties to individual shareholders."); *Polar Int'l Brokerage Corp. v. Reeve*, 187 F.R.D. 108, 116 n.7 (S.D.N.Y. 1999) ("Generally under British law, directors owe duties to the company, and not the individual stockholders."). Accordingly, DCML's claim, which is styled as a direct action, must be dismissed because DCML may not bring a direct claim for breach of fiduciary duty. *See* Companies Act 2006, pt. 11, ch. 1, § 260(1).

Even if this Court construes DCML's direct fiduciary duty claim as a derivative claim brought on Danka's behalf, the claim still fails because DCML has not satisfied the requirements for bringing a derivative action. To bring a derivative claim under English law, for example, DCML would have to show that it is a registered member of Danka, and that it is seeking relief on Danka's behalf, rather than its own. *See id.* §§ 112(2), 260(1). The First Amended Complaint does not contain allegations on either of these points.

Moreover, under Rule 23.1 of the Federal Rules of Civil Procedure, a complaint in a derivative action "must be verified." Fed. R. Civ. P. 23.1(b). In addition, the verified complaint must allege that "the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law," *id.* 23.1(b)(1), and it must "state with particularity: any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members," as well as "the reasons for not obtaining the action or not making the effort," *id.* 23.1(b)(2). DCML's First Amended Complaint—which is not verified and lacks the

allegations required under Rule 23.1(b)—does not satisfy these basic requirements. *See Sterling Heights*, 423 F. Supp. 2d at 364 (dismissing shareholder's derivative claim for breach of fiduciary duty under English law when shareholder's complaint failed to satisfy Rule 23.1).

In short, DCML's direct claim for breach of fiduciary duty against Danka and its directors fails because companies and directors generally do not owe shareholders a fiduciary duty under English law. And even if DCML's direct claim is interpreted as a derivate claim, the claim remains deficient because DCML has not sufficiently alleged the prerequisites for bringing a derivate claim under English law or Rule 23.1. Its claim should therefore be dismissed under Rule 12(b)(6).

### B.    DCML Has Not Alleged Any Cognizable Harm.

Under English law, the purpose of a derivative claim is to compensate the members or shareholders of a company for harm allegedly caused to the company on behalf of which the claim is brought. *See Franbar Holdings Ltd. v. Patel*, [2008] All ER (D) 14 (Jul). Thus, a *sine qua non* of a derivative action under English law is that the subject company suffered harm as a result of the alleged misconduct by the directors.[11]

DCML's breach of fiduciary duty claim fails because DCML has not alleged, and cannot allege, that Danka was harmed as a result of any alleged misconduct. DCML simply cannot avoid the fact that the liquidation plan was defeated and Danka therefore suffered no harm.

---

[11]  To the extent that DCML's breach of fiduciary duty claim is based on the directors' negotiation of the terms of the proposed liquidation plan, that claim does not implicate defendants A.D. Frazier, Jaime W. Ellertson, Christopher B. Harned, Erik Vonk, or Joseph E. Parzick. These directors cannot have breached any fiduciary duty in the context of negotiations, as they did not participate in the alleged misconduct. DCML concedes that the liquidation plan was negotiated by an independent committee of Danka's board of directors, which included only David J. Downes, Kevin C. Daly, J. Ernest Riddle, and W. Andrew McKenna. (FAC ¶ 27.) DCML has not alleged that any other board member was a party to or otherwise participated in the negotiations about the liquidation plan.

Moreover, nowhere in the First Amended Complaint is there any allegation that the accomplishment of the sale of DOIC caused Danka injury. On the contrary, in its letter, dated June 9, 2008, to shareholders, DCML stated that it was "not opposed to the sale of DOIC to KOM at the proposed price." (Hogan Decl. Ex. C 8.)

Unable to allege any actual injury, DCML speculates as to injuries that might arise from unspecified potential future events. For example, DCML alleges that "any [future] attempt at an involuntary liquidation would be improper" (FAC ¶ 53) and that Danka has failed to "disclose the information necessary to allow a holder of ordinary shares to assess the options available to them now that [the liquidation] is no longer a viable alternative" (*id.* ¶ 50; *see also id.* ¶ 45 ("To the extent that defendants consider any other alternative, including an involuntary liquidation, to be viable, then the requirements and details of any such alternative and treatment of ordinary shares therein must be disclosed."), ¶ 47 ("Plaintiff needs this information to allow it to assess the alternatives currently available to holders of ADSs now that the asset sale has been effectuated."), ¶ 65 ("Defendants *may take steps* to distribute the sale proceeds in a manner, such as improper involuntary liquidation, that will exclude plaintiff from its fair share of the proceeds from the proposed sale transaction.") (emphasis added)).

To be sure, there is no involuntary liquidation proposed by Danka's board of directors or pending for shareholder vote, nor is there any other transaction pending for which Danka has solicited proxies under Rule 14a-9. Alleged prospective harm from hypothetical future events is not, of course, a proper basis for a lawsuit. *See, e.g.*, *Allen v. Wright,* 468 U.S. 737, 751 (1984) (stating that, for purposes of standing under Article III, injury may not be speculative or abstract but must be distinct and definite); *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008) (dismissing claims, including breach of

24

fiduciary duty claim, where plaintiff's alleged injuries were "solely the result of a perceived and speculative risk of future injury that may never occur"); *Brunson v. Clark*, No. 94 Civ. 9256 (JFK), 1996 WL 559965, at *3 (S.D.N.Y. Oct. 1, 1996) (declining to exercise jurisdiction based on "purely hypothetical risk that they will, at some unspecified future time, suffer the same alleged [injury]"); *cf. Summit Investors II, L.P. v. Sechrist Indus. Inc.*, No. Civ. A. 19400, 2002 WL 31260989, at *6 (Del. Ch. Sept. 20, 2002) (noting, in the context of the duty to disclose, that a director's "fiduciary duties do not extend to speculation concerning future events").

Because DCML is unable to allege that Danka suffered damages as a result of the alleged breach of fiduciary duty, Count II of the First Amended Complaint must be dismissed under Rule 12(b)(6). DCML's alleged injuries are solely the product of DCML's speculation about future events, and its assertions as to what Danka must or must not do with respect to future decisions.

<u>**CONCLUSION**</u>

For all of the foregoing reasons, the Moving Defendants respectfully request that this Court enter an order dismissing with prejudice the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
       August 22, 2008

                                          Respectfully submitted

                                           /s/ Scott D. Musoff
                                          Scott D. Musoff (scott.musoff@skadden.com)
                                          Beverly A. Farrell (beverly.farrell@skadden.com)
Of Counsel:                               SKADDEN, ARPS, SLATE,
Albert L. Hogan, III                        MEAGHER & FLOM LLP
SKADDEN, ARPS, SLATE,                     Four Times Square
  MEAGHER & FLOM LLP                      New York, New York 10036
333 West Wacker Drive                     Tel.: (212) 735-3000
Chicago, Illinois 60606                   Fax: (212) 735-2000
al.hogan@skadden.com
Tel.: (312) 407-0700
Fax: (312) 407-041                        Attorneys for Moving Defendants