**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DCML LLC,

                        :

               Plaintiff,              08 cv 5829 (SAS)

                        :

       v.                       **ECF Case**

                        :

DANKA BUSINESS SYSTEMS PLC, A.D.
FRAZIER, W. ANDREW MCKENNA, DR. KEVIN :   **Electronically Filed**
C. DALY, JAIME W. ELLERTSON,
CHRISTOPHER B. HARNED, J. ERNEST       :
RIDDLE, ERIK VONK, DAVID DOWNES,
JOSEPH E. PARZICK, and CYPRESS MERCHANT :
BANKING PARTNERS II LP,

                        :

             Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF DANKA**
**<u>BUSINESS SYSTEMS PLC FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11</u>**

                         SKADDEN, ARPS, SLATE,
                          MEAGHER & FLOM LLP
                        Scott D. Musoff
                        Beverly A. Farrell
                        Four Times Square
                        New York, New York 10036
                        Tel.: (212) 735-3000
                        Fax: (212) 735-2000

                        Attorneys for Defendant Danka Business
                        Systems PLC

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................1

BACKGROUND ..........................................................................2

ARGUMENT ...............................................................................8

I.    DCML'S COUNSEL VIOLATED RULE 11 IN FILING THE FIRST
      AMENDED COMPLAINT BECAUSE DCML'S CLAIMS ARE LEGALLY
      BASELESS AND LACK FACTUAL SUPPORT ......................................9

      A.    Legal Standard ..............................................................9

      B.    DCML's Claims Are Objectively Baseless............................10

II.   DCML VIOLATED RULE 11 BECAUSE THE FIRST AMENDED
      COMPLAINT WAS FILED FOR AN IMPROPER PURPOSE.......................13

III.  THE APPROPRIATE SANCTION IS TERMINATION OF THIS ACTION AND
      AN AWARD OF DANKA'S COSTS AND ATTORNEYS' FEES ................15

CONCLUSION..............................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdelhamid v. Altria Group*,
    515 F. Supp. 2d 384 (S.D.N.Y. 2007) ............................................................................ 15

*Baasch v. Reyer*,
    827 F. Supp. 940 (E.D.N.Y. 1993) ................................................................................ 13

*Bello v. Barden Corp.*,
    N. 3:01 cv 01531, 2006 WL 2827091 (D. Conn. Sept. 29, 2006) .................................. 14

*Bond Opportunity Fund v. Unilab Corp.*,
    No. 99 Civ. 11074, 2003 WL 21058251 (S.D.N.Y. May 9, 2003) .................................. 11

*Brunson v. Clark*,
    No. 94 Civ. 9256, 1996 WL 559965 (S.D.N.Y. Oct. 1, 1996) ........................................ 13

*Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .......................................................................................... 11

*Cohen v. Bane*,
    853 F. Supp. 620 (E.D.N.Y. 1994) ................................................................................ 10

*Cooter & Gell v. Hartmarx Corp.*,
    496 U.S. 384 (1990) ........................................................................................................ 8

*Cross & Cross Props., Ltd. v. Everett Allied Co.*,
    886 F.2d 497 (2d Cir. 1989) ............................................................................................ 9

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561,
    2003 WL 22227956 (S.D.N.Y. Sept. 26, 2003) .............................................................. 8

*Galef v. Alexander*,
    615 F.2d 51 (2d Cir. 1980) ............................................................................................ 10

*Gen. Elec. Co. v. Cathcart*,
    980 F.2d 927 (3d Cir. 1992) .......................................................................................... 11

*Heil v. Lebow*,
    No. 91 Civ. 8656 (JFK), 1993 WL 15032 (S.D.N.Y. Jan. 13, 1993) ............................ 11

*Katzman v. Victoria's Secret Catalogue*,
    167 F.R.D. 649 (S.D.N.Y. 1996) ......................................................................... 8, 14–15

ii

*Knipe v. Skinner*,
    19 F.3d 72 (2d Cir. 1994) ................................................................... 8, 14–15

*Margo v. Weiss*,
    213 F.3d 55 (2d Cir. 2000) ....................................................................... 9

*Markewich v. Adikes*,
    422 F.Supp. 1144 (E.D.N.Y. 1976) ...................................................... 11

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................ 11

*Morley v. Ciba-Geigy Corp.*,
    66 F.3d 21 (2d Cir. 1995) ................................................................ 10, 13

*Polar Int'l Brokerage Corp. v. Reeve*,
    196 F.R.D. 13 (S.D.N.Y. 2000) ............................................................ 16

*Rediker v. Geon Indus., Inc.*,
    464 F. Supp. 73 (S.D.N.Y. 1978) .................................................... 11–12

*Reichmann v. Neumann*,
    No. 04 Civ. 09485, 2008 WL 1830508 (S.D.N.Y. Apr. 22, 2008) .................................... 10

*Summit Investors II v. Sechrist Indus.*,
    No. Civ. A. 19400, 2002 WL 31260989 (Del. Ch. Sept. 20, 2002) ................................ 13

*Tannenbaum v. Zeller*,
    71 Civ. 2104, 1979 WL 1232 (S.D.N.Y. July 26, 1979) ................................ 11

*Thomason v. Norman E. Lehrer P.C.*,
    182 F.R.D. 121 (D.N.J. 1998) ............................................................... 13

*United States v. Int'l Bhd. of Teamsters*,
    948 F.2d 1338 (2d Cir. 1991) ............................................................... 14

**<u>Statutes</u>**

15 U.S.C. § 78u-4 ................................................................................... 2, 16

**<u>Rules</u>**

Fed. R. Civ. P. 11 ................................................................ 1, 8–10, 12–16

Danka Business Systems PLC ("Danka") respectfully submits this memorandum in support of its motion for sanctions against DCML LLC ("DCML") pursuant to Fed. R. Civ. P. 11 based on DCML's violation of the Rule 11(b) prohibition against filing legally frivolous claims and for filing claims for an improper purpose, including harassment and delay.

## PRELIMINARY STATEMENT

This lawsuit by DCML epitomizes the type of conduct that Rule 11 was designed to deter. As detailed below, this case is nothing more than a leverage tactic by DCML in its ongoing attempt to turn a quick, enormous profit from its recent investment in American Depositary Shares ("ADSs") of Danka. The First Amended Complaint ("FAC") is patently lacking in merit and cannot result in any relief for the simple reason that it challenges a proxy statement that sought shareholder approval of a liquidation plan that Danka's shareholders *rejected*.

Due to a challenging competitive environment, Danka recently presented its shareholders with plans to (1) sell its business and (2) liquidate and distribute to its common shareholders (including ADS holders) the sale proceeds left over after satisfying its obligations to creditors and preferred shareholders. DCML, which began to purchase large blocks of ADSs of Danka immediately *after* the two plans were announced, supported Danka's plan to sell its business but opposed the liquidation plan as proposed. A majority of the shareholders then approved the sale of the business but defeated the liquidation plan. On that very same day, DCML filed this lawsuit alleging that, in connection with the shareholder vote on the sale and liquidation plans, Danka and its directors (1) made false and misleading disclosures and (2) breached their fiduciary duty to DCML. DCML subsequently filed an amended complaint asserting the same causes of action.

DCML's claims are entirely baseless because, among other things, DCML has suffered no damages, and cannot be awarded injunctive relief, given that *the liquidation plan was defeated*. It is clear that DCML filed this action for the sole purpose of continuing to pressure

Danka's board of directors and its preferred shareholders to allocate a greater portion of the sale proceeds to DCML. DCML's hope is that Danka (and its directors) will become mired in litigation and ultimately acquiesce to DCML's demands.

Because the First Amended Complaint in this lawsuit was filed for an improper purpose, and because DCML's claims are legally baseless, Rule 11 calls for DCML to be sanctioned and for this case to be terminated.[1]

## BACKGROUND

Danka is a corporation formed under the laws of the United Kingdom as a public limited company. Danka's principal activities have historically been supplying and servicing office equipment and providing related services. Until recently, Danka had been conducting all of its business through its wholly-owned operating subsidiary, Danka Office Imaging Company ("DOIC"), which was headquartered in Florida. Danka has ordinary shareholders and participating or preferred shareholders. Danka also has issued American Depository Shares that are traded over-the-counter in the United States, and which, under certain circumstances, can be converted to four ordinary shares per one ADS.

On April 8, 2008, Danka publicly announced that it had determined to sell DOIC to Konika Minolta, and then liquidate Danka. Danka noted that these two transactions would require shareholder approval. Danka explained that, because of Danka's challenging financial condition and its outstanding debt and other liabilities, holders of Danka's ADSs would not

---

[1] The basis of this Rule 11 motion is focused on the improper purposes behind this lawsuit, as well as the obvious legal deficiencies of the asserted claims. As demonstrated in the defendants' separate motion to dismiss the First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), DCML's allegations fail to state a claim in several respects. Additionally, at the appropriate time Danka will address the deficiencies that compel an award of attorneys' fees pursuant to the mandatory sanctions provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4. In this memorandum, Danka focuses on the clear and compelling reasons why Rule 11 applies to the First Amended Complaint.

normally be entitled to any distribution in the proposed liquidation. Nonetheless, Danka's board

had negotiated an arrangement with Danka's preferred shareholders whereby holders of ADSs

would receive approximately $0.10 per ADS if the sale and liquidation were approved.

      The very next day *after* Danka announced the proposed sale and liquidation, DCML

began snapping up Danka ADSs, and between April 9 and June 5, 2008 acquired 4,328,018 such

shares.[2] (Hogan Decl. Ex. 1 at Ex. B). DCML bought these shares for prices ranging from $0.079

to $0.115 per ADS, with the overwhelming majority of its purchases at prices less than $0.10 per

ADS (or in other words, less than the proposed liquidation value of the shares as announced on

April 8).[3] (*Id.*)

      On May 30, 2008, Danka filed its Form DEFM 14A with its accompanying proxy

statement (the "Proxy Statement"), soliciting the vote of Danka's shareholders with respect to the

sale and the liquidation. Danka explained that the proceeds from the sale of DOIC were needed

to repay certain obligation under existing credit facilities (which were due on July 1, 2008) and

that default on such repayment could be considered a breach of the terms of the existing credit

---

[2]  In reality DCML was not formed until June 5, 2008. In its Schedule 13D filing with the United States Securities and Exchange Commission ("SEC"), dated June 9, 2008, DCML attributed to itself purchases apparently made by its members, Robert Andrade and Rostislav Raykov. (Hogan Decl. Ex. 1.) Neither in its SEC filing nor in its First Amended Complaint in this case has DCML provided any further details concerning the circumstances surrounding its acquisition of Danka ADSs. Danka reserves all rights to question the standing of DCML to assert any rights concerning shares it did not purchase.

[3]  DCML attempts to side-step its pervasive purchases of ADSs made after the sale announcement by alleging that Messrs. Andrade and Raykov began purchasing shares beginning on December 14, 2007. (FAC ¶ 11.) Yet again, the fact that DCML did not exist until June 5, 2008, renders this allegation perplexing. But, even assuming DCML can be credited with the purchases of others, DCML's own public filings indicate that, as of June 9, the vast majority of its holdings in ADSs had been acquired on or after April 9, 2008, or *after* Danka announced the proposed sale and liquidation transactions. (Hogan Decl. Ex. 1.) The conclusion is inescapable that DCML acquired this massive position of ADSs so that it could exert hold-up leverage over Danka and seek an enormous and immediate windfall.

facilities and could lead to the withdrawal of these facilities. Danka further explained that, although it was *possible* to negotiate other credit facilities (likely on worse terms than the existing credit facilities), there was no *guarantee* that such facilities could be negotiated. As announced April 8, 2008, Danka disclosed in the Proxy Statement that the two transactions were "linked" in that the consummation of the sale transaction was conditioned on shareholder approval of the liquidation transaction. Moreover, Danka explained again that holders of ADSs—who would not normally be entitled to any distribution under the liquidation—would receive approximately $0.10 per ADS if the transactions were approved, as a result of an arrangement reached between the board of directors and the preferred shareholders.

DCML continued to buy up ADSs. (*See id.*) Around the same time, however, DCML began a bombastic public campaign contending that the proposed liquidation value of $0.10 per ADS was "unfair." On June 9, 2008, DCML wrote to Danka's independent directors and made their letter public in a filing with the SEC. (*Id.* at Ex. A.) In that letter DCML stated: "*We support the Board's decision to recommend shareholder approval of the sale of [DOIC].* However, we believe the Independent Committee . . . has seriously erred in (1) recommending that the Company enter liquidation subsequent to such sale; (2) *conditioning sale of DOIC upon shareholder approval of liquidation*, and (3) negotiating a distribution of sale proceeds in liquidation that would leave ordinary shareholders [including ADS shareholders] with a pittance. . . ." (*Id.* (emphasis added).) DCML then presented its version of what ADS shareholders should receive after the sale transaction, which was somewhere between $1.18 and $1.28 per ADS. (*Id.*)

In other words, as of June 9, DCML publicly *supported* the sale of DOIC. DCML contended, however, that the proposed liquidation value of $0.10 per ADS was unfair, and that it

instead should receive a distribution more than ten times that amount, or sufficient to result in returns *in excess of 1000%* on the shares it had acquired over the prior two months.[4] (*Id.*)

On June 16, 2008, DCML sent another rhetoric-laced letter to Danka and its shareholders. (*See* Hogan Decl. Ex. 2.) DCML also succeeded in encouraging other ordinary and ADS shareholders to write to Danka about the liquidation proposal. Consequently, on June 18, 2008, Danka issued a press release stating that in response to certain of these concerns, it was amending the terms of the proposed transactions such that the shareholders could approve the proposed sale of DOIC *regardless* of the voting outcome of the proposed liquidation. (*See* Hogan Decl. Ex. 3.) In other words, the Board determined to "de-link" the sale transaction from the liquidation transaction, *precisely as DCML (and other shareholders) had requested*. (*See* Hogan Decl. Ex. 1 at Ex. A.) Danka explained, however, that the economics of the de-linked liquidation transaction remained the same, and that ADS holders would still receive approximately $0.10 per share if the liquidation was approved. Danka filed a Supplemental Proxy the same day that detailed the "de-linking" amendments (which was the only material change to the matter) and which advised that the shareholder vote on both the sale and the liquidation was set for June 27, 2008, with shareholder votes via mail due no later than June 25, 2008. In response DCML wrote to Danka on June 19 and noted that they were "heartened to see" that Danka had de-linked the sale and liquidation transactions, and that they had hoped a new liquidation proposal would have been forthcoming to create a "win win" scenario. (*See* Hogan Decl. Ex. 4.) But, because no economics had been adjusted, DCML continued its tirade against the proposed liquidation transaction. (*Id.*)

---

[4] DCML quotes at length from various of its letters in its First Amended Compliant. DCML failed to disclose, however, the contents of its June 9 letter: DCML obviously hoped to hide from the Court the fact that it was on record as *supporting* the sale transaction, as well as the outlandish profit it hopes to gain from this gambit.

As the June 27 shareholder vote approached, DCML became increasingly desperate to force a change in the economics of the proposed liquidation, and on June 24 wrote a reckless letter to Konica Minolta (the putative purchaser of DOIC) in furtherance of this scheme. (Hogan Decl. Ex. 5.) Describing themselves as "longtime" shareholders of Danka, DCML first noted that "we are thankful for your recognition of DOIC's value, as represented by your acquisition offer." (*Id.*) DCML went on, however, to advise Konica Minolta of the purported unfairness of Danka's liquidation proposal, and how Konica Minolta "might reasonably question whether it wishes to be associated with the activities of [Danka's board] who do not take seriously their fiduciary duties and may be the targets of future shareholder litigation." (*Id.*) Also on June 24, DCML sent yet another railing "public letter" to Danka shareholders regarding the proposed sale and liquidation. (Hogan Decl. Ex. 6.) In this letter, DCML dug in its heels completely and wrote that it was *not* supporting the "decoupling of the sale of DOIC . . . or the voluntary liquidation" and that it planned to call for an extraordinary meeting of the shareholders to replace the Board. (*Id.*) In other words, DCML was now prepared to do anything to force Danka to accede to its liquidation demands.

On June 27, 2008, Danka conducted its shareholder meeting. DCML, despite having publicly supported the sale in its letter filed with the SEC, was now fully committed to a hold-out position. Nevertheless, a majority of shareholders still approved the sale of DOIC to Konica Minolta, and that transaction was consummated the same day. DCML was, however, successful in persuading sufficient shareholders to vote against the liquidation, and so that transaction was not approved, *and is no longer pending*. Notwithstanding that the liquidation transaction was not approved, on the same day DCML filed its initial complaint in this case. DCML issued a press release that announced the filing of the lawsuit, and noting that it "remained steadfast in [its]

belief that ordinary shareholders are entitled to an equitable share of the proceeds from the sale

of DOIC, and that such distribution substantially exceeds the $0.10/ADS previously offered to

shareholders." (Hogan Decl. Ex. 7.) On July 7, 2008, Danka's counsel contacted DCML's

counsel, and requested that the complaint be withdrawn because, among other reasons, the

purportedly offending liquidation plan had been disapproved and no other liquidation or

winding-up transaction has been proposed. (Hogan Decl. ¶ 3.) DCML's counsel refused, and

indicated that they would file an amended complaint.  (*Id.*) On July 10, 2008, DCML's counsel

did so. On July 11, Danka's counsel wrote to plaintiff's counsel and reiterated the demand that

this case be withdrawn. (Hogan Decl. Ex. 8.) On July 16, 2008, DCML expressly refused this

demand. (*Id.* ¶ 4.)

The First Amended Complaint asserts two claims that are objectively baseless and not

colorable, and DCML would not have asserted either cause of action had it conducted a

reasonable inquiry regarding the instant facts. DCML's first claim is that Danka's Proxy

Statement and Supplemental Proxy contained false and misleading statements and thus violated

Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 14a-

(9) promulgated thereunder. At bottom, DCML alleges that Danka and its directors falsely and

misleadingly stated that Danka was in financial peril and that the sale and liquidation plan

represent "the best financial outcome for all stakeholders of the Company" and failed to disclose

financial information about Danka, and the alternatives for Danka other than a liquidation. (FAC

¶¶ 50–56.) DCML's second claim is that Danka and its directors breached their fiduciary duties

of due care, loyalty, and good faith by recommending the sale and liquidation plans and by not

disclosing detailed company financial information to shareholders. (*Id.* at ¶¶ 63–65.) The First

7

Amended Complaint, however, fails to allege a basis for cognizable damages suffered by DCML or other relief in light of the shareholder's disapproval of the liquidation plan.

It is clear that DCML has filed this case as a means to continue its pressure tactics on Danka and to wring more profit out of its ADS shares. Under these circumstances, an award of sanctions under Rule 11 is both appropriate and necessary. *See, e.g.*, *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660-61 (S.D.N.Y. 1996) ("[W]here claims are so far deficient in alleging statutory requirements as in the present case, whether the violation is deliberate or merely the result of extraordinarily shoddy research, the filing warrants the imposition of sanctions.") (internal quotations omitted), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

## ARGUMENT

The guiding principle of Rule 11 is that an attorney or party must "'conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Knipe v. Skinner*, 19 F.3d 72, 75 (2d Cir. 1994) (citation omitted); *see also Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561, 2003 WL 22227956, at *6, *12 (S.D.N.Y. Sept. 26, 2003) (holding that "Rule 11 is explicit and unambiguous in requiring an attorney to examine the legal viability of any assertion in a paper filed with the court"). This rule is intended to prevent and "deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

Rule 11 provides that when an attorney or a party signs a pleading, the attorney or party certifies that to the best of his knowledge or belief, and based on reasonable inquiry:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims . . . and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishment of new law; [and]

(3) the factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

The First Amended Complaint fails on all these grounds. DCML has not pleaded, and has no evidentiary basis to establish, any cognizable harm from Danka's alleged actions, and thus this action is objectively meritless. In addition to lacking a legally cognizable purpose for its claim, the circumstances here make clear that DCML filed this action for the improper purpose of harassing Danka and the other defendants, as leverage in its negotiations. DCML, therefore, violated Rule 11 by filing the First Amended Complaint and sanctions are warranted to deter future conduct of this nature.

## I.     DCML VIOLATED RULE 11 IN FILING THE FIRST AMENDED COMPLAINT BECAUSE DCML'S CLAIMS ARE LEGALLY BASELESS AND LACK FACTUAL SUPPORT.

### A.     Legal Standard

"[T]he standard for triggering the award of fees under Rule 11 is objective unreasonableness." *Margo v. Weiss*, 213 F.3d 55, 65 (2d Cir. 2000). Consequently, even if a plaintiff did not bring its claims for an improper purpose—which in this case DCML clearly did—it still would not be immune from Rule 11 sanctions. *See* Fed. R. Civ. P. 11 advisory committee's notes (stating that Rule 11 "eliminate[s] any 'empty-head pure-heart' justification for patently frivolous arguments"). Indeed, if even one of DCML's claims is frivolous, DCML would face sanctions whether or not other meritorious claims were also included in its complaint. *See Cross & Cross Props., Ltd. v. Everett Allied Co.*, 886 F.2d 497, 504 (2d Cir. 1989) ("[T]o adopt a standard that would deny sanctions for a significant and obviously meritless claim simply because the rest of the pleading was sound strikes us as contrary to this court's established

9

reading of Rule 11."). A fortiori, where, as here, all of DCML's claims are frivolous, sanctions
are compelled.

Sanctions are warranted when "'under an objective standard of reasonableness, it is
clear . . . that there is no chance of success and no reasonable argument to extend, modify or
reverse the law as it stands.'" *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)
(alteration in original) (citation omitted). *See also Cohen v. Bane*, 853 F. Supp. 620, 629
(E.D.N.Y. 1994) ("[W]here it is clear that a party's attorney should have known that there was
absolutely no possibility of prevailing on the merits given the precedent against the claims,
sanctions are necessary to deter such counsel from wasting the time and resources of the
adversaries as well as of the court."); *Reichmann v. Neumann*, No. 04 Civ. 09485, 2008 WL
1830508, at *12 (S.D.N.Y. Apr. 22, 2008) (granting a Rule 11 motion because the claim was
"uncolorable" and "[n]o reasonable attorney . . . would have brought or maintained [it]").

**B.     DCML's Claims Are Objectively Baseless**

Neither DCML's securities claim nor its breach of fiduciary duty claim is warranted by
existing law and it is apparent that DCML cannot prove a set of facts to support its allegations
and factual contentions. Significantly, DCML has suffered no harm as a result of the bad acts
allegedly committed by Danka and the other defendants. For the reasons discussed below,
sanctions are warranted.

Section 14(a) prevents "management or others from obtaining authorization for corporate
action by means of deceptive or inadequate disclosure in proxy solicitation." *Galef v. Alexander*,
615 F.2d 51, 63 (2d Cir. 1980). To state a claim under Section 14(a), a plaintiff must allege that:
"(1) a proxy statement contained a material misrepresentation or omission, which (2) caused
plaintiffs injury, and (3) that the proxy solicitation itself, rather than the particular defect in the

solicitation materials, was an essential link in the *accomplishment* of the transaction." *See Bond Opportunity Fund v. Unilab Corp.,* No. 99 Civ. 11074, 2003 WL 21058251, at *3 (S.D.N.Y. May 9, 2003) (emphasis added) (internal quotation marks added), *aff'd,* 87 Fed. Appx. 772 (2d Cir. 2004); *see also Cal. Pub. Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004) (*citing Gen. Elec. Co. v. Cathcart,* 980 F.2d 927, 932 (3d Cir. 1992) (*citing Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970))); *Tannenbaum v. Zeller*, 71 Civ. 2104, 1979 WL 1232, at *3 (S.D.N.Y. July 26, 1979) (holding that, to bring a cause of action under Section 14(a), a plaintiff must allege some loss or injury resulting from the false and misleading statements or some injury directly linked to a transaction authorized by the corporate electorate in the partial light of a misleading proxy solicitation).

It is well established that a Section 14(a) action based on an alleged material misrepresentation or omission in proxy materials can be sustained *only when the transaction that was the subject of the proxy materials caused plaintiff injury. See, e.g., Heil v. Lebow*, No. 91 Civ. 8656 (JFK), 1993 WL 15032, at *3 (S.D.N.Y. Jan. 13, 1993); *Rediker v. Geon Indus., Inc.,* 464 F. Supp. 73, 81 (S.D.N.Y. 1978); *Markewich v. Adikes,* 422 F. Supp. 1144, 1146 (E.D.N.Y. 1976); *see also Mills*, 396 U.S. at 385 (holding that the causation requirement is established where the challenged proxy statement was "an essential link in the *accomplishment* of the transaction") (emphasis added). A Section 14(a) claim cannot lie where the transaction at issue was not consummated because, under those circumstances, the plaintiff cannot establish the requisite injury. *See Heil*, 1993 WL 15032, at *3; *Rediker*, 464 F. Supp at 82 ("The . . . deal was never consummated. Thus any alleged misstatements or omissions in the proxy statement could not have injured plaintiff in her rights of corporate suffrage. The requisite 'loss causation' component of a Section 14(a) claim, is therefore, absent.").

11

In this case, DCML's Section 14(a) claim fails because the liquidation plan was not consummated. Because Danka's shareholders voted to not adopt the liquidation plan, DCML cannot establish any injury in connection with alleged material misstatements or omissions made in Danka's proxy materials. Further, although the sale of DOIC was approved, nowhere in the First Amended Complaint does DCML contend that the *accomplishment of the sale of DOIC* caused injury to it. Indeed, given DCML's public support for the sale transaction, such an allegation would, itself, constitute a violation of Rule 11 because it would be patently false. Thus, the essential link between the alleged misstatements or omissions and the accomplishment of a transaction *that caused DCML harm* is missing. *See Rediker*, 464 F. Supp. at 81.

DCML's breach of fiduciary duty claim fails for the same reason—DCML has not, and cannot, allege damages as a result of any alleged misconduct by Danka or the other defendants. DCML simply cannot avoid the fact that the liquidation plan was defeated and DCML therefore suffered no harm, or that the First Amended Complaint does not (and cannot) contain any allegation that the accomplishment of the sale of DOIC caused it injury.

Unable to allege any actual injury, DCML speculates as to injuries that might arise from unspecified potential future events. For example, DCML alleges that "any [future] attempt at an involuntary liquidation would be improper" (FAC ¶ 53), and that Danka has failed to "disclose the information necessary to allow a holder of ordinary shares to assess the options available to them now that [the liquidation] is no longer a viable alternative" (*id.* ¶ 50; *see also id.* ¶ 45 ("To the extent that defendants consider any other alternative, including an involuntary liquidation, to be viable, then the requirements and details of any such alternative and treatment of ordinary shares therein must be disclosed."); *id.* ¶ 47 ( "Plaintiff needs this information to allow it to assess the alternatives currently available to holders of ADSs now that the asset sale has been

effectuated."); *id.* ¶65 ("Defendants *may take steps* to distribute the sale proceeds in a manner, such as improper involuntary liquidation, that will exclude plaintiff from its fair share of the proceeds from the proposed sale transaction.") (emphasis added).) To be sure, there is no involuntary liquidation proposed by Danka's board or pending for shareholder vote, nor is there any other transaction pending for which Danka has solicited proxies under Rule 14a-9. Alleged prospective harm from hypothetical future events is not, of course, a proper basis for a lawsuit.[5] *See Brunson v. Clark*, No. 94 Civ. 9256, 1996 WL 559965, at *3 (S.D.N.Y. Oct. 1, 1996) (declining to exercise jurisdiction based on "purely hypothetical risk that they will, at some unspecified future time, suffer the same alleged [injury]"); *cf. Summit Investors II v. Sechrist Indus. Inc.*, No. Civ. A. 19400, 2002 WL 31260989, at *6 (Del. Ch. Sept. 20, 2002) (noting, in the context of the duty to disclose, that a director's "fiduciary duties do not extend to speculation concerning future events").

## II.    DCML VIOLATED RULE 11 BECAUSE THE FIRST AMENDED COMPLAINT WAS FILED FOR AN IMPROPER PURPOSE.

In addition to asserting entirely frivolous claims, as demonstrated *supra*, DCML violated Rule 11 because it filed the First Amended Complaint for a wholly improper purpose—solely as a means to gain leverage against Danka's preferred shareholders and board of directors to pressure them to allocate a greater portion of the sale proceeds to DCML.

Sanctions under Rule 11 are warranted when a complaint is filed for an improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed. R. Civ. P. 11(b)(1). Courts take an expansive view of the motives that constitute an improper

---

[5] To the extent that DCML purports to complain about the fact that the Danka's proxy materials have not been updated with additional information *since* the shareholder vote on the sale and liquidation, or that the Danka and the other defendants are somehow engaged in some form of a *continuing* breach of fiduciary duty, such claims are frivolous. Indeed, as discussed the caselaw is to the contrary.

purpose under Rule 11(b)(1). *See e.g., Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2d Cir. 1995)

(affirming award of sanctions for the filing of frivolous claims that were "clearly an attempt to

intimidate the defendant into a large settlement . . . which . . . was an improper purpose under

Rule 11(b)(1)"); *Thomason v. Norman E. Lehrer P.C.*, 182 F.R.D. 121, 130 (D.N.J. 1998)

(imposing sanctions pursuant to Rule 11 because the plaintiff's filing of a separate state court

action "represents nothing more than a diversionary litigation tactic"); *Baasch v. Reyer*, 827 F.

Supp. 940, 944 (E.D.N.Y. 1993) (imposing sanctions on *pro se* litigant who filed frivolous

motion "for the sole purpose of harassing defendants and needlessly increasing the costs of this

litigation"). *See also Bello v. Barden Corp.*, No. 3:01 cv 01531, 2006 WL 2827091, at *10 (D.

Conn. Sept. 29, 2006) (holding that sanctions were warranted where plaintiff commenced action

"as . . . a course of conduct calculated to harass defendants  . . . into settlement for the nuisance

value of the litigation . . . ." (*citing United States v. Int'l Bhd. Of Teamsters*, 948 F.2d 1338. 1345

(2d Cir. 1991) (holding that under its inherent power a court may sanction a party  that "acted in

bad faith, vexatiously, wantonly, or for oppressive reasons")). Further, the objective

unreasonableness of a litigant's claims as a legal matter strongly supports a conclusion that they

were filed for an improper purpose. *See Knipe v. Skinner*, 19 F.3d 72, 77 (2d Cir. 1994) (holding

that the lack of merit to the action supported the record that the plaintiff was "pursuing a

personal agenda against the [defendants]"); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D.

649, 661 (S.D.N.Y. 1996) (holding that legal baselessness of claims supported inference that

action was "filed for improper purposes"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

      The history of DCML's conduct make its motivations obvious—DCML is maintaining

this lawsuit solely as a component to the pressure campaign it is waging against Danka's board

as Danka determines its next course of action. Moreover, the frivolity of this action strongly

14

supports the conclusion that DCML filed this suit for an improper purpose. Indeed, given that the liquidation plan was voted down (at DCML's urging), and thus DCML has not been harmed and cannot maintain claims capable of redress, it is objectively apparent that DCML is maintaining this lawsuit for an extra-judicial purpose. *See Knipe*, 19 F.3d at 77; *Katzman*, 167 F.R.D. at 661.

## III.    THE APPROPRIATE SANCTION IS TERMINATION OF THIS ACTION AND AN AWARD OF DANKA'S COSTS AND ATTORNEYS' FEES.

It is appropriate that this Court dismiss this lawsuit as a sanction for DCML's Rule 11 violations. *See Abdelhamid v. Altria Group Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007). Even if DCML is ordered to withdraw this lawsuit, however, the need to deter future similar conduct strongly favors imposition of monetary sanctions as well. Under Fed. R. Civ. P. 11, this Court "has available a variety of possible sanctions to impose for violations," and "[w]hether a violation has occurred and what sanctions, if any, to impose for a violation are matters committed to the discretion of the trial court; accordingly . . . the standard for appellate review of these decisions will be for abuse of discretion." *Id.* advisory committee's notes (1993). Where "deterrence may be ineffective unless the sanction not only requires the person violating the rule to make a monetary payment, but also directs that some or all of this payment be made to those injured by the violation," attorneys' fees may be awarded to the other party. *Katzman*, 167 F.R.D. at 661 (awarding defendants a portion of their legal fees when plaintiff asserted claims with "flagrant lack of merit").

In this case, Danka respectfully submits that this Court should impose on DCML the full extent of Rule 11 sanctions. Because DCML's improper pleading has caused Danka to incur substantial legal fees, Danka respectfully requests that those sanctions include the reasonable expenses and attorneys' fees it has incurred in bringing this motion, as well as the reasonable

15

attorneys' fees and other expenses incurred by Danka as a result of this lawsuit. *See* Fed. R. Civ.

P. 11(c)(1)–(2).[6]

## CONCLUSION

For all the foregoing reasons, this Court should enter an order imposing sanctions under

Rule 11 against DCML including all of Danka's reasonable costs and attorneys' fees in

connection with this matter, and ordering the dismissal of this action with prejudice.

Dated: New York, New York
        August 22, 2008

                                        Respectfully submitted

                                         /s/ Scott D. Musoff
                                        Scott D. Musoff (scott.musoff@skadden.com)
                                        Beverly A. Farrell (beverly.farrell@skadden.com)
Of Counsel:                             SKADDEN, ARPS, SLATE,
Albert L. Hogan, III                      MEAGHER & FLOM LLP
SKADDEN, ARPS, SLATE,                   Four Times Square
  MEAGHER & FLOM LLP                    New York, New York 10036
333 West Wacker Drive                   Tel.: (212) 735-3000
Chicago, Illinois 60606                 Fax: (212) 735-2000
Tel.: (312) 407-0700
Fax: (312) 407-041

                                        Attorneys for Defendant Danka Business
                                          Systems PLC

---

[6] An award of attorneys' fees is an especially appropriate sanction for DCML's Rule 11 violations because DCML's Section 14(a) is subject to the sanctions provisions of the PSLRA. The PSLRA mandates that, upon final adjudication of an action brought under the federal securities laws, a court "include in the record specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)." 15 U.S.C. § 78u-4(c)(1); *accord Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 15 (S.D.N.Y. 2000). Under the PSLRA, the presumptive sanction for a substantial violation of Rule 11 is an "award to the opposing party of the reasonable attorneys' fees and other expenses incurred in the action." 15 U.S.C. § 78u-4(c)(3)(A)(ii).