SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Scott D. Musoff
Beverly A. Farrell
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Fax: (212) 735-2000

Attorneys for Defendant Danka Business
  Systems PLC

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DCML LLC

                            :

               Plaintiff,                      08 cv 5829 (SAS)

                            :

         v.                          **ECF Case**

                            :

DANKA BUSINESS SYSTEMS PLC, A.D.      **Electronically Filed**
FRAZIER, W. ANDREW MCKENNA, DR. KEVIN :
C. DALY, JAIME W. ELLERTSON,
CHRISTOPHER B. HARNED, J. ERNEST     :
RIDDLE, ERIK VONK, DAVID DOWNES,
JOSEPH E. PARZICK, and CYPRESS MERCHANT:
BANKING PARTNERS II LP

                            :

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF ALBERT L. HOGAN, III IN SUPPORT**
**OF THE MOTION OF DANKA BUSINESS SYSTEMS PLC**
**<u>FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11</u>**

I, Albert L. Hogan, III, declare as follows:

1.    I am a member of the bar of the state of Illinois and the firm Skadden, Arps, Slate, Meagher & Flom LLP, attorneys for defendant Danka Business Systems PLC ("Danka") in the above-captioned action.

2.    I make this declaration in connection with Danka's motion for sanctions against plaintiff DCML LLC ("DCML") pursuant to Fed. R. Civ. P. 11 and to transmit to the Court what I am informed and believe are true and correct copies of the following documents:

| | |
|---|---|
| Exhibit 1 | DCML Schedule 13D, dated June 9, 2008 |
| Exhibit 2 | DCML press release, "DCML LLC Issues Open Letter to Shareholders of Danka Business Services PLC," dated June 16, 2008 |
| Exhibit 3 | Danka supplement to proxy statement, dated June 18, 2008 |
| Exhibit 4 | DCML press release, "DCML LLC Files a Letter to Danka Business Services PLC Shareholders Regarding Recent Events Around the Anticipated Sale of Danka Office Imaging Company to Konica Minolta," dated June 19, 2008 |
| Exhibit 5 | DCML press release, "DCML LLC files letter to Konica Minolta re Danka office imaging," dated June 24, 2008 |
| Exhibit 6 | DCML press release, "DCML LLC Files an Open Letter to Danka Shareholders Regarding New Events Surrounding the Anticipated Sale of Danka Office Imaging Company, a subsidiary of Danka Business Services PLC to Konica Minolta," dated June 24, 2008 |
| Exhibit 7 | DCML press release, "DCML LLC Files an Open letter to Danka Shareholders Applauding their Rejection of the Voluntary Liquidation of Danka Business Systems PLC," dated June 27, 2008 |
| Exhibit 8 | Letter from Albert L. Hogan, III to Arthur N. Abbey, dated July 11, 2008 |

3.    On July 7, 2008, I contacted DCML's counsel via telephone. I requested that the complaint be withdrawn because, among other reasons, the purportedly offending liquidation

plan had been disapproved and no other liquidation or winding-up transaction has been proposed. DCML's counsel refused, and indicated that they would file an amended complaint.

    4.      On July 11, 2008, I wrote to DCML's counsel to reiterate the demand that this case be withdrawn. On July 16, 2008, DCML's counsel responded via letter, communicating their refusal to dismiss the complaint.

        I declare under penalty of perjury that the foregoing is true and correct. Executed on August 21, 2008

_____
ALBERT L. HOGAN, III

# EXHIBIT 1

SC 13D 1 eps3008.htm DCML LLC

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

**SCHEDULE 13D**
Under the Securities Exchange Act of 1934

Danka Business Systems PLC
(Name of Issuer)

Ordinary Shares, 1.25 Pence Par Value
(Title of Class of Securities)

236277109
(CUSIP Number)

595 Madison Avenue, 17th Floor
New York, NY  10022

212-332-3342
(Name, Address and Telephone Number of Person
Authorized to Receive Notices and Communications)

June 5, 2008
(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of §§240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box ☐

Check the following box if a fee is being paid with this statement ☐

☐ Rule 13d-1(b)

☐ Rule 13d-1(c)

☐ Rule 13d-1(d)

1

CUSIP No. 236277109

1.  Name of Reporting Persons:   DCML LLC

2.  Check the Appropriate Box If a Member of a Group
                                        N/A
3.  SEC Use Only

4.  Source of Funds:   WC

5.  Check If Disclosure of Legal Proceedings Is Required Pursuant to Items 2(d) or 2(e) ☐

6.  Citizenship or Place of Organization:  United States

Number of Shares Beneficially Owned by Each Reporting Person With

| | |
|---|---|
| 7.  Sole Voting Power | 20,951,080* |
| 8.  Shared Voting Power | 0 |
| 9.  Sole Dispositive Power | 20,951,080* |
| 10.  Shared Dispositive Power | 0 |
| 11.  Aggregate Amount Beneficially Owned by Each Reporting Person | 20,951,080* |
| 12.  Check If the Aggregate Amount in Row 11 Excludes Certain Shares | |
| 13.  Percent of Class Represented by Amount in Row 11 | 8.1% |
| 14.  Type of Reporting Person | OO |

* Includes four (4) Ordinary Shares represented by each American Depositary Share.

**Item 1.  Security and Issuer**

| | | |
|---|---|---|
| Title: | Ordinary Shares, 1.25 Pence Par Value][American Depositary Shares] | |
| Issuer: | Danka Business Systems PLC (the "Issuer") | |
| Address: | 11101 Roosevelt Blvd. | Masters House |
| | St. Petersburg, FL  33716 | 107 Hammersmith Road |
| | | London, W14 0QH, United Kingdom |

**Item 2.  Identity and Background**

(a)      The name of the reporting person filing this Schedule 13D is DCML LLC.

(b)      DCML LLC's address is: 595 Madison Avenue, 17th Floor, New York, NY  10022.

(c)      DCML LLC is a limited liability company formed on June 5, 2008 by Robert Andrade and Rostislav Raykov to jointly hold and vote their shares of Ordinary Shares of the Issuer.  Mr. Andrade and Mr. Raykov principal occupation is investment management.

(d)      During the last five years neither Mr. Andrade nor Mr. Raykov has been convicted in a criminal proceeding (excluding traffic violations or similar misdemeanors).

(e)        During the last five years neither Mr. Andrade nor Mr. Raykov was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of which he was or is subject to a judgment, decree or final order enjoining future violations of, or prohibiting or mandating activities subject to, federal or state securities laws, or finding any violation with respect to such laws.

(f)        DCML LLC is organized under the laws of the State of Delaware, United States.  Both Mr. Andrade and Mr. Raykov are citizens of the United States.

## Item 3. Source and Amount of Funds or Other Consideration

The net investment cost of Ordinary Shares held by DCML LLC is $527,212.

## Item 4. Purpose of Transaction

On June 9, 2008, DCML LLC sent a letter to the Issuer's Independent Committee of Board of Directors indicating its intent to vote against the proposed voluntary liquidation of the Company.  A copy of this letter is attached hereto as Exhibit A.

The Reporting Persons reserve the right to further discuss and/or meet with management, the Board of Directors of the Issuer, potential acquirers, financing sources and other shareholders and/or formulate plans or proposals regarding the Issuer or its securities.

Depending upon market conditions and other factors that it may deem material, DCML LLC may purchase additional Ordinary Shares and/or related securities or may dispose of all or a portion of the Ordinary Shares or related securities that it now beneficially owns or may hereafter.

## Item 5. Interest in Securities of the Issuer

(a)        As of the date hereof, DCML LLC beneficially owns 20,951,080 Ordinary Shares of the Issuer, or approximately 8.1%, of the outstanding Ordinary Shares.

(b)        DCML LLC has sole voting and dispositive power with respect to the 20,951,080 Ordinary Shares.

(c)        The transactions effected by the Reporting Persons during the past sixty (60) days are set forth on Exhibit B attached hereto.  No other transactions with respect to the Ordinary Shares that are required to be reported on Schedule 13D were effected by any of the Reporting Persons during the past sixty (60) days.

(d)        Not applicable.

(e)        Not applicable.

## Item 6. Contract, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer

Not applicable

## Item 7. Materials to Be Filed as Exhibits

Exhibit A – Letter to the Issuer dated June 9, 2008.
Exhibit B – Transactions in the Issuer's securities by the Reporting Persons in the last sixty days.

3

**SIGNATURE**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.


Date: June 9, 2008                    By:  */s/   Robert Andrade*
                                          Name: Robert Andrade
                                          Title:   Managing Member


**Attention: Intentional misstatements or omissions of fact constitute Federal criminal violations (See 18 U.S.C, 1001)**


4

EXHIBIT A

DCML LLC
595 Madison Avenue
17th floor
New York, NY 10020
(212) 332-3342

June 09, 2008

The Board of Directors
c/o Danka Business Systems PLC
Masters House, 107 Hammersmith Road                  11101 Roosevelt Blvd
London W14 0QH England                               St. Petersburg, FL 33716

Dear Members of the Independent Committee of the Board of Directors:

We write on behalf of DCML LLC, and certain related entities that own, in the aggregate, approximately 6% of
the common stock of Danka Business Systems PLC (the "Company") on a fully diluted basis.

We support the Board's decision to recommend shareholder approval of the sale of Danka Office Imaging
Company ("DOIC") to Konica Minolta ("KOM").   However, we believe the Independent Committee (the
"Committee") has seriously erred in (1) recommending that the Company enter liquidation subsequent to such
sale; (2) conditioning sale of DOIC upon shareholder approval of liquidation, and (3) negotiating a distribution of
sale proceeds in liquidation that would leave ordinary shareholders with a pittance – $6.5 million ($0.025 per
ordinary share, or $0.10 per American Depository Share), while holders of participating shares (the "Cypress
shareholders") would receive substantially in excess of $100 million.

The proposed distribution to ordinary shareholders is grossly unfair, and we strongly believe that the Company
could have pursued – and going forward must pursue – alternative options for executing the sale of DOIC to
KOM while ensuring that the value derived from such sale is shared more equitably among *all* of the company's
shareholders.  The Committee's failure to do so raises serious questions about the exercise of its fiduciary duties.

In the Company's proxy filing, the Board has implied that the proposals presented – calling for a voluntary
liquidation which disproportionately benefits the Cypress shareholders (as well as company management and its
bankers and lawyers) – is the only realistic option available following the sale of DOIC to KOM.  It is repeatedly
suggested that the failure to approve the proposed transactions, exactly as presented, will likely place the
company in irreversible fiscal peril.  We believe that any such implication regarding the Company's fiscal
soundness is factually incorrect, a biased gloss on the circumstances, designed to elicit shareholder votes in favor
of the Board's proposals.

Ultimately, the Board's core justification for granting Cypress shareholders more than 17x the distribution that will be given to ordinary shareholders is that the Cypress shareholders' liquidation preference compels this outcome in a voluntary liquidation. But this merely begs the question of why the company necessarily must be liquidated following the sale of DOIC. Nowhere has the Board seriously attempted to explain this very convenient logical leap. In the absence of liquidation, the Cypress shareholders are minority shareholders and as an equitable matter should be treated as such.

1. Equitable Distribution Analysis

On December 17, 1999, the Company issued 218,000 6.50% participating shares, for $218 million, to the Cypress shareholders. Today these shares have accrued to approximately $372 million in value. The participating shares held by Cypress are equity securities for purposes of English law and represent equity for purposes of U.K. GAAP.(1)

In the event of a change of control, the participating shareholders may demand redemption of their shares. If the Company does not have sufficient distributable profits to redeem the participating shares in cash, it must use its best efforts to complete a fresh issuance of shares, which in our opinion is highly unlikely to be successful at the current market value of the ordinary shares. As an alternative to cash redemption of the participating shares at the "as converted " ordinary share value, the Company may elect instead to convert the participating shares into ordinary shares at a conversion price of $3.11 per ordinary share, or $12.44 per ADS (2).

Notably, if the Company were to convert the participating shares into ordinary shares, participating shareholders would receive approximately 120,851,920 ordinary shares, representing 32% of the total shares outstanding. (3) And if the proceeds from the sale of DOIC were to be distributed (after paying off the Company's debt) after such conversion, ordinary shareholders would receive 68% of the proceeds, and Cypress shareholders, then holding ordinary shares, would receive 32% of the proceeds. Consistent with this analysis, we summarize in the table below what we believe is a fair and equitable distribution to all shareholders.

($ in millions, except per share)

| Liquidation Analysis 12/31/2007 (4) | Best Case | Worst Case |
|---|---|---|
| Konica Minolta Proceeds | $250 | $240 |
| Add: Current Assets at Danka | $25 | $25 |
| Less: Current Liabilities at Danka | $8 | $8 |
| Less: GE debt repayment | $122 | $122 |
| Less: Inv. Banking & Legal Fees | $14 | $14 |
| Less: Mr. Frazier Payment | $4 | $4 |
| Less: Management Payment | $5 | $5 |
| Net Asset Value | $122 | $112 |
| Ordinary share distribution | $83 | $76 |
| Participating share distribution | $39 | $36 |
| $ per ADS share | **$1.28** | **$1.18** |
| $ per participating share | **$1.28** | **$1.18** |

The distribution detailed above sharply contrasts with what the Board has proposed and the Committee has endorsed – namely paying Cypress in the best case $115 million or 3.80 per ADS or in the worst case $105 million or $3.48 per ADS, after making payment to the ordinary and ADS shares of less than $7 million ($0.10 per ADS). Interestingly, and for purposes of comparison, it is worth noting that Company management will receive cash benefits resulting from the proposed transaction that are substantially greater than the entire distribution being made to ordinary shareholders.

We recognize that the proposed outcome, and its remarkable deviation from the analysis above, is a function of the Board's decision to liquidate the company; in liquidation, the participating shareholders merit a distribution preference. But as we previously noted, the Board has failed entirely to explain why liquidation is required in these circumstances, especially given the harsh, anti-ordinary shareholder outcome that results in liquidation.

It is also hard to understand why, before endorsing this outcome, the Board did not secure a fairness opinion from its financial advisor that a distribution of less than $7 million to ordinary and ADS shares is fair and reasonable. In a thorough and diligent process, the Board would have obtained such an opinion.

2. The Company's Financial Condition

The upshot of the Board's proxy argument is that the Company is in financial peril, and only the proposed transaction – only the transaction at issue, and none other – can somehow save it. As an initial matter, it is difficult to take seriously this argument when the Company hasn't filed financial statements since December 31, 2007. As shareholders we do not accept – and we should not be asked to accept – the Board's contentions and innuendo regarding Company finances until and unless we are presented with up-to-date financials.

Second, and equally important, in our view the Company's potential liquidity difficulties can be negotiated and surmounted. Given our understanding of the working capital dynamics affecting the Company's business, and its credit facilities, we believe that the proxy has not accurately portrayed the universe of options available to the Company short of bankruptcy or liquidation. Simply put, the Company should be able to meet its obligations under its GE credit line through the use of conventional financial management strategies; these obligations are in no way justification for liquidation.

In conclusion, we are not opposed to the sale of DOIC to KOM at the proposed price.  It is clear however that the Board has failed its majority shareholders in negotiating the Cypress transaction.  For the reasons detailed above, we have concluded that we cannot support the voluntary liquidation of the Company and intend to vote against it.  We are hopeful that a voluntary liquidation will not occur and are considering all of the options available to us, including soliciting proxies in the upcoming annual meeting in August.

Finally, we wish to note as shareholders our appreciation of the great work the Company's employees have done and continue to do in operating the business.


Sincerely,

/s/ Robert Andrade                              /s/ Rosty Raykov

Robert Andrade                                  Rosty Raykov
Portfolio Manager                               Portfolio Manager

---

(1)  From page 8, based on the November 24, 1999 Proxy Statement.
(2)  From page 14, based on the November 24, 1999 Proxy Statement.
(3)  From page vi, based on the May 30, 2008 Proxy Statement.
(4)  From page H-24, based on the May 30, 2008 Proxy Statement.

EXHIBIT B

Exhibit B -  Transactions by DCML LLC in the American Depositary Shares ("ADSs).

Each ADS represents four Ordinary Shares.

| Date of Transaction | Number of Shares Purchased/(Sold) | Price per Share |
|---|---|---|
| April 9, 2008 | 25,000 | $0.08 |
| April 9, 2008 | 25,000 | $0.085 |
| April 9, 2008 | 5,000 | $0.0875 |
| April 9, 2008 | 25,000 | $0.089 |
| April 9, 2008 | 1,275 | $0.089 |
| April 9, 2008 | 2,900 | $0.0895 |
| April 9, 2008 | 22,300 | $0.087 |
| April 9, 2008 | 5,000 | $0.08 |
| April 9, 2008 | 1,500 | $0.0825 |
| April 9, 2008 | 17,025 | $0.085 |
| April 9, 2008 | 50,000 | $0.085 |
| April 9, 2008 | 1,600 | $0.085 |
| April 9, 2008 | 48,400 | $0.079 |
| April 10, 2008 | 46,556 | $0.09 |
| April 10, 2008 | 13,360 | $0.0875 |
| April 10, 2008 | 100,000 | $0.0855 |
| April 10, 2008 | 20,000 | $0.085 |
| April 10, 2008 | 20,084 | $0.084 |
| April 10, 2008 | 36,567 | $0.084 |
| April 10, 2008 | 55,000 | $0.0845 |
| April 10, 2008 | 8,433 | $0.085 |
| April 10, 2008 | 36,000 | $0.08 |
| April 10, 2008 | 100,000 | $0.085 |
| April 10, 2008 | 100,000 | $0.085 |
| April 10, 2008 | 10,000 | $0.0822 |
| April 11, 2008 | 50,000 | $0.08 |
| April 11, 2008 | 100 | $0.085 |
| April 11, 2008 | 35,000 | $0.0825 |
| April 11, 2008 | 5,000 | $0.083 |
| April 11, 2008 | 9,900 | $0.082 |
| April 14, 2008 | 60,000 | $0.08 |
| April 14, 2008 | 97,579 | $0.083 |
| April 14, 2008 | 2,421 | $0.082 |
| April 14, 2008 | 10,000 | $0.083 |
| April 14, 2008 | 10,000 | $0.083 |
| April 14, 2008 | 7,500 | $0.084 |
| April 14, 2008 | 6,300 | $0.084 |
| April 14, 2008 | 2,500 | $0.083 |

| Date of Transaction | Number of Shares Purchased/(Sold) | Price per Share |
|---|---|---|
| April 14, 2008 | 3,700 | $0.083 |
| April 15, 2008 | 50,000 | $0.083 |
| April 16, 2008 | 10,000 | $0.0872 |
| April 16, 2008 | 20,000 | $0.085 |
| April 16, 2008 | 40,000 | $0.075 |
| April 16, 2008 | 50,000 | $0.085 |
| April 16, 2008 | 5,000 | $0.083 |
| April 16, 2008 | 10,000 | $0.0824 |
| April 16, 2008 | 3,000 | $0.085 |
| April 16, 2008 | 22,000 | $0.0825 |
| April 16, 2008 | 50,000 | $0.081 |
| April 17, 2008 | 896 | $0.0875 |
| April 17, 2008 | 20,000 | $0.082 |
| April 17, 2008 | 300 | $0.082 |
| April 18, 2008 | 5,000 | $0.083 |
| April 18, 2008 | 5,000 | $0.083 |
| April 18, 2008 | 7,671 | $0.082 |
| April 18, 2008 | 10,001 | $0.0825 |
| April 18, 2008 | 1,000 | $0.082 |
| April 18, 2008 | 385 | $0.082 |
| April 21, 2008 | 3,000 | $0.0785 |
| April 21, 2008 | 18,000 | $0.082 |
| April 21, 2008 | 25,000 | $0.083 |
| April 21, 2008 | 10,000 | $0.084 |
| April 21, 2008 | 5,937 | $0.083 |
| April 21, 2008 | 48,705 | $0.083 |
| April 21, 2008 | 350 | $0.083 |
| April 21, 2008 | 40,000 | $0.083 |
| April 21, 2008 | 12,401 | $0.083 |
| April 21, 2008 | 5,000 | $0.084 |
| April 21, 2008 | 5,000 | $0.084 |
| April 21, 2008 | 5,000 | $0.084 |
| April 21, 2008 | 3,000 | $0.084 |
| April 21, 2008 | 20,999 | $0.084 |
| April 21, 2008 | 50,000 | $0.084 |
| April 21, 2008 | 17,650 | $0.084 |
| April 22, 2008 | 24,361 | $0.084 |
| April 22, 2008 | 25,000 | $0.084 |
| April 22, 2008 | 10,000 | $0.079 |
| April 22, 2008 | 900 | $0.082 |
| April 22, 2008 | 100,000 | $0.081 |
| April 22, 2008 | 25,000 | $0.08 |
| April 22, 2008 | 25,000 | $0.079 |

| Date of Transaction | Number of Shares Purchased/(Sold) | Price per Share |
|---|---|---|
| April 22, 2008 | 25,000 | $0.079 |
| April 23, 2008 | 1,500 | $0.078 |
| April 23, 2008 | 500 | $0.08 |
| April 23, 2008 | 5,000 | $0.079 |
| April 23, 2008 | 10,000 | $0.08 |
| April 23, 2008 | 11,714 | $0.08 |
| April 24, 2008 | 243 | $0.08 |
| April 24, 2008 | 10,000 | $0.084 |
| April 24, 2008 | 20,000 | $0.085 |
| April 24, 2008 | 10,000 | $0.082 |
| April 24, 2008 | 8,000 | $0.083 |
| April 24, 2008 | 6,000 | $0.083 |
| April 24, 2008 | 21,744 | $0.085 |
| April 24, 2008 | 113 | $0.085 |
| April 25, 2008 | 5,000 | $0.088 |
| April 25, 2008 | 6,500 | $0.087 |
| April 25, 2008 | 1,000 | $0.087 |
| April 25, 2008 | 5,000 | $0.087 |
| April 25, 2008 | 32,500 | $0.087 |
| April 28, 2008 | 150 | $0.088 |
| April 29, 2008 | 150 | $0.088 |
| April 29, 2008 | 5,000 | $0.086 |
| April 29, 2008 | 50,000 | $0.084 |
| April 29, 2008 | 5,028 | $0.084 |
| April 29, 2008 | 12,000 | $0.085 |
| April 29, 2008 | 5,000 | $0.085 |
| April 29, 2008 | 50,000 | $0.085 |
| April 29, 2008 | 5,000 | $0.085 |
| April 29, 2008 | 22,972 | $0.085 |
| April 30, 2008 | 1,453 | $0.087 |
| April 30, 2008 | 703 | $0.083 |
| April 30, 2008 | 4,469 | $0.083 |
| April 30, 2008 | 10,002 | $0.084 |
| May 1, 2008 | 100,000 | $0.085 |
| May 1, 2008 | 69 | $0.085 |
| May 2, 2008 | 2,801 | $0.086 |
| May 6, 2008 | 478 | $0.086 |
| May 7, 2008 | 2,225 | $0.089 |
| May 7, 2008 | 80,000 | $0.089 |
| May 7, 2008 | 13,746 | $0.089 |
| May 12, 2008 | 5,113 | $0.089 |
| May 12, 2008 | 25,007 | $0.089 |
| May 12, 2008 | 24,880 | $0.089 |

| Date of Transaction | Number of Shares Purchased/(Sold) | Price per Share |
|---|---|---|
| May 16, 2008 | 10,678 | $0.089 |
| May 19, 2008 | 5,414 | $0.091 |
| May 19, 2008 | 10,000 | $0.091 |
| May 19, 2008 | 5,000 | $0.091 |
| May 20, 2008 | 2,000 | $0.092 |
| May 20, 2008 | 181 | $0.092 |
| May 20, 2008 | 15,000 | $0.09 |
| May 20, 2008 | 686 | $0.09 |
| May 21, 2008 | 25,000 | $0.09 |
| May 21, 2008 | 1,600 | $0.091 |
| May 21, 2008 | 63,040 | $0.091 |
| May 21, 2008 | 50,000 | $0.09 |
| May 21, 2008 | 37,000 | $0.09 |
| May 21, 2008 | 11,400 | $0.09 |
| May 22, 2008 | 2,000 | $0.094 |
| May 22, 2008 | 100,000 | $0.093 |
| May 22, 2008 | 90,000 | $0.093 |
| May 22, 2008 | 8,000 | $0.093 |
| May 23, 2008 | 1,000 | $0.09375 |
| May 23, 2008 | 5,000 | $0.093 |
| May 23, 2008 | 44,000 | $0.094 |
| May 23, 2008 | 50,000 | $0.094 |
| May 23, 2008 | 12,500 | $0.094 |
| May 27, 2008 | 200 | $0.095 |
| May 28, 2008 | 900 | $0.094 |
| May 29, 2008 | 50,000 | $0.096 |
| May 29, 2008 | 50,500 | $0.096 |
| May 29, 2008 | 19,522 | $0.098 |
| May 29, 2008 | 100,000 | $0.098 |
| May 29, 2008 | 21,295 | $0.095 |
| May 29, 2008 | 75,500 | $0.097 |
| May 29, 2008 | 45,000 | $0.097 |
| May 29, 2008 | 45,000 | $0.097 |
| May 29, 2008 | 24,500 | $0.097 |
| May 29, 2008 | 17,583 | $0.097 |
| May 30, 2008 | 50,000 | $0.099 |
| May 30, 2008 | 100,000 | $0.099 |
| May 30, 2008 | 100,000 | $0.099 |
| May 30, 2008 | 9,970 | $0.098 |
| May 30, 2008 | 100,000 | $0.099 |
| May 30, 2008 | 50,000 | $0.099 |
| May 30, 2008 | 56,000 | $0.099 |
| May 30, 2008 | 24,000 | $0.099 |

| Date of Transaction | Number of Shares Purchased/(Sold) | Price per Share |
|---|---|---|
| May 30, 2008 | 20,030 | $0.099 |
| June 3, 2008 | 100 | $0.0985 |
| June 3, 2008 | 50,000 | $0.115 |
| June 4, 2008 | 40,000 | $0.115 |
| June 4, 2008 | 8,002 | $0.115 |
| June 5, 2008 | 75,000 | $0.112 |
| June 5, 2008 | 500 | $0.112 |
| June 5, 2008 | 74,500 | $0.113 |
| June 5, 2008 | 12,801 | $0.113 |
| June 6, 2008 | 25,000 | $0.10 |
| June 6, 2008 | 5,000 | $0.10 |
| June 6, 2008 | 5,000 | $0.10 |
| June 6, 2008 | 25,000 | $0.10 |
| June 6, 2008 | 20,000 | $0.10 |
| June 6, 2008 | 5,000 | $0.10 |

# EXHIBIT 2

13 of 15 DOCUMENTS

PR Newswire

June 16, 2008 Monday 10:00 AM GMT

# DCML LLC Issues Open Letter to Shareholders of Danka Business Services PLC (OTC BB: DANKY)

**LENGTH:** 519 words

**DATELINE:** NEW YORK June 16

NEW YORK, June 16 /PRNewswire-FirstCall/ -- The following is a letter from **DCML** LLC to shareholders of Danka Business Services PLC(OTC:DANKY)(BULLETIN BOARD: DANKY) .

Fellow Danka Shareholders:

We were disappointed to learn that the Board of Directors (the "Board") of Danka Business Services PLC (the "Company") has taken questionable actions to influence the outcome of the upcoming shareholder vote.

First, the Voting Instructions of the Proxy have specified that the Company's designee is permitted to vote the American Depositary Shares ("ADS") of any holder that does not submit a vote by June 20 (1). We believe it is inappropriate to hijack the voting power of such shares, particularly when the interests of the Company's designee may not be aligned with ordinary shareholders. Excluding Cypress shareholders, the Board collectively holds less than 0.45% of total ordinary shares outstanding (2). In view of that fact, one might question whether the interests of any Company are aligned with the interests of ordinary shareholders in these contested circumstances? Therefore, it is our opinion, that the Company should abstain from voting any otherwise unvoted ADS. Shareholders should be able to decide for themselves whether this transaction is or is not fair to them.

Second, and much more troubling, it appears that the Company has taken steps to prevent the holders of ADS from exercising their voting rights. The final proxy designated an ADS record date of May 30, thus only ADS purchased before that date could be voted at the Extraordinary General Meeting. However, ADS's are typically convertible to ordinary shares in a commonly understood and often utilized administrative process. Further, ordinary shares under the proxy can be acquired and voted up to the meeting date. Thus, under normal circumstances, a shareholder could buy ADS after the record date, convert those shares to ordinary share certificates, and then properly vote them under the terms of the final proxy.

We believe, that to undermine this procedure and prevent shareholders opposed to liquidation from accumulating additional voting shares, the Company has instructed its Transfer Agent, Computershare Services UK, as of June 3, to freeze the issuance of ordinary share certificates until after the Extraordinary General Meeting. We have difficulty understanding why the Company would choose to freeze the issuance of ordinary share certificates. Certainly the timing of this decision makes us believe that either Company management or the Board is inappropriately using their authority to influence the shareholders vote.

We believe that the Board owes its ordinary shareholders a prompt and thorough justification for these recent actions.

DCML LLC Issues Open Letter to Shareholders of Danka Business Services PLC (OTC BB: DANKY) PR Newswire
June 16, 2008 Monday 10:00 AM GMT

As a shareholder representing over 5,300,000 ADS or more than 8.0% of ordinary shares outstanding, **DCML** will be voting against the proposed voluntary liquidation.

We urge you to conduct your own review and cast your own vote.

Respectfully,

Robert Andrade        Rosty Raykov

(1) May 30 Proxy, voting instructions
(2) May 30 Proxy, p.70

CONTACT: **DCML** LLC, +1-212-332-3342

SOURCE **DCML** LLC

**URL:** http://www.prnewswire.com

**LOAD-DATE:** June 17, 2008

**LANGUAGE:** ENGLISH

**PUBLICATION-TYPE:** Newswire

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.

# EXHIBIT 3

DEFA14A 1 ddefa14a.htm DEFINITIVE ADDITIONAL MATERIALS

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
Washington, D.C. 20549

# SCHEDULE 14A

Proxy Statement Pursuant to Section 14(a) of the Securities
Exchange Act of 1934

Filed by the Registrant ☒

Filed by a Party other than the Registrant ☐

Check the appropriate box:

- ☐ Preliminary Proxy Statement
- ☐ Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))
- ☐ Definitive Proxy Statement
- ☒ Definitive Additional Materials
- ☐ Soliciting Materials Pursuant to §240.14a-12

### Danka Business Systems PLC
(Exact Name of Registrant as Specified in Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

- ☐ No fee required.
- ☐ Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

    (1)  Title of each class of securities to which transaction applies:

    (2)  Aggregate number of securities to which transaction applies:

    (3)  Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

    (4)  Proposed maximum aggregate value of transaction:

    (5)  Total fee paid:

Definitive Additional Materials

☐   Fee paid previously with preliminary materials.

☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1)   Amount Previously Paid:

_____

(2)   Form, Schedule or Registration Statement No.:

_____

(3)   Filing Party:

_____

(4)   Date Filed:

_____



DANKA BUSINESS SYSTEMS PLC
Masters House, 107 Hammersmith Road
London W14 0QH England
(Registered in England No. 1101386)

June 18, 2008

Dear Fellow Shareholder:

On or about May 30, 2008, we sent to you a Notice of Extraordinary General Meeting and a proxy statement relating to the extraordinary at 2:00 p.m., London time, at the offices of Skadden, Arps, Slate, Meagher & Flom (UK) LLP, 40 Bank Street, Canary Wharf, London E14 5DS to consider proposals to approve: (i) the stock purchase agreement, dated as of April 8, 2008, as amended, among the Company, Danka Holding e Selling Konica Minolta in a sale of all the Company will be voluntarily wound up; and (iii) other resolutions (described in the Notice of Extraordinary General Meeting) necessary to effect both the sale of the U.S. operations and the Liquidation.

I am writing to advise you of the following important development relating to the upcoming Extraordinary General Meeting: in response to statements by a number of holders of our ordinary shares/American Depositary Shares that they support the sale of DOIC to Konica Minolta but do not support the Liquidation as currently proposed, it is in the best interests of Danka and its shareholders as a whole to no longer condition completion of the sale of DOIC to Konica Minolta upon shareholder approval of the Liquidation.

oxy statement, and the present uncertainty regarding the proposed Liquidation as the vote required to approve the Liquidation is greater than the vote to approve the sale transaction, the board of directors has concluded that completing the sale of DOIC to Konica Minolta in a timely manner is of paramount importance to Danka and its shareholders as a whole, regardless of the outcome of the resolution to approve the Liquidation.

As a result, at the Extraordinary General Meeting, the board of directors will propose an amendment to the resolution to approve the sale of DOIC to Konica Minolta, such that if the resolution relating to the sale transaction is amended and the sale transaction then approved by the affirmative vote of a majority of the votes cast at the Extraordinary General Meeting, the sale of DOIC to Konica Minolta will be consummated. The resolution to approve entry into the Liquidation remains conditioned on approval of the sale transaction and requires the affirmative vote of 75% of the votes cast at the Extraordinary General Meeting.

The full text of the resolution relating to the sale transaction, as amended, is set forth in the accompanying Supplement to Proxy Statement.

The Danka board of directors recommends that you vote in favor of the proposal to amend the resolution relating to the sale transaction so that the sale of DOIC is no longer conditioned on approval of the Liquidation. The board of directors also continues to recommend that you vote in favor of the sale transaction, the Liquidation and related proposals. If the sale of DOIC is not approved at the Extraordinary General Meeting, Danka is of the opinion that the sale may well not be completed and Danka will not have sufficient working capital for its requirements.

Cypress Merchant Banking Partners II L.P. and certain of its                                der of the ating shares, have agreed to vote in favor of the

proposed amendment to the resolution relating to the sale transaction, and they have reaffirmed their previous agreement to vote in favor of the sale transaction, the Liquidation and related proposals.

Your vote is important. American Depositary Shares are to be voted by The Bank of New York Mellon as depositary for our American Depositary Shares pursuant to voting instructions received from holders of American Depositary Shares. The Bank of New York Mellon has agreed to extend the deadline by which voting instructional forms must be returned to the depositary by holders of American Depositary Shares to 5:00 p.m. (New York time) on June 25, 2008.

Enclosed is a voting instructional form for the Extraordinary General Meeting. If you already returned a validly executed voting instructional form that accompanied the original proxy statement, your vote will be recorded as instructed, unless you submit a subsequent voting instructional form or otherwise revoke the prior submitted voting instructional form. If you have not voted or if wish to change your vote, we urge you to promptly sign, date and return the enclosed voting instructional form in the enclosed envelope provided by the depositary, no later than 5:00 p.m. (New York time) on June 25, 2008.

We recognize that time is short before the upcoming Extraordinary General Meeting and if you have not yet voted or you wish to change your vote, we urge you to vote as directed on the voting instructional form.

We ask that convertible participating shareholders promptly sign, date and return the enclosed gold revised proxy card to arrive at our registered office at the address set out above, not later than 2:00 p.m. (London time) on June 25, 2008 even if you plan to attend the meeting. The proxy card that accompanied the original proxy statement will not be recorded. Returning your proxy card will not prevent you from voting your shares in person at the meeting if you are present and choose to do so.

We encourage you to read the accompanying Supplement to Proxy Statement carefully and in its entirety. We also encourage you, if you have not done so already, to review the proxy statement dated May 30, 2008, including its annexes. A supplement to the Class 1 in the United Kingdom pursuant to the UK Listing Authority ( rules. Voting instructions with respect to holders of ordinary shares will be set forth in the supplement to the UK Circular and such holders are referred thereto. We will file the supplement to the UK Circular upon approval by the UKLA with the Securities and Exchange Commission.

On behalf of our board of directors, I thank you for your continued support of our Company and appreciate your consideration of this matter.

Sincerely,

A.D. Frazier
Chairman

This supplement is dated June 18, 2008 and is being mailed to holders of American Depositary Shares and holders of convertible participating shares of Danka Business Systems PLC on or about June 18, 2008.

SUPPLEMENT TO PROXY STATEMENT

Danka Business Systems PLC

**Introduction**

t dated May 30, 2008, and should be read in conjunction with the proxy statement and its annexes and other relevant documents, if                                          . All page references in the information provided below refer to those page numbers in the proxy statement. To the extent information differs from, updates or conflicts with information in the original proxy statement, the information in this supplement is more correct.

If you need assistance in submitting your voting instructional form or voting your shares or you need additional copies of this supplement or the proxy statement, please contact our proxy solicitor, Innisfree M&A Incorporated, 501 Madison Avenue, New York, New York 10022, at

Neither the Securities and Exchange Commi disapproved the sale or Liquidation, passed upon the merits or fairness of the sale or Liquidation or passed upon the adequacy or accuracy of the disclosures in this proxy statement. Any representation to the contrary is a criminal offense.

**Extraordinary General Meeting**

The date, time and location of the Extraordinary General Meeting have not changed. The Extraordinary General Meeting will be held on June 27, 2008 at 2:00 p.m., London time, at the offices of Skadden, Arps, Slate, Meagher & Flom (UK) LLP, 40 Bank Street, Canary Wharf, London E14 5DS.

**Proposed Amendment to Resolution 1**

At the Extraordinary General Meeting, the board of directors will propose the following amendment to resolution numbered 1 to approve the sale of DOIC to Konica Minolta, such that if the proposed amendment to the resolution is approved by the affirmative vote of a majority of the votes cast, approval of the sale transaction will no longer be conditioned upon shareholder approval of the Liquidation. If the sale transaction is then approved by the affirmative vote of a majority of the votes cast at the Extraordinary General Meeting, the sale to Konica Minolta will be consummated regardless of the outcome of the resolution to approve the Liquidation.

The full text of the revised Resolution 1 is as follows:

1A.   Ordinary resolution

That, the resolution numbered 1 below be amended so that, in full, it reads as follows:

lding Company, an indirect wholly-owned subsidiary of the Company, of all the issued shares in the capital of Danka Office Imaging Company subject to the terms and conditions of a stock purchase agreement, dated as of April 8, 2008, as amended, made between (1) Konica Minolta Business Solutions U.S.A., Inc., (2) the Company and (3) Danka Holding Company, be and is hereby approved and that the directors of the Company be and are authorized to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the directors (or a duly authorized committee of them), necessary or desirable to give effect to and to complete the stock purchase agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the stock purchase agreement or any other documents relating thereto as they (or any such comm

The Danka board of directors recommends that you vote in favor of this Ordinary resolution 1A.

Please note that the following resolution numbered 1B will only be proposed if the resolution numbered 1A above is approved by the affirmative vote of a majority of the votes cast at the Extraordinary General Meeting.

1B.    Ordinary resolution

ect wholly-owned subsidiary of the Company, of all the issued shares in the capital of Danka Office Imaging Company subject to the terms and conditions of a stock purchase agreement, dated as of April 8, 2008, as amended, made between (1) Konica Minolta Business Solutions U.S.A., Inc., (2) the Company and (3) Danka Holding Company, be and is hereby approved and that the directors of the Company be and are authorized to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the directors (or a duly authorized committee of them), necessary or desirable to give effect to and to complete the stock purchase agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the stock purchase agreement or any other documents relating thereto as they (or any such comm

The Danka board of directors recommends that you vote in favor of this Ordinary resolution 1B.

Please note that the following resolution numbered 1 will only be proposed if the resolution numbered 1A above is not approved.

1.    Ordinary resolution

proposed disposal by Danka Holding Company, an indirect wholly-owned subsidiary of the Company, of all the issued shares in the capital of a stock purchase agreement, dated as of April 8, 2008, made between (1) Konica Minolta Business Solutions U.S.A., Inc., (2) the Company and (3) Danka Holding Company, be and is hereby approved and that the directors of the Company be and are authorized to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the directors (or a duly authorized committee of them), necessary or desirable to give effect to and to complete the stock purchase agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the stock purchase agreement or any other documents relating thereto as they (or any such committee) consider to be necessary or desirable.

(b) This resolution shall be void and of no effect unless: (1) the resolution numbered 2 is duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed; and (2) the resolution numbered 2 comes into effect in accordance

Other Resolutions

Resolutions numbered 2-7 (as set forth in the Notice of Extraordinary General Meeting included with the proxy statement) remain the same, and entry into the Liquidation remains conditioned upon approval of the sale transaction.

The Danka board of directors continues to recommend that you vote in favor of resolutions numbered 2-7 set forth in the Notice of Extraordinary General Meeting.

2

Background to Proposed Amendment to Resolution 1

Assuming that Danka completes the sale of DOIC on or about June 27, 2008, the outstanding indebtedness to be repaid under the credit

ies are limited

adjusted EBITDA and are subject to customary financial covenant testing which is reported on a quarterly basis.

rough which the credit limit of                                    s
                                                                   indebtedness
above the new capacity limit of the GECC credit facilities. The board of directors believes a repayment of approximately $40 million will therefore be required on July 1, 2008 to cover the outstanding indebtedness at that date. Further, the board of directors also believes that if the sale of DOIC is not completed prior to July 1, 2008, Danka would be in breach of its financial covenants under the GECC credit facilities as of that date.

If the sale does not occur and the proceeds of the sale are not received before July 1, 2008 the board of directors does not believe Danka will be able to finance the forecast debt repayment obligations. The board of directors believes that the failure of the sale to be completed leading to such a default in repayment and/or the anticipated breach of the financial covenants would ultimately result in the withdrawal of the GECC credit facilities. Were this to occur the Bo                       sale of Danka and/or put Danka in to some form of insolvency proceedings in the near term following July 1, 2008. If Danka was placed into insolvency proceedings, the sale of DOIC would not proceed and it is unlikely that holders of ordinary shares (including American Depositary Shares) would receive any distribution.

Reasons for Proposed Amendment to Resolution 1

On Monday, June 9, 2008, a new shareholder of Danka, DCML LLC
                                       ordinary shares. Also on June 9, 2008 DCML sent a letter to the
                                       was included as an exhibit to
intention to vote against the Liquidation.

On Wednesday, June 11, 2008, a second shareholder, Ironwood Investment Management, LLC, which is a fiduciary to holders of approximately 16.9% of the outstanding ordinary shares, issued an open letter to Danka shareholders stating its intention to vote against the Liquidation.

                                       an and Chief Executive Officer, sent a response letter to DCML
                                       letter regarding the options available to the Company following a sale of DOIC to Konica
Minolta, the capital structure of the Company (especially with respect to the relative                ible participating
shares and ordinary shares (and American Depositary Sh                                                scal condition.

On Thursday, June 12, 2008, in response to statements by a number of holders of our ordinary shares/American Depositary Shares that they support the sale of DOIC to Konica Minolta but do not support the Liquidation as currently proposed, the board of directors met with its legal

debt obligations as described in the proxy statement and repeated in the response letter to DCML, as well as the uncertainty regarding the
                                       nolta in a timely manner is of such paramount importance to Danka and
its shareholders as a whole that the sale of DOIC to Konica Minolta should no longer be conditioned upon shareholder approval of the Liquidation.

3

At that meeting, the board of directors also authorized the Comp                                    e Extraordinary General Meeting, to take such steps as are necessary to issue no later than June 30, 2008 a notice of delisting of its ordinary shares from the London Stock Exchange. Upon delisting from the London Stock Exchange, a sale of DOIC to Konica Minolta or other alternative transaction would not require shareholder approval. If delisted and if Konica Minolta were agreeable, Danka would intend proceed with a sale of DOIC to Konica Minolta without Danka shareholder approval.

                                            overnance Services, a leading independent proxy advisory firm, issued its recommendation that ADS holders vote in favor of the sale transaction, the Liquidation and related proposals.

The Sale Transaction

If the resolution relating to the sale of DOIC to Konica Minolta is amended so that the sale transaction is no longer conditioned upon approval of the Liquidation, and the sale transaction is then approved by the affirmative vote of a majority of the votes cast at the Extraordinary General Meeting, the sale to Konica Minolta will be consummated, regardless of the outcome of the resolution to approve the Liquidation.

If the resolution relating to the sale of DOIC to Konica Minolta is not amended, the sale transaction cannot be consummated unless both the sale transaction and the Liquidation are approved by Danka shareholders.

If the sale of DOIC is not duly approved at the Extraordinary General Meeting, Konica Minolta would have a right to terminate the stock purchase agreement and there can be no certainty that Konica Minolta would be prepared to waive this right.

The Liquidation

                                                                                                   isting debt obligations, and the fact that the sale of DOIC to Konica Minolta constitute                              e Liquidation is the only practical alternative to enable the ne                                  the sale transaction, the repayment of th                                                                  acilities provided by General Electric Capital Corporation, and after taking into                                                                                                 shareholders in a cost effective and timely manner, and which provides a return to the holders of ordinary shares and American Depositary Shares.

If the sale of DOIC to Konica Minolta is approved and consummated, and the Liquidation is approved, Danka will enter into the                                                                    will be appointed joint liquidators for the purposes of the voluntary winding up of the Company.

Pursuant to the agreement reached by the Company with holders of our convertible participating shares, the holders of the Compa ordinary shares, including holders of the Comp                                     paid a cash amount equal to $0.025 per ordinary share, or $0.10 per American Depositary Share, in the Liquidation, provided that sufficient assets are available to distribute such amounts to the holders of ordinary shares (including holders of American Depositary Shares).

If the Liquidation is not approved, the Company will not enter into the Liquidation, and our board of directors, along with management, will assess what alternatives may be available to distribute the net proceeds from the sale of DOIC. The board of directors may again seek shareholder approval of a members voluntary liquidation. Danka Sh                                              tion, the Company is required, subject to the requirements of English company law, to redeem all of the convertible participating shares on December 17, 2010 (or as soon thereafter as the Company is permitted by English company law), or the

4

maximum number of convertible participating shares which can lawfully be so redeemed on such date in accordance with such requirements.
American Depositary Shares) should note, however, that should the proposed Liquidation not be approved, there is no guarantee that any future alternative chosen by the board of directors will result in any return to holders of ordinary shares (including holders of American Depositary Shares). U                                                    f association, given the current approximately $372 million in accreted value of our convertible participating shares, holders of our convertible participating shares are entitled to all distributable proceeds of the Company in a liquidation.

## Voting Procedures

### For Holders of American Depositary Shares Who Have Not Already Voted

The Bank of New York Mellon has agreed to extend the deadline by which voting instructional forms must be returned to the depositary by holders of American Depositary Shares. Enclosed is a voting instructional form for the Extraordinary General Meeting. Holders of American Depositary Shares should promptly sign, date and return the enclosed voting instructional form in accordance with the terms provided thereon, no later than 5:00 p.m. (New York time) on June 25, 2008.

Note that our depositary agreement with the depositary gives us the right to instruct the depositary to give a discretionary proxy to a person designated by us to vote all ordinary shares represented by holders of American Depositary Shares that have failed to timely file their voting instructional form with the depositary.

### For Holders of American Depositary Shares Who Have Already Voted

If you already returned a validly executed voting instructional form that accompanied the original proxy statement your vote will be recorded as instructed unless you submit a subsequent voting instructional form or otherwise revoke the prior submitted voting instructional form. If you have not voted or if you would like to change your vote, you should promptly sign, date and return the enclosed voting instructional form in accordance with the terms provided thereon, no later than 5:00 p.m. (New York time) on June 25, 2008.

### For Holders of Convertible Participating Shares

Holders of convertible participating shares should promptly sign, date and return the enclosed gold revised proxy card to arrive at our registered office at the address set out above, not later than 2:00 p.m. (London time) on June 25, 2008, even if you plan to attend the meeting. The proxy card that accompanied the original proxy statement will not be recorded. Returning your proxy card will not prevent you from voting your shares in person at the meeting if you are present and choose to do so.

## Revocability of Voting Instructions and Proxies

### Holders of American Depositary Shares

American Depositary Shareholders may revoke their voting instructions to the depositary at any time before 5:00 p.m. (New York time) on June 25, 2008 by delivering a notice in writing to the depositary or granting a later-dated signed voting instructional form. You cannot cancel your voting instructions to the depositary by attending the Extraordinary General Meeting or by granting a proxy to vote at the meeting for you.

Holders of Convertible Participating Shares

Danka convertible participating shareholders of record may revoke their proxies by one of three ways:

First, at least 48 hours before the Extraordinary General Meeting, holders of convertible participating shares can deliver to t registered office a written notice bearing a date later than the proxy you delivered stating that you would like to revoke your proxy.

Second, at least 48 hours before the Extraordinary General Meeting, you can complete,                    stered office a new, later-dated proxy card for the same shares.

Third, you can attend the meeting and vote in person. Your attendance at the Extraordinary General Meeting alone will not revoke the proxy.

If you have instructed a broker or bank to vote your shares and you wish to change your instructions, you must follow directions received from your broker or bank to change those instructions.

Letter Agreement

In connection with the stock purchase agreement, the Cypress Shareholders entered into a letter agreement with the Company, pursuant to which the Cypress Shareholders agreed, among other things, to vote all the shares of Danka 6.50% senior convertible participating stock over which the Cypress Shareholders exercise voting control in favor of approval of the sale transaction, the Liquidation and related proposals. The Cypress Shareholders also agreed to the allocation of proceeds in the Liquidation entitling the                    ry shares, be paid a cash amount equal to $0.025 per ordinary share, or $0.10 per American Depositary Share, in the Liquidation.

The letter agreement has been amended and restated to provide that the Cypress Shareholders agree that the holders of the Compa ordinary shares, including holders of the Co                    Shares, shall be paid a cash amount equal to $0.025 per ordinary share, or $0.10 per American Depositary Share, in the Liquidation, as well as in any members voluntary liquidation that may occur in the future should the proposed Liquidation not be approved.

Deed of Undertaking

In connection with entry into the stock purchase agreement, the board of directors procured the agreement of the Cypress Shareholders, together with the other holder of our convertible participating shares, to irrevocably and unconditionally direct and instruct the liquidators, to pay to the holders of ordinary shares (including holders of American Depositary Shares) a cash amount equal to $0.025 per ordinary share, or $0.10 per American Depositary Share, out of the proceeds of the Liquidation, prior to any distribution of the proceeds of the Liquidation to the holders of convertible participating shares.

The Cypress Shareholders, together with the other holder of our convertible shares, have reaffirmed their agreement to instruct any liquidators appointed in connection with a members voluntary liquidation, whether it be the proposed Liquidation approved at the Extraordinary General Meeting or a members voluntary liquidation approved at a future shareholder meeting, to pay the agreed allocation described above to the holders of ordinary shares (including holders of American Depositary Shares).

The obligations of the convertible participating shareholders under the amended Deed of Undertaking are conditional on a members                    being duly approved by the requisite majority at either the Extraordinary General Meeting or a subsequent extraordinary general meeting.

6

Definitive Additional Materials

### Interests of Danka Executive Officers and Directors in the Sale

When considering the recommendation of our board of directors, you should be aware that members of our board of directors and our management have interests in the sale transaction, the Liquidation and related proposals other than their interests as Danka shareholders generally to which they will remain entitled should only the sale transac                                                                Executive
ing on page 39 of the proxy statement.

### Relationship of Proposals to One Another

Provided that the proposal to amend the resolution relating to the sale transaction is approved by the requisite majority at the Extraordinary General Meeting, the sale transaction will no longer be conditioned upon approval of the Liquidation, and will be consummated upon requisite shareholder approval even if the Liquidation is not approved by Danka shareholders.

The Liquidation remains conditioned on approval of the sale transaction.

### Recommendation of the Board of Directors

The Danka board of directors recommends that you vote in favor of the proposal to amend the resolution relating to the sale transaction so that the sale of DOIC is no longer conditioned on approval of the Liquidation. The board of directors also continues to recommend that you vote in favor of the sale transaction, the Liquidation and related proposals.

7

DANKA BUSINESS SYSTEMS
Instructions to THE BANK OF NEW YORK MELLON, as Depositary

(Must be received by 5:00 p.m., New York City time, on June 25, 2008)

The undersigned Owner of American Depositary Receipts hereby requests and instructs The Bank of New York Mellon, as Depositary, to endeavor, insofar as practicable, to vote or cause to be voted the Deposited Securities represented by such Receipts registered in the name of the undersigned on the books of the Depositary as of the close of business on May 30, 2008 at the Extraordinary General Meeting of Danka Business Systems PLC to be held in London, England, on June 27, 2008 in respect of the resolutions specified in the Notice of the Extraordinary General Meeting.

NOTE:

Instructions as to voting on the specified resolutions should be                          opriate box. The Depositary shall not vote or attempt to exercise the right to vote that attaches to the Shares or other Deposited Securities other than in accordance with such instructions. If the Depositary does not receive instructions from the Owner of American Depositary Receipts, the Depositary shall give discretionary proxy for the shares evidenced by such Receipt to a person designated by the Issuer.

DANKA BUSINESS SYSTEMS PLC
PROXY PROCESSING
P.O. BOX 3549
S HACKSENSACK, NJ 07606-9249

(Continued and to be dated and signed on the reverse side.)

[Reverse]

IF YOU WISH THE DEPOSITARY TO VOTE IN FAVOUR OF THE AMENDMENT TO BE PROPOSED BY THE BOARD OF DIRECTORS AT THE EXTRAORDINARY GENERAL MEETING WITH THE EFFECT THAT THE RESOLUTION TO                          BUSINESS OPERATIONS TO KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC. IS NO LONGER CONDITIONAL UPON THE RESOLUTION TO APPROVE THE MEMBERS VOLUNTARY LIQUIDATION BEING PASSED, PLEASE MARK

|  | For | Against | Abstain |
|---|---|---|---|
| 1A. Ordinary Resolution<br><br>Ordinary resolution to amend the resolution numbered 1 below such that the sale business in accordance with the Stock Purchase Agreement, by and among the Company, Danka Holding Company and Konica Minolta Business Solutions U.S.A., Inc., dated as of April 8, 2008, as amended, is not conditioned upon approval of resolution numbered 2 below to approve the voluntary winding up of the Company. | ☐ | ☐ | ☐ |

Please note that the following resolution numbered 1B will only be proposed if the resolution numbered 1A above is approved by the requisite majority.

IF YOU WISH THE DEPOSITARY TO VOTE IN FAVOUR OF THE AMENDED RESOLUTION TO APPROVE THE SALE OF                          NOLTA BUSINESS SOLUTIONS U.S.A., INC., WHICH RESOLUTION WOULD NOT BE CONDITIONAL UPON THE RESOLUTION TO APPROVE THE MEMBERS VOLUNTARY LIQUIDATION BEING PASSED, PLEASE MARK

|  | For | Against | Abstain |
|---|---|---|---|
| 1B. Ordinary Resolution<br><br>Ordinary resolution to approve the sale of the                          accordance with the Stock Purchase Agreement, by and among the Company, Danka Holding Company and Konica Minolta Business Solutions U.S.A., Inc., dated as of April 8, 2008, as amended. | ☐ | ☐ | ☐ |

Please note that the following resolution numbered 1 will only be proposed if the resolution numbered 1A above is not approved. If the resolution numbered 1A is duly approved, the following resolution will not be proposed to the Extraordinary General Meeting.

|  | For | Against | Abstain |
|---|---|---|---|
| 1. Ordinary Resolution<br><br>Ordinary resolution to approve the sale of the                          accordance with the Stock Purchase Agreement, by and among the Company, Danka Holding Company and Konica Minolta Business Solutions U.S.A., Inc., dated as of April 8, 2008, as amended. This resolution shall be void and of no effect unless: (1) the resolution numbered 2 is duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed; and (2) the resolution numbered 2 comes into effect in accordance with its terms. | ☐ | ☐ | ☐ |

| | For | Against | Abstain |
|---|---|---|---|
| 2. Special Resolution<br><br>Special resolution to approve the voluntary winding up of the Company. | ☐ | ☐ | ☐ |
| 3. Ordinary Resolution<br><br>Ordinary resolution to appoint Jeremy Spratt and Finb<br>the purpose of the voluntary winding up of the Company. | ☐ | ☐ | ☐ |
| 4. Special Resolution<br><br>Special resolution to authorize the joint liquidators to exercise the powers laid down in Schedule 4, Part I, of the UK Insolvency Act 1986; and notwithstanding the appointment of the joint liquidators, to authorize the directors of the Company to take any and all actions required to be taken by the Company, or which the directors (or a duly authorized committee of them) deem to be necessary or desirable, to consummate the sale transaction. | ☐ | ☐ | ☐ |
| 5. Ordinary Resolution<br><br>Ordinary resolution to approve the remuneration of the joint liquidators. | ☐ | ☐ | ☐ |
| 6. Ordinary Resolution<br><br>Ordinary resolution to authorize the joint liquidators to do all such things as are necessary to wind up the remaining subsidiaries of the Company. | ☐ | ☐ | ☐ |
| 7. Ordinary Resolution<br><br>Ordinary resolution to approve a U.S. $5 million termination fee to be paid to Konica Minolta Business Solutions U.S.A., Inc. in the event the Stock Purchase Agreement is terminated under certain circumstances. | ☐ | ☐ | ☐ |

Mark box at right if an address change or comment has been noted 9
on the reverse side of this card.

The Voting Instructions must be signed by the person in whose name the relevant Receipt is registered on the books of the Depositary. In the case of a Corporation, the Voting Instructions must be executed by a duly authorized Officer or Attorney. In the case of joint holders, the signature of any one will suffice.

Dated: _____

_____
Signature

Votes MUST be indicated (x) in black or blue ink.

Please mark, sign, date and return the voting instruction card promptly using the enclosed envelope.

I/We: _____

(full name(s) in block capital letters please)

of (address) _____

_____

b _____ Meeting/or

as my/our proxy to vote for me/us on my/our behalf at the Extraordinary General Meeting of the Company to be held at the offices of Skadden, Arps, Slate, Meagher & Flom (UK) LLP, 40 Bank Street, Canary Wharf, London E14 5DS at 2.00 p.m. London time on 27 June 2008 and at any adjournment thereof. I/We direct my/our proxy to vote on the following resolutions as I/we ____ no indication is given, my/our proxy will vote or abstain from voting at his or her discretion and I/we authorise my/our proxy to vote (or abstain from voting) as he or she thinks fit in relation to any other matter which is properly put before the meeting.

will vote or abstain as he thinks fit.

IF YOU WISH THE PROXY TO VOTE IN FAVOR OF THE AMENDMENT TO BE PROPOSED BY THE BOARD AT THE EXTRAORDINARY GENERAL MEETING WITH

U.S.A., INC. IS NO LONGER CONDITIONAL UPON THE RESOLUTION TO APPROVE THE MEMBERS VOLUNTARY LIQUIDATION BEING PASSED, PLEASE MARK R

|  | For | Against | Vote Withheld |
|---|---|---|---|
| 1A. Ordinary resolution<br><br>That, the resolution numbered 1 below be amended so that, in full, it reads as follows:<br><br>That, the proposed disposal by Danka Holding Company, an indirect wholly-owned subsidiary of the Company, of all the issued shares in the capital of Danka Office Imaging Company subject to the terms and conditions of a share sale agreement dated 8 April 2008 made between (1) Konica Minolta Business Solutions USA Inc., (    ) (2) the Company and (3) Danka Holding Company (the<br>dated 8 April 2008, be and is hereby approved and that the directors of the Company (the    ) be and are authorised to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the Directors (or a duly authorised committee of them), necessary or desirable to give effect to and to complete the Disposal Agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the Disposal Agreement or any other documents relating thereto as they (or | ☐ | ☐ | ☐ |

Please note that the following resolution numbered 1B will only be proposed if the resolution numbered 1A above is approved by the requisite majority.

BUSINESS OPERATIONS TO KONICA MINOLTA BUSINESS SOLUTIONS USA INC., WHICH RESOLUTION WOULD NOT BE CONDITIONAL

|  | For | Against | Vote Withheld |
|---|---|---|---|
| 1B. Ordinary resolution<br>That, the proposed disposal by Danka Holding Company, an indirect wholly-owned subsidiary of the Company, of all the issued shares in the capital of Danka Office Imaging Company subject to the terms and conditions of a share sale agreement dated 8 April 2008 made between (1) Konica Minolta Business Solutions USA Inc., (    ) (2) the Company and (3) Danka Holding Company (the<br>2008, be and is hereby approved and that the directors of the Company (the    ) be and are authorised to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the Directors (or a duly authorised committee of them), necessary or desirable to give effect to and to complete the Disposal Agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the Disposal Agreement or any other documents relating thereto as they (or any such committee) consider to be necessary or desirable. | ☐ | ☐ | ☐ |

Please note that the following resolution numbered 1 will only be proposed if the resolution numbered 1A above is not approved. If the resolution numbered 1A is duly approved, the following resolution will not be proposed to the Extraordinary General Meeting.

|  | For | Against | Vote Withheld |
|---|---|---|---|
| 1. Ordinary resolution<br><br>(a)   That, subject to sub-paragraph (b) of this resolution, the proposed disposal by Danka Holding Company, an indirect wholly-owned subsidiary of the Company, of all the issued shares in the capital of Danka Office Imaging Company subject to the terms and conditions of a share sale agreement dated 8 April 2008 made between (1) Konica Minolta Business Solutions USA Inc., (    ) (2) the Company and (3) Danka Holding Company (the<br><br>and that the directors of the Company (the    ) be and are authorised to do or procure to be done all such acts and things on behalf of the Company and any of its subsidiaries that are, in the opinion of the Directors (or a duly authorised committee of them), necessary or desirable to give effect to and to complete the Disposal Agreement and the transactions contemplated therein with such non-material modifications, amendments, revisions, variations or waivers to the terms of the disposal, the Disposal Agreement or any other documents relating thereto as they (or any such committee) consider to be necessary or desirable.<br><br>(b)   This resolution shall be void and of no effect unless: (1) the resolution numbered 2 is duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed; and (2) the resolution numbered 2 comes into effect in accordance with its terms. | ☐ | ☐ | ☐ |

| | For | Against | Vote Withheld |
|---|---|---|---|
| **2. Special Resolution** | | | |
| (a)  That, subject to sub-paragraph (b) of this resolution, the Company be wound up voluntarily. | | | |
| (b)  This resolution shall be void and of no effect unless: (1) the resolution numbered 1 is duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed; and (2) all conditions to closing under the Disposal Agreement (as defined in resolution numbered 1) (other than any condition relating to the approval by the members of the Company of this resolution and the other resolutions proposed at the meeting of the members of the Company at which this resolution is proposed) have been duly satisfied or waived in accordance with the terms of the Disposal Agreement, and the Disposal Agreement has not been terminated, prior to the commencement of the meeting of the members of the Company at which this resolution is proposed. | ☐ | ☐ | ☐ |
| **3. Ordinary resolution** | | | |
| That, subject to and with effect from the resolution numbered 2 being duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed and coming into effect in accordance with its terms, Jeremy Spratt<br><br>the purpose of the voluntary winding-up of the Company, and any power conferred on them by law or by this resolution or by resolution numbered 4 below, and any act required or authorised under any enactment or such other resolution to be done by them, may be done by them jointly or by each of them alone. | ☐ | ☐ | ☐ |
| **4. Special Resolution** | | | |
| That, subject to and with effect from the resolutions numbered 2 and 3 being duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed and coming into effect in accordance with their terms: | | | |
| (a)  the joint liquidators appointed pursuant to the resolution numbered 3 be authorised under the provisions of section 165(2) of the Insolvency Act 1986 to exercise any of the powers laid down in Schedule 4, Part I, of that Act as may be necessary or desirable in their judgment; and | ☐ | ☐ | ☐ |
| (b)  notwithstanding the effect of the resolution numbered 2 being duly passed by the requisite majority, the Directors of the Company be authorised to take or to procure, following the coming into effect of this resolution, any and all actions required to be taken by the Company, or which the Directors (or a duly authorised committee of them) deem to be necessary or desirable, to give effect to and to complete the share sale agreement dated 8 April 2008 made between (1) Konica Minolta Business Solutions U.S.A. Inc., (2) the Company and (3) Danka Holding Company and the | | | |
| **5. Ordinary Resolution** | | | |
| That, subject to and with effect from the resolutions numbered 2, 3 and 4 being duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed and coming into effect in accordance with their terms, the remuneration of the joint liquidators (as appointed by the resolution numbered 3) be fixed, in accordance with the terms of their engagement letter with the Company dated 25 March 2008, at their normal charging rates by reference to the time properly given by them and members of their staff in attending to matters arising in the winding up of the Company (including those falling outside their statutory duties but in all respects in accordance with the terms of their engagement letter with the Company) and that they be and are hereby authorised to draw sums on account of their remuneration at such intervals as they reasonably determine and to pay any expenses and disbursements properly incurred by them in respect of the winding up. | ☐ | ☐ | ☐ |
| **6. Ordinary Resolution** | | | |
| That, subject to and with effect from the resolutions numbered 2, 3 and 4 being duly passed by the requisite majority at the meeting of the members of the Company at which this resolution is proposed and coming into effect in accordance with their terms, the joint liquidators be authorised to do all such things as are necessary to wind up the remaining subsidiaries of the Company, including without limitation appointing themselves as joint liquidators of the UK subsidiaries and to draw their remuneration in respect of any subsidiary liquidations from the Company on the same basis as in resolution 5. | ☐ | ☐ | ☐ |
| **7. Ordinary Resolution** | | | |
| US$5 million in the event that the Disposal Agreement (as defined in the resolution numbered 1) is terminated by Konica Minolta or Danka Holding Company because the Closing (as defined in the Disposal Agreement) has not occurred by 8 October<br><br>Disposal Agreement, or is terminated by Konica Minolta after 8 August 2008 if shareholder approval has not been obtained by<br><br>in a manner adverse to Konica Minolta, its recommendation of the transactions contemplated by the Disposal Agreement, or taken any action or made any statement in connection with the meeting at which this resolution is to be proposed inconsistent with its recommendation of the transactions contemplated by the Disposal Agreement, or approved or recommended or publicly proposed to approve or recommend, or failed to recommend against, a proposal which competes with the transactions contemplated by the Disposal Agreement, is hereby approved. | ☐ | ☐ | ☐ |

Signed _____

Dated _____ 2008

Definitive Additional Materials

Notes:

1. As a member of the Company you are entitled to appoint a proxy to exercise all or any of your rights to attend, speak and vote at a general meeting of the Company. You can only appoint a proxy using the procedures set out in these notes.

PO Box 1075, Bristol BS99 3FA not later than 2.00 p.m.

London time on 25 June 2008, together with any power of attorney or other authority (if any) under which it is signed or a notarially certified copy thereof or a copy certified in accordance with the Powers of Attorney Act 1971.

3. Members not residing in the UK will need to attach appropriate postage to the reverse of this form to ensure that it is received in time.

4. Appointment of a proxy does not preclude you from attending the meeting and voting in person. If you have appointed a proxy and attend the meeting in person, your proxy appointment will automatically be terminated.

5. A proxy does not need to be a member of the Company but must attend the meeting to represent you. To appoint as your proxy a person other than the Chairman of the meeting, insert their full name where indicated above. If you sign and return this proxy form with no name inserted in the box, the Chairman of the meeting will be deemed to be your proxy. Where you appoint as your proxy someone other than the Chairman, you are responsible for ensuring that they attend the meeting and are aware of your voting intentions.

6. You may appoint more than one proxy provided each proxy is appointed to exercise rights attached to different shares. You may not appoint more than one proxy to exercise rights at +44 (0) 870 889 4027 not later than 5.00 p.m.

London time on 23 June 2008 for further instructions.

box. A vote withheld is not a vote in law, which means that the vote will not be counted in the calculation of votes for or against the resolution. If no voting indication is given, your proxy will vote or abstain from voting at his or her discretion. Your proxy will vote (or abstain from voting) as he or she thinks fit in relation to any other matter which is put before the meeting.

8. Where the member is a company, this form must be executed under its common seal or by two directors, or by a director and the secretary, or by an officer or attorney duly authorised by the company.

9. Any power of attorney or any other authority under which this proxy is signed (or a duly certified copy of such power or authority) must be included with the proxy form.

10. In the case of joint holders, any of them can sign and submit a proxy form but where more than one joint holder does so, the form submitted by the senior will be accepted to the exclusion of the others, seniority being determined for these purposes by the order in which the names stand on the Register in respect of each share.

11. If you submit more than one valid proxy appointment, the appointment received last before the latest time for the receipt of proxies will take precedence.

12. For details of how to change your proxy instructions or revoke your proxy appointment see the notes to the notice of meeting.

# EXHIBIT 4

DCML LLC Files a Letter to Danka Business Services PLC (OTC: DANKY) Shareholders Regarding Recent Events Around the Anticipated Sale of Danka Office Imaging Company to Konica Minolta

NEW YORK, June 19 /PRNewswire/ -- The following is a letter from DCML LLC to shareholders of Danka Business Services PLC (OTC Bulletin Board: DANKY).
     Fellow Danka Shareholders:
     Recent communications from Danka Business Services PLC (the "Company") compel us to respond, highlight inaccuracies and half-truths, and expose in our opinion the utter disregard of the Company's Board of Directors ("Board") and management for the interests of ordinary shareholders.
     1. At the start, it is worth noting that the Company has still failed to produce updated financials for its shareholders. Such financials are critical to our understanding of the transactions that management has proposed, and the evaluation of their fairness. Company shareholders were last given financials at the end of December. We can only wonder why the management and the Board refuse to make available updated numbers. Any diligent fiduciary would arguably make the preparation of such financials an urgent priority in light of the Board's stated belief that the Company's financial condition is in such peril that the Company "would be placed into solvency proceedings and it is unlikely that holders of ordinary shares (including American Depositary Shares) would receive any distribution."(1) As stated in prior letters to the Board, as shareholders we do not accept -- and we should not be asked to accept -- the Board's contentions and innuendo regarding Company finances until and unless we are presented with up-to-date financials. As such, we remain steadfast in our belief that if the proceeds of the sale were to be distributed there would be $112 million to $122 million to be distributed to ordinary shareholders and participating shareholders, of which we remain confident an equitable distribution of $1.18 to $1.28 would be distributable to American Depositary Shareholders ("ADS").
     2. In Mr. Frazier's recent communication to shareholders, he has attempted to impugn our integrity and motives by suggesting that we have become shareholders of Danka "only after the announcement of the sale of DOIC to Konica Minolta". This assertion is simply false. Members of DCML were shareholders prior to the announcement of the sale -- and in fact owned 1.5x the amount of shares owned by the Board. Moreover, certain members of DCML, through other entities, have owned shares in the Company since the arrival of Mr. Frazier at Danka years ago and have had numerous conversations and meetings with Mr. Frazier and senior management. Over the course of this longstanding relationship, we have witnessed the Board and senior management steward the decline of ordinary shareholders value by more than 90%.
     3. We note that neither Company management nor the Board has responded to our recent letter in which we highlighted how we believe the Company is attempting to rig the forthcoming vote, by granting the right of the Depositary to give discretionary proxy for shares not voted to a person designated by Danka.(2) While similar behavior might be common in countries with a history of political repression and less developed democratic cultures, shareholders expect and deserve more from the fiduciaries of a listed public company in the UK and US. If the Board's vote-rigging behavior is not unlawful, it should be.
     4. Finally, while we have come to expect the Board to act in a manner that ignores the interests of ordinary shareholders, we were taken aback by the brazen nature of the Company's Schedule 14A filing dated June 18, 2008. In this filing, the Board has made a very plain threat: if shareholders do not approve the sale of DOIC to Konica Minolta, it will seek to delist from the London Stock Exchange -- and "upon delisting from the London Stock Exchange, a

© Thomson Reuters 2008 All rights reserved

**SHARE:**    Del.icio.us    Digg    Mixx    My Web    Facebook    Newsvine

---

### GLOBAL MARKETS NEWS

NYMEX oil pares gains after high, eyes Wall St

FCC chief open to more terms on XM-Sirius deal

Moody's:GSE takeover not likely threat to US rating

US STOCKS-Wall St sinks on Fannie and Freddie woes, oil's pop

More Global Markets News...

### PRESS RELEASE NEWS

Staples Announces Dates for Reporting Second Quarter 2008 Results and Discussing...

REG-Permanent Master Issuer FRN Variable Rate Fix

Franklin Universal Trust Declares Monthly Dividend

More Press Release News...

**Ads by Google**  What's This?

Top 10 Stocks for 2008
America's 10 Leading Stock Experts Share Their Top Picks. Free Report.
www.NewsletterAdvisors.com

American Capital Dividend
Dividends Paid 43 Consecutive Qtrs. Q2 2008 dividend $1.03
AmericanCapital.com

Dividend Investing Secret
Secrets Of Dividend Paying Stocks Free Dividend Superstars Report.
MoneyAndMarkets.com

3 Stocks to Steal Now
Stock Guru Dennis Slothower Gives You 3 Absolute Steals to Buy Now!
StealthStocksOnline.com

# EXHIBIT 5

 ANTARANEWS

# DCML LLC files letter to Konica Minolta re Danka office imaging

New York, (ANTARA News/PRNewswire-AsiaNet) - The following is a letter from DCML LLC to Konica Minolta Group.

Esteemed members of Konica Minolta Group's Corporate Governance Committee:
We write regarding your pending acquisition of Danka Office Imaging (DOIC). We are longtime shareholders of DOIC's parent, Danka Business Systems PLC (the "Company").

Some of our members owned, through other entities, more than 1,400,000 shares of Company stock and $6,000,000 of subordinated debt from 2005 to 2007. Members of DCML also owned almost 500,000 shares of Company stock prior to the announcement of Konica Minolta's offer to buy DOIC. Today, we own in the aggregate, approximately 6% of the Company's common stock on a fully diluted basis

As shareholders of Danka, we are thankful for your recognition of DOIC's value, as represented by your acquisition offer. Unfortunately, we believe that you may not have appreciated the questionable manner in which Danka management has proposed to distribute the proceeds resulting from the sale of DOIC to Konica Minolta.

One could argue that the distribution of sale proceeds should not concern Konica Minolta, that such matters are not your responsibility after you have fulfilled your transaction obligations. As a legal matter, that is likely true. But because of your strong commitment to responsible corporate governance and to corporate ethics, we wish to bring to your attention the following facts and observations.

1. Danka's management and Board, with whom you have negotiated the DOIC sale, propose to distribute to ordinary shareholders $6.5 million from sale proceeds totaling at least $240 million, subject to escrow-related adjustments. Management, by contrast, will receive a pay-out of almost $10 million in change-of-control benefits. On its face, this is a wildly inequitable distribution.

2. Danka's management and Board are concerned that shareholders may not vote in favor of this distribution outcome, so they are improperly attempting to control the vote -- to make it difficult for shareholders to exercise their vote, by inhibiting the conversion of ADS to ordinary shares, and by voting the shares of all holders who do not otherwise vote themselves. These efforts are highly questionable.

3. If shareholders do not approve the proposed sale of DOIC, management and the Board have threatened to delist Danka, and complete the sale of DOIC to Konica Minolta without shareholder approval. It is difficult to conceive of a less shareholder friendly action. An ethical board committed to good governance would never threaten such action.

It is therefore clear that, while Konica Minolta has acted honorably and fairly in its effort to acquire DOIC, it is doing business with a management team and Board that is acting unfairly, unreasonably and unethically. A company like yours, committed to good governance and the highest standards of corporate behavior, might reasonably question whether it wishes to be associated with the activities of individuals who do not take seriously their fiduciary duties and may be the targets of future shareholder litigation.

Respectfully,
Robert Andrade
Rosty Raykov
DCML LLC SOURCE DCML LLC
CONTACT: Robert Andrade or Rosty Raykov,
both of DCML LLC,
(DANKY)

COPYRIGHT © 2008 ANTARA

PubDate: 06/24/08 12:53

# EXHIBIT 6

POWERED BY
BNET.com

FindArticles > PR Newswire > June 24, 2008 > Article > Print friendly

**DCML LLC Files an Open Letter to Danka Shareholders Regarding New Events Surrounding the Anticipated Sale of Danka Office Imaging Company, a subsidiary of Danka Business Services PLC to Konica Minolta**

NEW YORK, June 24 /PRNewswire/ -- The following is a letter from DCML LLC to shareholders of Danka Business Services PLC :

Fellow Danka Shareholders:

DCML has concluded that we will not support the decoupling of the sale of DOIC from Konica Minolta or the voluntary liquidation proposal. And we plan to call for an extraordinary shareholder meeting to replace the Board and defend shareholder's interests.

As mentioned in prior releases, Danka's management and Board are concerned that shareholders may not vote in favor of this distribution outcome, so they are improperly attempting to control the vote by voting the shares of all holders who do not otherwise vote themselves. These efforts are highly questionable and in our opinion unethical, in the context that the Board excluding Cypress Investment Group controls less than 0.45% of the shares.

Nevertheless, DCML remains steadfast in our belief of substantially excess value to the paltry $0.10 offered and will continue to move forward with all options necessary to cause shareholder interests to be again taken seriously within Danka.

We urge shareholders to review their amended proxy voting instructions and cast your OWN vote.

Respectfully,

Robert Andrade Rosty Raykov

CONTACT: Robert Andrade or Rosty Raykov, both of DCML LLC, +1-212-332-3342

COPYRIGHT 2008 PR Newswire Association LLC
COPYRIGHT 2008 Gale, Cengage Learning

# EXHIBIT 7

FOCUS - 2 of 14 DOCUMENTS

Copyright 2008 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire

June 27, 2008 Friday 8:47 PM GMT

**LENGTH:** 255 words

**HEADLINE:** DCML LLC Files an Open Letter to Danka Shareholders Applauding their Rejection of the Voluntary Liquidation of Danka Business Systems PLC (OTC: DANKY)

**DATELINE:** NEW YORK June 27

**BODY:**

NEW YORK, June 27 /PRNewswire/ -- The following is a letter from DCML LLC to shareholders of Danka Business Services PLC(OTC:DANKY):

Fellow Danka Shareholders:

DCML would like to congratulate those Danka shareholders who were able to cast their votes on the DOIC transaction and liquidation proposal in a timely manner given the Company's questionable, late delivery of voting materials. By voting against voluntary liquidation, shareholders sent a message that they expect to be treated as meaningful stakeholders, not as dupes who can be deceived, ignored or short-changed.

DCML has filed a complaint against the Company's Board in U.S. District Court, alleging violations of the SEC laws and the Board's fiduciary duties, in connection with the proposed transactions and related proxy (U.S. District Court for the Southern District of New York, Case No. 08-5829).

We remain steadfast in our belief that ordinary shareholders are entitled to an equitable share of the proceeds from the sale of DOIC, and that such distribution substantially exceeds the $0.10/ADS previously offered to shareholders. As a result, we will continue to explore all options available to us to achieve an equitable resolution, and we will contest vigorously any further attempt by the Board and Company management to distribute sale proceeds without regard to the interests of ordinary shareholders.

```
Respectfully,

Robert Andrade     Rosty Raykov

DCML LLC

212.332.3342
```

CONTACT: Robert Andrade or Rosty Raykov, both of DCML LLC, +1-212-332-3342

SOURCE DCML LLC

**URL:** http://www.prnewswire.com

DCML LLC Files an Open Letter to Danka Shareholders Applauding their Rejection of the Voluntary Liquidation of Danka Business Systems PLC (OTC: DANKY) PR Newswire June 27, 2008 Friday 8:47 PM GMT

**LOAD-DATE:** June 28, 2008

# EXHIBIT 8

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 WEST WACKER DRIVE

CHICAGO, ILLINOIS 60606-1285

TEL: (312) 407-0700
FAX: (312) 407-0411
www.skadden.com

FIRM/AFFILIATE OFFICES
———
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SHANGHAI
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
312-407-0785
EMAIL ADDRESS
AL.HOGAN@SKADDEN.COM

July 11, 2008

Arthur N. Abbey, Esq.
**Abbey Spanier Rodd & Abrams, LLP**
212 East 39th Street
New York, New York 10016

RE:    *DCML LLC v. Danka Business Systems, PLC, et al.,*
       Civil Action No. 1;08-CV-5829-SAS

Dear Mr. Abbey:

         I write in reference to the First Amended Complaint that you filed yesterday on behalf of DCML LLC ("DCML"). As you will recall, when we spoke on Monday of this week I requested that you withdraw the initial complaint in this case because it was improper, particularly in light of the results of the shareholder vote rejecting the proposed voluntary liquidation transaction for Danka Business Systems, PLC ("Danka"). You informed me at that time that you intended to file an amended complaint that would address the outcome of the liquidation vote.

         Having reviewed the First Amended Complaint, I have concluded that, although DCML has indeed now acknowledged that the liquidation proposal was rejected, DCML has not and cannot allege a viable cause of action. This is so precisely because the liquidation proposal that DCML so vigorously opposed was in fact rejected. No other transaction is pending. Given DCML's publicly-stated support for the sale of Danka Office Imaging Company, there is simply no harm to DCML as a result of the shareholder vote. I believe that the opening paragraphs of the Amended Complaint make clear that what DCML is complaining of is the prospect of future unfair treatment. That, of course, is not a proper basis for a lawsuit.

Arthur N. Abbey, Esq.
July 11, 2008
Page 2


      The Amended Complaint suffers from other defects, and the
defendants reserve all of their rights to raise those issues if necessary.  For now, I
want to simply renew the defendants demand that this case be withdrawn, and
specifically now as to the First Amended Complaint.  As I mentioned to you, Danka
intends to oppose this, or any improper litigation with all available means.  I am
hopeful that we can avoid such a course -- which will be costly and distracting for
both of our clients -- through your withdrawal of this action.  The defendants reserve
their rights concerning any and all costs and expenses they incur in proceeding
against DCML's complaint.


      If you have any questions, please do not hesitate to contact me.

      Very truly yours,

      Albert L. Hogan, III