UNITED STATES DISTRICT COURT
SOUTHERN  DISTRICT OF NEW YORK
-------------------------------------------------------- X
                                   :

DCML LLC,                            :

                      **Plaintiff,**     :

      - against -            :

DANKA BUSINESS SYSTEMS PLC,   :
A. D. FRAZIER, W. ANDREW     :
MCKENNA, DR. KEVIN C. DALY,   :
JAIME W. ELLERTSON,         :
CHRISTOPHER B. HARNED,     :
J. ERNEST RIDDLE, ERIK VONK,   :
DAVID DOWNES, JOSEPH E.     :
PARZICK, and CYPRESS MERCHANT :
BANKING PARTNERS II L.P.,     :

                     :

                 **Defendants.**   :
-------------------------------------------------------- X

**OPINION AND ORDER**

**08 Civ. 5829 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

On June 27, 2008, DCML LLC brought this securities-related action challenging a series of transactions for which defendant Danka Business Systems PLC ("Danka") sought shareholder approval.  DCML's suit includes a claim under section 14(a) of the Securities Exchange Act of 1934 as well as a state law fiduciary duty claim.  Defendants seek to dismiss the action pursuant to Rule

1

12(b)(6) of the Federal Rules of Civil Procedure.  Danka also seeks sanctions against DCML pursuant to Rule 11 of the Federal Rules of Civil Procedure.  For the following reasons, defendants' motions to dismiss are granted and Danka's motion for sanctions is denied.

## II.  BACKGROUND

On April 9, 2008, Danka announced that it would solicit shareholder approval for a series of transactions.  It first planned to sell its operating assets to Konica Minolta Business Solutions U.S.A. for $240 million.[1]  After the sale, Danka planned a voluntary liquidation in which the proceeds of the sale would be distributed to the holders of Danka securities.[2]  DCML LLC — an entity holding a substantial number of Danka American Depository Shares ("ADSs") — opposed the voluntary liquidation but not the asset sale, arguing that the liquidation would provide too little value to ADS shareholders.[3]  Danka scheduled the shareholder vote to occur during a June 27, 2008 special shareholder meeting,[4] and as it

---

[1]      *See* First Amended Complaint ("Am. Compl.") ¶ 23.

[2]      *See id.* ¶¶ 24, 30.

[3]      *See id.* ¶ 38.  While the principals of DCML purchased their ADSs at prices ranging from $0.18 and $0.23 per share, the voluntary liquidation proposal offered ADS holders $0.10 per share.  *See* Plaintiff's Memorandum of Law in Opposition to All Defendants' Motion to Dismiss ("Pl. Mem.") at 1.

[4]      *See* Am. Compl. ¶ 30.

established an ADS record date of May 30, 2008, only ADSs purchased before that date could be voted at the meeting.[5]

During the June 27, 2008 meeting, Danka shareholders approved the proposed asset sale but voted down the voluntary liquidation.[6] That same day, DCML filed this action against Danka, its board of directors, and Cypress Merchant Banking Partners II L.P. ("Cypress"). In its complaint, DCML asserts proxy violations by defendants (except Cypress) under section 14(a) of the Securities Exchange Act of 1934 and SEC Rule 14a-9.[7] DCML also claims that all defendants breached their fiduciary duties.[8] Defendants now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[9] Danka also moves for sanctions against DCML pursuant to Rule 11 of the Federal

---

[5] *See id.* ¶ 29.

[6] *See id.* ¶ 40.

[7] *See id.* ¶ 49 (citing 15 U.S.C. § 78n(a); 17 C.F.R. § 240.14a-9).

[8] *See id.* ¶ 62.

[9] *See* Memorandum of Law in Support of the Motion of Danka Business Systems PLC, A. D. Frazier, W. Andrew McKenna, Dr. Kevin C. Daly, Jaime W. Ellertson, Christopher B. Harned, J. Ernest Riddle, Erik Vonk, David Downes, and Joseph E. Parzick to Dismiss DCML LLC's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Def. Mem.") at 1; Memorandum of Law in Support of Cypress Merchant Banking Partners II L.P.'s Motion to Dismiss DCML LLC's First Amended Complaint at 1.

Rules of Civil Procedure.[10]

## III.   APPLICABLE LAW

### A.   Motion to Dismiss

Courts reviewing a motion to dismiss pursuant to Rule 12(b)(6)

"'must accept as true all of the factual allegations contained in the complaint'"[11]

and "draw all reasonable inferences in the plaintiff's favor."[12]  In light of the

Supreme Court's decision in *Twombly*, in order to survive a motion to dismiss a

complaint must provide "the grounds upon which [the plaintiff's] claim rests

through factual allegations sufficient 'to raise a right to relief above the

speculative level.'"[13]  "[B]ald assertions and conclusions of law will not suffice."[14]

---

[10]   *See* Memorandum of Law in Support of the Motion of Danka Business Systems PLC for Sanctions Pursuant to Fed. R. Civ. P. 11 ("Danka Mem.") at 1.

[11]   *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1975 (2007) (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n.1 (2002)).

[12]   *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006) (citation omitted).

[13]   *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 127 S. Ct. at 1965). *Accord Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (per curiam) (noting that plaintiffs must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'") ( quoting *Twombly*, 127 S. Ct. at 1964).

[14]   *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (citation omitted).

:

Moreover, complaints alleging violations of section 14(a) must comply with the Private Securities Litigation Reform Act ("PSLRA").[15] The "PSLRA provides that a complaint alleging violations of section 14(a) of the Exchange Act 'shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made upon information and belief, the complaint shall state with particularity all facts on which that belief is formed.'"[16]

## B.      Section 14(a) of the Securities Exchange Act of 1934

Section 14(a) of the Exchange Act makes it "unlawful for any person, by use of the mails . . . or otherwise . . . to solicit or permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 12 of this title."[17] To state a claim under section 14(a), a plaintiff "must plead loss causation, that is, the plaintiff must demonstrate that 'the economic harm that it suffered occurred as a

---

[15]      15 U.S.C. §§ 77z-1-78u-4.

[16]      *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 536 F. Supp. 2d 313, 320 (S.D.N.Y. 2007) (quoting 15 U.S.C. § 78u-4(b)(1) and citing *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 213 (S.D.N.Y. 2004); *Little Gem Life Scis. LLC v. Orphan Med., Inc.*, No. 06 Civ. 1377, 2007 WL 2695787, at *3 n.4 (D. Minn. Sept. 13, 2007) (collecting cases from multiple circuits)).

[17]      15 U.S.C. § 78n(a).

result of the alleged misrepresentations.'"[18]  Plaintiffs must also allege transaction

causation — that they were injured as a result of the corporate action their votes

authorized or defeated.[19]

### C.    Sanctions Under Rule 11 of the Federal Rules of Civil Procedure

A pleading, motion, or other court filing violates Rule 11 either when

it "is . . . being presented for any improper purpose" or where, "after an inquiry

reasonable under the circumstances" an attorney could not conclude that the

---

[18]     *In re AOL Time Warner*, 381 F. Supp. 2d at 231 (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992)).

[19]     *See Fisher v. Kanas*, 467 F. Supp. 2d 275, 282 (E.D.N.Y. 2006) ("An action brought pursuant to section 14(a) and based on an alleged material misrepresentation in proxy materials should be sustained only when it challenges *a transaction which was the subject of the proxy materials*, such as approval of a merger agreement or the election of corporate directors.") (internal quotations omitted) (emphasis added). *See also Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 382 (1970) ("Even outrageous misrepresentations in a proxy solicitation, if they did not relate to the terms of the transaction [at issue in the proxy solicitation], would give rise to no cause of action under s[ection] 14(a)."); *Fink v. Weill*, No. 02 Civ. 10250, 2005 WL 2298224, at *5 (S.D.N.Y. Sept. 19, 2005) ("Plaintiff's section 14(a) claim fails because the wrongs flowing from the allegedly false and misleading disclosure are improper governance and injury resulting from the undisclosed transactions, rather than from any particular action taken by shareholders on the basis of the proxy statements."); *Giarraputo v. UNUMProvident Corp.*, No. 99 Civ. 301, 2000 WL 1701294, at *11 (D. Me. Nov. 8, 2000) ("As part of a Section 14(a) claim, a plaintiff must establish a causal nexus between [her] alleged injury and some corporate transaction authorized (or defeated) as a result of the allegedly false and misleading proxy statements.) (citation and internal quotations omitted).

"claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[20] "[A]rguments for a change of law are not required to be specifically so identified."[21]  Courts are to use an objective standard of reasonableness in determining whether a Rule 11 violation has occurred.[22]

## IV.   DISCUSSION

### A.   DCML's Claim Under Section 14(a) of the Securities Exchange Act of 1934

#### 1.   Standing

Defendants assert that DCML does not have standing to bring this suit under section 14(a).  They claim that because DCML did not own any Danka securities on May 30, 2008 — the applicable record date — it "was not entitled to vote on the transactions addressed in the Proxy Statement and the Proxy Statement Supplement."[23]  It is generally accepted that only shareholders who were entitled to vote on a transaction have standing under section 14(a)  to challenge the proxy

---

[20]   Fed. R. Civ. P. 11(b).

[21]   *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (internal quotations omitted).

[22]   *See id.*

[23]   Def. Mem. at 11.

7

materials issued by a corporation regarding that transaction.[24]  Moreover, "where

an applicable statute or the corporation's charter or by laws so provide, the only

stockholders who may vote in an election are those who were registered as

stockholders on a certain date prior to the election, known as the record date."[25]

As Defendants note, DCML did not hold any Danka securities on the applicable

record date.[26] Indeed, DCML did not even exist on the record date; it was formed

on June 5, 2008.[27]

DCML was formed by Robert Andrade and Rostislav Raykov "to

jointly hold and vote their previously purchased shares of Danka."[28]  Andrade and

Raykov owned shares of Danka on the record date and were entitled to vote on the

---

[24]     *See 7545 Corp. v. Parker & Parsley Dev. Partners, L.P.*, 38 F.3d 211,
229 (5th Cir. 1994) ("We view section 14(a) as protecting only interest-holders
with voting rights.") (citation omitted); *In re AOL Time Warner*, 381 F. Supp. 2d
at 241 ("Section 14(a)'s emphasis on the proxy solicitation process indicates that
the statute was designed to protect only those shareholders with voting rights.")
(citing *7545 Corp.*, 38 F.3d at 229-30); Thomas Lee Hazen, *The Law of Securities
Regulation* § 10.5 (5th ed. 2005) ("[S]ince the proxy regulations are designed to
protect shareholder voting rights, standing should be limited to shareholders who
had a right to vote.").

[25]     18 C.J.S. *Corporations* § 458.

[26]     *See* Def. Mem. at 11.

[27]     *See id.* at 4.

[28]     Am. Compl. ¶ 11.

8

transaction at issue.[29]  Thus, this case is distinguishable from the cases in which a

plaintiff acquired stock after a shareholder vote.[30]  Here, by contrast, shareholders

entitled to vote transferred their stock to an entity designed to hold that stock on

their behalf.  Section 14(a) was designed by Congress to protect individuals like

Andrade and Raykov,[31] and there is no reason that their rights should not travel

with their stock to a business entity under their sole control.[32]  Therefore, DCML

has standing to bring this suit.

### 2.    Transaction Causation

Defendants also maintain that DCML's section 14(a) claim should be

---

[29]    *See id.*

[30]    *See, e.g.*, *Murray v. Hospital Corp. of America*, 682 F. Supp. 343, 348
(M.D. Tenn. 1988) ("Because the Plans completely divested themselves of HCA
common stock on January 27, 1987, more than a month before defendants issued
the proxy statement in question, the Plans could not have been affected by the
alleged proxy violations.") (citations omitted).

[31]    *See Werfel v. Kramarsky*, 61 F.R.D. 674, 678 (S.D.N.Y. 1974)
("[Section 14(a)] was intended to promote the free exercise of the voting rights of
stockholders by ensuring that proxies would be solicited with explanation to the
stockholder of the real nature of the questions for which authority to cast his vote
is sought." (quoting *Mills* 396 U.S. at 381) (internal quotations omitted)).

[32]    *Cf. HFG Co. v. Pioneer Pub. Co.*, 162 F.2d 536, 540-41 (7th Cir.
1947) (holding that beneficial owner of stock who was not a shareholder of record
had standing to assert a derivative claim on behalf of a corporation).

dismissed specifically as it relates to the liquidation transaction.[33]  They assert that

DCML could not have been injured by the liquidation because it was not approved

by Danka shareholders.[34]

       While defendants are correct in asserting that DCML failed to allege

transaction causation with regard to the liquidation transaction, DCML has also

failed to allege *any* transaction causation with regard to its section 14(a) claim.

DCML does not assert that it was injured as a result of the asset sale or the

shareholders' rejection of the liquidation transaction.  Rather, it claims that "the

injury for which DCML seeks redress is the diminution in the value of the ADSs

that was a direct result of the false proxy materials that were disseminated in

connection with the solicitation of votes on both the asset sale and the subsequent

liquidation."[35]  In other words, DCML is claiming that the false statements

contained in the Danka proxy materials caused market participants to doubt the

---

[33]    *See* Def. Mem. at 12-13.

[34]    *See id.* at 13.

[35]    Pl. Mem. at 14.  According to DCML, "[u]pon announcement of the proposed transaction, the price of the ADSs dropped precipitously to less than $.10 per ADS.  The price has never recovered." *Id.* at 2.  DCML also notes that "even after the failure of the liquidation proposal, defendants still refused to correct the false impression created by the misleading proxy materials through which it sought the shareholder vote on the two transactions, causing the price of ADSs to remain well depressed below $.10 per share to the detriment of plaintiff." *Id.*

financial health of Danka.  The injury for which DCML seeks redress was caused by the effect of the proxy materials on market participants who were not associated with the proxy solicitation.  Accordingly, DCML has failed to state a claim under section 14(a).

### B.     DCML'S Fiduciary Duty Claim

DCML also asserts a state law fiduciary duty claim.  As DCML failed to assert a federal cause of action under section 14(a), this court can hear the state law claim only through the exercise of supplemental jurisdiction.  Federal courts have supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."[36] The exercise of supplemental jurisdiction is typically a matter of judicial discretion.[37]  This discretion is such that a court can exercise supplemental jurisdiction even if it "has dismissed all claims over which it has original jurisdiction."[38]

------

[36]    28 U.S.C. § 1367(a).

[37]    *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (describing supplemental jurisdiction, formerly known as pendant jurisdiction, as "a doctrine of discretion, not a plaintiff's right").

[38]    28 U.S.C. § 1367(c).

11

The trial court is also advised to consider the "values of judicial economy, convenience, fairness, and comity" when considering whether to exercise supplemental jurisdiction.[39] In most cases where all federal claims have been dismissed before trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the state-law claims."[40] Because DCML's section 14 claim has been dismissed prior to a substantial investment of federal judicial resources, I decline to exercise supplemental jurisdiction over the pendant state law claim.

## C.   Danka's Claim for Sanctions

Danka has moved for sanctions against DCML pursuant to Rule 11. It asserts that DCML's claims are objectively baseless.[41] It also claims that DCML's complaint was filed for an improper purpose.[42] Danka's motion for sanctions notwithstanding, the PSLRA requires, upon final adjudication of an action brought under the federal securities laws, that a court "include in the record

---

[39]   *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7(1988)).

[40]   *Cohill*, 484 U.S. at 350 n.7. *Accord Gibbs*, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well.").

[41]   *See* Danka Mem. at 10.

[42]   *See id.* at 13.

specific findings regarding compliance by each party and each attorney representing any party with each requirement of Rule 11(b)."[43]

While there is considerable authority for the proposition that section 14(a) claims are valid only when the transaction at issue in the proxy materials caused the plaintiff's injury, it is not so clear that there was not "a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."[44] Moreover, as DCML notes, Danka does little to substantiate its assertion that DCML filed this suit for an improper purpose.[45] Accordingly, I find that DCML has complied with each requirement of Rule 11(b) and thus deny Danka's motion for sanctions. I also find that all defendants are in compliance with Rule 11(b) as well.

## V.   CONCLUSION

For the reasons discussed above, defendants' motions to dismiss are granted and Danka's motion for sanctions is denied. The Clerk of the Court is directed to close these motions (Docket nos. 7, 10, and 16) and this case.

---

[43]     15 U.S.C. § 78u-4(c)(1).

[44]     Fed. R. Civ. P. 11(b)(2).

[45]     *See* Plaintiff's Memorandum of Law in Opposition to Danka's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11, at 5-6.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             November 26, 2008

## - Appearances -

### For Plaintiff:

Nancy Kaboolian, Esq.
Karin E. Fisch, Esq.
Arthur N. Abbey, Esq.
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY 10016
(212) 889-3700

### For Defendants Danka Business Systems PLC, A. D. Frazier, W. Andrew McKenna, Dr. Kevin C. Daly, Jaime W. Ellertson, Christopher B. Harned, J. Ernest Riddle, Erik Vonk, David Downes, and Joseph E. Parzick:

Scott D. Musoff, Esq.
Beverly A. Farrell, Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
(212) 735-3000

### For Defendant Cypress Merchant Banking Partners II, L.P.:

Peter Eric Kazanoff, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-2000